# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **ALISHA SALADINO** and **DAVID DONAHUE,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> *v.* <br><br> **MAD CITY HOME IMPROVEMENT, LLC**, d/b/a **MAD CITY WINDOWS & BATHS,** <br><br> *Defendant.* | Case No. 0:24-cv-01419-NEB-ECW <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER COMPELLING DISCOVERY** |

1

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................6

II.   BACKGROUND...................................................................................................6

III.  LEGAL STANDARD............................................................................................9

IV.   ARGUMENT .....................................................................................................10

    A.    Mad City has failed to provide basic witness information. ....................................11

    B.    Mad City has failed to provide any information about its dialing system. ............13

    C.    Mad City has failed to produce consumer complaints. .........................................15

    D.    Mad City has not produced any outbound call or text records.............................17

    E.    Mad City has not produced relevant communications. .........................................20

V.    FEES AND DISCOVERY SANCTIONS .................................................................24

VI.   CONCLUSION ..................................................................................................25

VI.   CERTIFICATE OF COMPLIANCE (WORD COUNT)…………………………27

**TABLE OF AUTHORITIES**

**Cases**

*Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 2014 U.S. Dist. LEXIS 192860
    (D. Minn. May 23, 2014) ................................................................................... 10

*Cahill v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 63918
    (S.D. Cal. Apr. 16, 2018) .................................................................................. 19

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)................................................................ 18

*Dabney v. Montgomery Ward & Co.*, 761 F. 2d 494 (8th Cir. 1985)................................. 6

*Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500 (N.D. Ill. 2009)........................................... 16

*Grant v. Regal Auto. Grp., Inc.,* 2020 U.S. Dist. LEXIS 42685
    (M.D. Fla. Mar. 12, 2020)..................................................................................23

*Grupo Petromex, S.A. De C.V. v. Polymetrix AG*, 2019 U.S. Dist. LEXIS 87594
    (D. Minn. May 24, 2019) ................................................................................... 10

*Gulf Ins. Co. v. Skyline Displays Inc.*, 2003 U.S. Dist. LEXIS 26511
    (D. Minn. October 20, 2003)................................................................................ 9

*Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014)…………………………...20

*Haddley v. Next Chptr. Tech.*, 2018 U.S. Dist. LEXIS 237983
    (D. Minn. March 23, 2018) ................................................................................. 10

*Hancock v. Credit Pros Int'l Corp.,* 2021 U.S. Dist. LEXIS 131055
    (D.N.J. July 13, 2021) ........................................................................................ 19

*Hashw v. Dep't Stores Nat'l Bank,* 986 F. Supp. 2d 1058 (D. Minn. 2013)..................... 16

*Heilman v. Waldron*, 287 F.R.D. 467 (D. Minn. 2012) ...................................................... 9

*Hickman v. Taylor*, 329 U.S. 495 (1947). ........................................................................... 9

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992). ............................................... 9

*Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 U.S. Dist. LEXIS 66219
    (E.D. Mich. May 11, 2012).................................................................................. 19

*Knutson v. Schwan's Home Serv., Inc.*, 2013 U.S. Dist. LEXIS 98735
    (S.D. Cal. July 15, 2013)…………………………………………………………...…20

*Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579
(N.D. Ill. June 13, 2011)………………………………………………………….20

*Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981
(E.D. Cal. May 30, 2017) ................................................................................ 19

*Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512
(D. Minn. 1992) .............................................................................................. 12

*Meredith v. United Collection Bureau, Inc.*,  2016 U.S. Dist. LEXIS 156214
(N.D. Ohio Nov. 10, 2016) ....................................................................... 13, 17

*Mey v. Enter. Fin. Grp., Inc.*, 2016 U.S. Dist. LEXIS 188389
(M.D. Fla. July 27, 2016) ............................................................................... 16

*O'Shea v. Am. Solar Solution, Inc.*, 2016 U.S. Dist. LEXIS 23420
(S.D. Cal. Feb. 18, 2016) ............................................................................... 14

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)  ................................. 9

*Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531 (N.D. Ill. 2015) .................. 19

*Roark v. Credit One Bank, N.A.,* 2016 U.S. Dist. LEXIS 197329
(D. Minn. Dec. 1, 2016). ................................................................................ 22

*Roylance v. ALG Real Estate Servs., Inc.,* 2015 U.S. Dist. LEXIS 44930
(N.D. Cal. Mar. 16, 2015) .............................................................................. 16

*Strauss v. CBE Grp., Inc.*, 2016 U.S. Dist. LEXIS 191875 (S.D. Fla. Feb. 9, 2016) ....... 14

*Thrasher v. CMRE Financial Services, Inc.,* 2015 U.S. Dist. LEXIS 34965
(S.D. Cal. March 13, 2015). ..................................................................... 14, 20

*Webb v. Healthcare Revenue Recovery Grp. LLC,* 2014 U.S. Dist. LEXIS 11091
(N.D. Cal. Jan. 29, 2014) ......................................................................... 14, 20

*Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 U.S. Dist. LEXIS 136819
(N.D. Ill. 2013)……………………………………………………………………..20

**Rules & Statutes**

28 U.S.C. § 1658(a) ............................................................................................ 18

47 U.S.C. § 227 ...................................................................................... 7, 15, 17

Fed. R. Civ. P. 26 (c)(1) ................................................................................ 24

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................ 11

Fed. R. Civ. P. 26(b)(1) ................................................................................... 9

Fed. R. Civ. P. 34(b)(2)(C) ............................................................................ 21

Fed. R. Civ. P. 37(a)(3). ................................................................................ 10

Fed. R. Civ. P. 37(a)(4). ................................................................................ 10

Fed. R. Civ. P. 37(a)(5)(A). ........................................................................... 25

Fed. R. Civ. P. 37(b)(2)(A). ........................................................................... 25

## I.    INTRODUCTION

In a case about telemarketing, Mad City refuses to produce discovery on who operated its telemarketing program, how the program operated, what complaints it received about its telemarketing, its calling records, and its communications about the program. In other words, Mad City is withholding evidence that cuts to this case's core—not only refusing to participate in the discovery process as the Rules require, but ignoring this Court's order denying its request to bifurcate discovery (ECF No. 78) and stymying Plaintiffs from advancing their case. Although Plaintiffs have met and conferred with Mad City for months to avoid this motion practice, Mad City continues to "decline to respond," citing boilerplate objections on "burden" without providing *any* support establishing its supposed burden.

As a result, Plaintiffs seek an order compelling Mad City to answer Plaintiffs' Interrogatory Nos. 1, 5, 6, 8, 11, and 12, and to produce documents responsive to Plaintiffs' Request Nos. 5, 8, 17, and 18. The evidence sought in these interrogatories and requests falls into five categories: (A) basic witness information, including information regarding Mad City's vendor(s); (B) the dialing system Mad City used to place the calls to Plaintiffs; (C) complaints directed at Mad City or its vendor's outbound telephone calls; (D) Mad City's outbound call and text records; and (E) communications within Mad City and with other third parties relating to Plaintiffs and this litigation.

## II.    BACKGROUND

Plaintiffs sued Mad City because it violated their rights under the TCPA, a law that guards "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms."

47 U.S.C. § 227. Mad City is a "home improvement" company that relies on telemarketing to solicit business. Doc. 30 ("Compl.") ¶¶ 6, 46. Consumers like Ms. Saladino and Mr. Donahue never consented to Mad City's calls but received them anyway. *Id*. ¶ 22 ("At no point did the Plaintiffs consent to receiving telemarketing calls from the Defendants prior to receiving the automated calls at issue").

This violated the TCPA for two reasons. First, Plaintiff Donahue listed his number on the National Do Not Call Registry in 2022, warning telemarketers like Mad City not to call him. *Id*. ¶ 41. Despite that designation, Mad City called Mr. Donahue with its "automated" calling system that spammed Mr. Donahue's phone with calls between November 2023 and April 2024. *Id*. ¶ 43. Because Mad City would not stop calling despite Mr. Donahue's requests, Mr. Donahue sued for relief under a National DNC claim and an "internal" DNC claim. *See* Counts I and II. Second, Like Mr. Donahue, Plaintiff Saladino also told Mad City to stop calling, but she nevertheless received "approximately 20 telemarketing calls" all with the "same scripted telemarketing pitch." *Id*. ¶¶ 30, 34.  As a result, she too sued Mad City asserting an "internal" do not call claim. See Count II.

Plaintiff Saladino filed the Complaint on April 19, 2024, which was amended on July 8, 2024, to include Plaintiff Donahue. ECF Nos. 1, 30. On February 18, 2025, the Court denied Mad City's Motion to Dismiss and Motion to Strike Class Allegations. ECF. No. 77. On February 19, 2025, the Court denied Mad City's Motion to Bifurcate Discovery. ECF No. 78. On March 4, 2025, Mad City answered the Complaint. ECF No. 79. On March 6, 2025, the Court ordered fact discovery to be completed by June 1, 2026. ECF No. 81.

The Parties exchanged initial disclosures in March 2025. Declaration of Anthony Paronich ("Paronich Decl."), ¶ 2. However, Mad City failed to identify any representatives or employees who may have information related to this case. Paronich Decl., ¶ 2; *see also* Exhibit A, Defendant's Initial Disclosures.

Plaintiff served discovery requests on Mad City consisting of fourteen interrogatories and eighteen document requests. Paronich Decl., ¶ 3. On April 3, 2025, Mad City served its responses. Paronich Decl., ¶ 3; Exhibit B, Defendant's Responses to Plaintiffs' Discovery Requests. But Mad City's responses were riddled with boilerplate objections and failed to provide substantive responses. *Id.* Out of the fourteen interrogatories, Mad City refused to answer nine (Nos. 1, 3, 4, 5, 6, 7, 11, 13, 14) and withheld information when responding to the remaining six (Nos. 2, 8, 9, 10, 12). *Id.*

Around two weeks later, Mad City produced only 18 pages in document production, withholding all other documents under the same objections. Paronich Decl., ¶ 4. Indeed, Mad City refused to produce anything beyond a portion of its Standard Operating Procedure for managing "Do Not Call" requests, a lead generation agreement between itself and Renuity, and a Guardian TCPA Report prepared for "Links Quotes." *Id.* Plaintiffs cannot advance their case with Mad City's 18-page production, as it is withholding all other documents on its calling program. *Id.*, ¶ 5.

To avoid motion practice, the parties have met and conferred by phone, video conference, and email. Paronich Decl., ¶ 6; Exhibit C, Meet and Confer Correspondence. Following Plaintiffs' counsel's meet and confer efforts, Mad City agreed to supplement *some* responses by June 18, 2025. Yet it never followed through. *Id.* In essence, Mad City

has granted itself a motion to bifurcate discovery even after the Court declined to bifurcate and has even withheld documents that would have been required in bifurcated discovery. *See* ECF No. 78. Mad City's position also ignores the proper scope of discovery under the Federal Rules of Civil Procedure. Consequently, Plaintiffs seek an order compelling Mad City to fully answer Plaintiffs' Interrogatory Nos. 1, 5, 6, 8, 11, and 12, and to produce documents responsive to Plaintiffs' Request Nos. 5, 8, 17, and 18.

## III.    LEGAL STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure are designed to allow parties to gain discovery into matters which are reasonably calculated to lead to admissible evidence. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Dabney v. Montgomery Ward & Co.*, 761 F. 2d 494, 499 (8th Cir. 1985). A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case… Information within this scope need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Indeed, "the standard of relevance in the context of discovery is broader than in the context of admissibility." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). As such, discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507, (1947). *See also Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("Relevance is construed broadly at the discovery stage."); *Gulf Ins. Co. v. Skyline Displays Inc.*, 2003 U.S. Dist. LEXIS 26511, at *4–5 (D. Minn. October 20, 2003) ("The general

9

scope of discovery…encompasses any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case.").

A party may move for an order compelling discovery when a party fails to produce requested documents or to answer interrogatories. Fed. R. Civ. P. 37(a)(3). "Once the requesting party has established the relevancy of the discovery it seeks, the burden shifts to the party opposing the discovery to show why the discovery may not be had." *Haddley v. Next Chptr. Tech.*, 2018 U.S. Dist. LEXIS 237983, at *9-10 (D. Minn. March 23, 2018). *See also Grupo Petromex, S.A. De C.V. v. Polymetrix AG*, 2019 U.S. Dist. LEXIS 87594, at *4-5 (D. Minn. May 24, 2019) ("The party opposing discovery…has the burden of establishing some good cause or sound reason for blocking disclosure."). The objecting party "cannot rely upon boilerplate objections, but rather they must specify how each interrogatory or request for production is deficient and articulate the particular harm that would accrue if they were required to respond to the discovery request." *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 2014 U.S. Dist. LEXIS 192860, at *23 (D. Minn. May 23, 2014) (citation omitted). An evasive or incomplete response must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

## IV.   ARGUMENT

Despite losing its request to bifurcate discovery (ECF No. 78) Mad City is not only failing to comply with its terms, but withholding all but a handful of documents related to Plaintiffs' claims. This violates the Court's order and the Rules, necessitating Plaintiff's motion. As a result, Plaintiffs seek an order compelling Mad City to provide full and complete answers Plaintiffs' Interrogatory Nos. 1, 5, 6, 8, 11, and 12, and to produce

10

documents responsive to Plaintiffs' Request Nos. 5, 8, 17, and 18. The information sought in these interrogatories and requests broadly falls into five categories: (A) basic witness information, including information regarding Mad City's vendor(s) (Interrogatory Nos. 1, 5, 6, and 8); (B) the dialing system it used to place the calls to Plaintiffs (Interrogatory Nos. 5 and 12); (C) complaints directed at Mad City or its vendor's outbound telephone calls (Request No. 5); (D) Mad City's outbound call and text records (Request No. 17); and (E) communications within Mad City and with other third parties as it relates to Plaintiffs and this litigation (Requests Nos. 8 and 18; Interrogatory No. 11).

### A. Mad City has failed to provide basic witness information.

Witness discovery is not a formality – it is foundational to fair litigation. At the outset, Fed. R. Civ. P. 26(a)(1)(A)(i) requires each party to "provide to the other parties…the name and, if known, the address and telephone number of each individual likely to have discoverable information…that the disclosing party may use to support its claims or defenses." This obligation is automatic and does not require a discovery request. Yet Mad City failed to identify any representatives or employees who may have information related to this case in its initial disclosure. In the same way, Mad City failed to provide basic witness information in response to the below Interrogatories:

- **Interrogatory No. 1:** Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

- **Interrogatory No. 5:** Identify all employees or vendors involved in making outbound calls promoting your services. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

11

- **Interrogatory No. 6:** Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 5.

- **Interrogatory No. 8:** Identify each of the individuals that spoke with either of the Plaintiffs from your company or any of its vendors.

Mad City "decline[d] to respond" to Interrogatory Nos. 1, 5, and 6, and provided a nonresponse to Interrogatory No. 8. Ex. B, pp. 5, 20, 23-25. Rather than respond, Mad City objected in boilerplate, claiming each interrogatory was overbroad, vague, unduly burdensome, and sought information subject to the attorney-client privilege and/or work-product doctrine, or information otherwise outside of Mad City's possession and control. *Id.* at pp. 3-5, 15-20, 23-25. When Mad City would respond, it did so without providing the requested information: "[w]ithout waiving these objections, to the extent that Plaintiffs are asking to whom Plaintiffs spoke, Mad City responds that it was Mad City[.]" Ex. B, pp. 23–25. This is even though Plaintiffs requested the identities of "each of the individuals that spoke with either of the Plaintiffs from your company or any of its vendors" In Interrogatory No. 8. Ex. B, pp. 23-25.

This misconduct violates the Rules. *See Gulf Ins. Co.*, 2003 U.S. Dist. LEXIS 26511, at *4–5 (stating that the Federal "Rules [] require that objections to interrogatories or to requests for production of documents be stated with specificity"); *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 515 (D. Minn. 1992) (stating that "an objection to a discovery request cannot be merely conclusory, and that intoning the 'overly broad and burdensome' litany, without more, does not express a valid objection"). Information on witnesses to the calling program is always "relevant" in TCPA actions. *See,*

12

*e.g., Meredith v. United Collection Bureau, Inc.*, 2016 U.S. Dist. <u>LEXIS 156214</u>, at \*17-18 (N.D. Ohio Nov. 10, 2016) (compelling response to request for the identities of defendant's personnel because "[t]he persons who were involved in defendant's day-to-day calling and compliance practices are likely to have relevant information about this case.") Even Mad City agreed. Following meet and confer efforts, Mad City agreed to supplement its responses by June 18, 2025, but did not.  Paronich Decl., ¶ 6; Ex. C. A court order is therefore necessary to compel Mad City to respond to provide complete responses to Interrogatories Nos. 1, 5, 6, and 8.

### B. Mad City has failed to provide any information about its dialing system.

Mad City's obstruction does not stop with its witnesses. Plaintiffs also seek the following information on the dialing system platform or provider Mad City used to contact Plaintiffs:

> **Interrogatory No. 12:** Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact either of the Either of the Plaintiffs.[1]

While Mad City objected, claiming Interrogatory No. 12 is overly broad and unduly burdensome, this Interrogatory seeks limited information regarding the dialing system Mad City used to contact Plaintiffs. Ex. B, pp. 32-34. Mad City also objected that it seeks information not in its control. *Id.* Yet Mad City obviously has access to the requested material – that is, Mad City knows what dialing system it used to place the calls to Plaintiffs. Mad City further objects that "it is impossible to comprehend" this Interrogatory

---

[1] Interrogatory No. 5, subpart (b), discussed *supra* in Section A, seeks similar information.

given Plaintiffs' use of the following terms: "identify", "you", "vendor", and "contact." *Id*.

But such terms are used in common parlance, and are not "vague." After raising these

objections, Mad City provided the following nonresponse:

> **Response: […]** Without waiving these objections, Mad City responds that
> Mad City contacted Ms. Saladino by visiting her residence in person on
> September 8, 2023, during which time Ms. Saladino voluntarily gave her
> phone number and scheduled an in-person appointment for window services.
> Mad City further responds that Mr. Donahue provided consent on April 8,
> 2024, to https://LinksQuotes.com. Mad City then received Mr. Donahue's
> consent and contact information from Keywords Connect.

Ex. B, p. 34. This does not respond to the request. It repeats Mad City's claimed defenses.

As a result, the Court should compel Mad City to respond as requested.

In *Thrasher v. CMRE Financial Services, Inc.*, the court was faced with a similar

request where the plaintiff sought discovery into the dialing system the defendant used to

place the phone calls. 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015). Defendant

there objected on the same grounds, claiming the "burden" in producing the information

outweighed its value to the case. *Id.* But the Court overruled defendant's objections because

it claimed burden without providing a "compelling reason" to find it existed. *Id*; *See also*

*Webb v. Healthcare Revenue Recovery Grp. LLC,* 2014 U.S. Dist. LEXIS 11091, at \*12

(N.D. Cal. Jan. 29, 2014) (compelling defendant to produce manuals of its autodialer

software and hardware in TCPA action); *Strauss v. CBE Grp., Inc.*, 2016 U.S. Dist. LEXIS

191875, at \*2-3 (S.D. Fla. Feb. 9, 2016) (compelling production of information related to

calling equipment in TCPA action); *O'Shea v. Am. Solar Solution, Inc.*, 2016 U.S.

Dist. LEXIS 23420, at \*12-13 (S.D. Cal. Feb. 18, 2016) (same). So too here. Plaintiffs seek

14

evidence regarding the equipment used to place the calls to Plaintiffs, and Mad City has easy access to this information. Mad City should be compelled to produce it.

### C. Mad City has failed to produce consumer complaints.

Consumer complaints directed at Mad City's telemarketing misconduct related to issues affecting the merits and class certification, as they establish Mad City knew it was violating the law, who it affected, and how it affected them, all "relevant" to Plaintiffs' TCPA claims. 47 U.S.C. § 227(c) (providing "treble" damages for "willful" violations). The request is:

> **RPD No. 5:** Please produce all complaints concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

Mad City again "decline[d] to respond" to this Request, again claiming the request was overbroad, unduly burdensome, unascertainable, ambiguous, and seeks irrelevant information protected by the attorney-client privilege or and/or work product doctrine. Ex. B, pp. 44-47. It added that "[t]he receipt of complaints…is not proof of any issue relevant to this matter [because] [t]he TCPA is a strict liability statute. Either Mad City violated the statute, or it did not." *Id.* at p. 45. This defies logic. If consumers complained that Mad City was telemarketing them without consent, that is evidence Mad City "violated the statute[.]" In addition, the TCPA provides for treble damages (*i.e.,* $1,500 instead of $500 per violation) when a defendant "willfully or knowingly" violates the statute. 47 U.S.C. § 227(3)(C). The FCC has held that "'[w]illful' in this context means that the violator knew that he was doing the act in question…A violator need not know that his action or inaction

15

constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortg.*, LLC, 22 F.C.C. Rcd. 9453, 9470 n. 86 (May 14, 2007). As such, courts "have generally interpreted willfulness to imply only that an action was intentional." *Roylance v. ALG Real Estate Servs., Inc.,* 2015 U.S. Dist. LEXIS 44930, at *31 (N.D. Cal. Mar. 16, 2015) (citing cases); *see also, e.g., Hashw v. Dep't Stores Nat'l Bank,* 986 F. Supp. 2d 1058, 1062 (D. Minn. 2013) (agreeing that "knowledge of the law is unnecessary and that a plaintiff must only plead the defendant willfully made the ATDS calls").

In other words, complaints about misconduct go the merits and damages. Given their relevance, courts do not hesitate to compel defendants to produce consumer complaints and investigations in TCPA actions. *See, e.g., Meredith,* 2016 U.S. Dist. LEXIS 156214, at *19 (granting plaintiffs' motion to compel the production of consumer complaints in TCPA class action because it " seeks information that could have bearing on plaintiff's class claims as well as defendant's alleged willfulness"); *O'Shea,* 2016 U.S. Dist. LEXIS 23420, at *19-20 (same); *Mey v. Enter. Fin. Grp., Inc.*, 2016 U.S. Dist. LEXIS 188389, at *22-23 (M.D. Fla. July 27, 2016) (requiring the defendant "to identify any consumer complaints, government investigations, and lawsuits involving allegations of a TCPA violation filed or asserted against [it]"); *Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 505 (N.D. Ill. 2009) (granting motion to compel prior TCPA complaints because, if defendant "has been charged with violations on numerous prior occasions, that is certainly relevant to its knowledge of the TCPA and the actions it did or did not take to ensure compliance with the statute.").

16

Furthermore, Plaintiffs specifically allege that other consumers have complained with the Better Business Bureau about the same misconduct, mirroring the complaints raised by Plaintiffs. ECF. No. 30, Comp., ¶ 39. Yet "Mad City denies that it wilfully and knowingly violated the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C)" and further claims that its actions were not knowing and/or wilful because any violation was unintentional and the result of a bona fide error despite the maintenance of procedures reasonably adapted to avoid such violations." ECF No. 79, Defendant's Answer, pp. 20-21. Thus, Mad City's knowledge and willfulness is a disputed, material issue relevant to the determination of damages.[2] Mad City's conclusory objections should be deemed invalid, and Mad City should be compelled to provide documentation completely responsive to Request No. 5.

### D. Mad City has not produced any outbound call or text records.

Outbound call and text records are at the heart of this litigation, yet Mad City is withholding them to shield itself from classwide liability despite the fact this Court denied its motion to bifurcate discovery. ECF No. 78. The requested records are the only evidence that can establish the number of individuals who received Mad City's solicitations, the frequency of those communications, whether prerecorded content was used, and whether recipients were on the DNC Registry or attempted to opt out. This information bears directly on liability, class certification, and damages. *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243 (N.D. Ohio 2017) (ordering TCPA defendant to write computer program to extract class call and account note data from its system because "[t]he

---

[2] Plaintiffs are willing to withdraw this request if Mad City stipulates that they acted knowingly or willfully.

17

information that Plaintiff seeks is relevant to establishing the size and nature of the class"

and the "the relief available under the TCPA because the statute provides for damages on

a per-violation basis").

The disputed request at issue is below:

> **RPD No. 17:** Please produce all documents containing any of the following
> information for each outbound telemarketing call sent by you or your
> vendor, including those made to the either of the Plaintiffs:
>   a) the date and time;
>   b) the caller ID;
>   c) any recorded message used;
>   d) the result;
>   e) identifying information for the recipient; and
>   f) any other information stored by the call detail records.

Mad City again responded in boilerplate. Ex. B, pp. 70-73. Mad City also claimed

it would take "hundreds of thousands of hours" to produce responsive information, and

such information would "needlessly risk[] the privacy of thousands of individuals." *Id.* at

pp. 70, 71-72. But Mad City never supported its "hundreds of thousands of hours" figure

with proof. Nor did it consider that Plaintiffs limited their request to the four years

preceding the filing of the complaint, given the TCPA's four-year statute of limitations.

*See* 28 U.S.C. § 1658(a). Additionally, the Request is not invasive, given that it seeks only

"identifying information for the recipient" which can simply be a name or a number at this

early stage. It is apparent that Mad City's sole, true objection is that it does not want to

give Plaintiffs' counsel what they need to properly support their class certification motion,

even though such discovery is required in order for a court to perform its "rigorous

analysis" in deciding class certification. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Indeed, when the Parties met and conferred about this request, Mad City confirmed it

18

understood what information Plaintiffs were seeking, and agreed to consider what volume of EverConnect leads exist and/or canvassing by June 18, 2025. Since June 18, 2025, Mad City has repeatedly ignored Plaintiffs' attempts to revisit this issue. Paronich Decl., ¶ 7; *see also* Ex. C.

Mad City's position is also directly contradicted by TCPA cases ordering production of call data sufficient to ascertain the proposed class, which is standard practice in TCPA class actions. *See, e.g., Hancock v. Credit Pros Int'l Corp.,* 2021 U.S. Dist. LEXIS 131055, at *26-27 (D.N.J. July 13, 2021) ("Contrary to [defendant's] asseverations, production of call logs and related data is standard fare in TCPA actions.); *Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531, at *23 (N.D. Ill. 2015) ("Call data is relevant, and thus produced as standard practice…in cases where the defendant is the alleged dialer.").

Courts throughout the country have likewise found that production of call data is standard practice in TCPA class actions. *Cahill v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 63918, at *13-14 (S.D. Cal. Apr. 16, 2018) ("The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a)."); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 U.S. Dist. LEXIS 66219, at *7 (E.D. Mich. May 11, 2012) (internal citation omitted) ("This information is both relevant to Plaintiff's class action claims… and such disclosure is a common practice in the class action context"); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of call data because "the Court agrees

19

with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity."). [3]

Without the requested information, Plaintiffs cannot demonstrate the scope of Mad City's violations or the commonality of its practices across the proposed class. This is the most basic evidence in the case, and it is Mad City's burden to show why it should be relieved from the requirement of producing discovery that is plainly relevant. Its objections do not. Mad City's call data is readily identifiable in its records, and the Court should order Mad City to fully respond to Request No. 17.

### E. Mad City has not produced relevant communications.

Plaintiffs seek documents on Mad City's relationship with its third-party dialing vendors, and communications concerning Plaintiffs and this litigation. These communications are probative of Mad City's knowledge and willfulness, and may also show how Mad City implemented its alleged Do Not Call procedures. Plaintiffs made the following disputed requests:

> **Interrogatory No. 11:** Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

---

[3] *See also Knutson v. Schwan's Home Serv., Inc.*, 2013 U.S. Dist. LEXIS 98735, at *25-26 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class); *Thrasher,* 2015 U.S. Dist. LEXIS 34965, at *8 (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) (same); *Webb,* 2014 U.S. Dist. LEXIS 11091, at *11 (same); *Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 U.S. Dist. LEXIS 136819, at *13-14 (N.D. Ill. 2013) (same); *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579 at *8-12 (N.D. Ill. June 13, 2011) (same).

**RPD No. 8:** All internal communications at your company regarding any vendor that provided you with the either of the Plaintiffs' telephone number or information.

**RPD No. 18:** All communications with any third party concerning this litigation other than your attorney.

Mad City has not produced any communications between itself and its vendors, or any communications between itself and any third parties concerning Plaintiffs and this litigation. Paronich Decl., ¶ 5. Instead, it "decline[d] to respond" to each. Ex. B, pp. 31, 53, 75. Again, Mad City objects that each request is unintelligible, vague, overly broad, unduly burdensome (because "Mad City would have to comb through the business records and personal records of all relevant persons and entities to find those that may have touched upon the current litigation"), invasive, and seek confidential information insofar as the requests implicate attorney-client privilege and/or work-product doctrine. Ex. B, pp. 30-31, 51-53, 73-75. Yet Interrogatory No. 11 and Request No. 18 specifically exclude attorney communications. To the extent Mad City is withholding information it believes is confidential, it must produce a privilege log detailing what information it has withheld and on what basis, rather than refuse to respond entirely. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). As such, Mad City is required to state for each objection whether documents were withheld.

During subsequent meet and confers, Mad City claimed that Plaintiffs' demand for correspondence with the vendor that allegedly provided Plaintiff Donahue's information is

21

"inappropriate." Paronich Decl. ¶ 8. Yet Mad City claims Plaintiff Donahue provided one of its vendors or lead generators with consent to be contacted. *Id; see also* ECF. No. 79, ¶¶ 5, 44. By raising these defenses, Mad City concedes that its communications with its vendors are relevant to Plaintiffs' claims and its own defenses. Mad City cannot claim on the one hand that Plaintiff Donahue provided consent to be contacted, while simultaneously refusing to produce its correspondence with the entity which alleged received Plaintiff Donahue's consent. *See* Ex. B and *supra,* Section B (Mad City's response to Interrogatory No. 12). Moreover, Mad City's communications with its vendors and lead generators will shed light upon Mad City's state of mind in making calls to noncustomers on the National DNC Registry, or noncustomers who have asked Mad City to stop calling, like Plaintiffs. These requests also encompass any agreements between Mad City and any third-party vendor(s) that provided Mad City with either of Plaintiffs' telephone numbers. Much like Mad City's communications with its vendors, complete contractual agreements with its vendors are relevant to Plaintiffs' claims and are undoubtedly discoverable.

In *Roark v. Credit One Bank, N.A.,* the District of Minnesota was faced with nearly identical issues. 2016 U.S. Dist. LEXIS 197329 (D. Minn. Dec. 1, 2016). Plaintiff Roark sought the following:

> Request No. 13: All documents relating to or evidencing any communications (written or verbal) between you and any other person or entity as it relates to making, placing and/or initiating telephone calls to Plaintiff and/or Plaintiff's Cell Phone Number. This Request includes communications with any third party vendor, outside dialing company, and/or any other person or entity that makes, initiates or places telephone calls on behalf of Defendant.

> Request No. 15: All documents relating to or evidencing any contracts or agreements (written or oral) between you and any person or entity as it relates to

making, placing and/or initiating telephone calls to Plaintiff and/or Plaintiff's Cell Phone Number. This Request includes agreements with any third party vendor, outside dialing company, and/or any other person or entity that makes, initiates or places telephone calls on behalf of Defendant.

*Id.* at \*3. In response, defendant objected "that its communications and Agreements with its vendors do not relate to the claims and defenses" and that "that it is obligated to maintain the confidentiality of its vendor Agreements." *Id.* at \*8-9. The Court disagreed and ordered defendant to respond to both requests, stating:

> Communications between Credit One and the vendors hired to make those calls are highly relevant to the claims at issue. The Court also observes that these communications do not fall within the scope of any asserted privilege and are squarely within the purview of Rule 26. Roark is entitled to the documents requested in his Request No. 13….[and] Roark is entitled to unredacted copies of the Agreements between Credit One and its vendors as requested in Request No. 15 in order to better understand the role that Credit One anticipated its vendors would perform.

*Id.* at \*9.  The disputed requests here are strikingly similar to *Roark* in that Plaintiffs seek communications between Mad City and third parties, including its vendors, concerning Plaintiffs and this litigation. Importantly, the court in *Roark* ordered defendant to produce the requests materials. Likewise, this Court should follow suit.

The District of Minnesota is not alone in finding that such communications are relevant and should be produced. *See, e.g., Hancock,* 2021 U.S. Dist. LEXIS 131055, at \*26-27 ("Plaintiff has requested 'contracts or agreements with Defendant or anyone acting on their behalf.' This demand is proper, with a caveat: such agreements are discoverable to the extent that they concern the vendors placing voice or text messages during the relevant period."); *Grant v. Regal Auto. Grp., Inc.,* 2020 U.S. Dist. LEXIS 42685, at \*6-7 (M.D. Fla. Mar. 12, 2020) (defendant's communications with third-party vendors

23

regarding voicemail campaigns during actionable time period to be relevant and proportional to the needs of the case); *O'Shea,* 2016 U.S. Dist. LEXIS 23420, at *16 (ordering production of materials "concern[ing TCPA] Defendant's relationship to other entities or persons" because "[w]hether other entities aided [defendant] in placing phone calls is relevant to [plaintiff's] TCPA claims and discoverable."). Mad City should be compelled to produce communications between itself and third-parties relating to Plaintiffs and this litigation.

## V.    FEES AND DISCOVERY SANCTIONS

Aside from Plaintiffs, Mad City did not identify a single individual person in its Initial Disclosures. Paronich Decl., ¶ 2; Ex. B. Continuing with its obfuscation, Mad City did not identify any individual persons in response to Plaintiffs' Interrogatories, and failed to respond to the majority of Plaintiffs discovery requests. *Id.*, ¶ 3; *see also* Ex. B. When Mad City did not "decline[] to respond," its responses were actually nonresponses. For example, when Plaintiffs sought identity of "each of the individuals that spoke with either of the Plaintiffs from your company or any of its vendors," Mad City responded that the Plaintiffs spoke with Mad City. Ex. B, p. 25. Moreover, Mad City confirmed it would supplement some of its responses by June 18, 2025. Paronich Decl., ¶ 6. It has not. *Id.*

Under rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26 (c)(1). In addition, when a party fails to disclose or respond to discovery requests, the non-compliant party may be ordered to pay the

moving party its reasonable attorneys' fees, costs and expenses incurred, unless the motion was made without making a good faith effort to obtain discovery without having to involve the Court, or that the non-compliant party's failure was substantially justified or other circumstances exist making such an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). As detailed above, Plaintiffs' counsel made numerous efforts to obtain discovery without involving the Court and Mad City's failure to supplement or provide adequate responses was not substantially justified. In spite of Plaintiffs' counsel's best efforts and multiple notices, Mad City has failed or refused to comply. The Court may also impose sanctions under Rule 37(b)(2)(A), which include prohibiting Mad City from relying on certain evidence, striking pleadings, dismissing the proceeding, and even rendering a default. Fed. R. Civ. P. 37(b)(2)(A).

Plaintiffs request that Mad City be prohibited from relying on certain witnesses Mad City failed to disclose in its Initial Disclosures and in subsequent discovery. Likewise, Plaintiffs request that Mad City be prohibited from disclosing material in which Mad City failed to disclose in its Initial Disclosures. Finally, Plaintiffs request that Mad City be ordered to pay the attorneys' fees, costs and expenses Plaintiffs incurred in filing this motion, given Mad City's nonresponses and continued refusal to supplement.

## VI.   CONCLUSION

For the above reasons, Mad City should be compelled to answer Plaintiffs' Interrogatory Nos. 1, 5, 6, 8, 11, and 12, and to produce documents responding to Plaintiffs' Request Nos. 5, 8, 17, and 18. Plaintiffs request that this motion be granted in its entirety; that Mad City be ordered to pay Plaintiffs' reasonable expenses including attorney's fees,

25

incurred in filing this motion; and that Mad City be prohibited from relying upon witness and materials in which Mad City failed to disclose.

Dated: September 15, 2025                    By:      /s/ Anthony Paronich
                                                      Anthony Paronich (*pro hac vice*)
                                                      **PARONICH LAW, P.C.**
                                                      350 Lincoln Street, Suite 2400
                                                      Hingham, MA 02043
                                                      Telephone: (617) 485-0018
                                                      Fax: (508) 318-8100
                                                      anthony@paronichlaw.com


                                                      Raina C. Borrelli
                                                      Alex Phillips (*pro hac vice*)
                                                      **STRAUSS BORRELLI PLLC**
                                                      One Magnificent Mile
                                                      980 N. Michigan Avenue, Suite 1610
                                                      Chicago IL, 60611
                                                      Telephone: (872) 263-1100
                                                      Facsimile: (872) 263-1109
                                                      raina@straussborrelli.com

26

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **ALISHA SALADINO and DAVID DONAHUE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**MAD CITY HOME IMPROVEMENT, LLC d/b/a MAD CITY WINDOWS & BATHS**<br><br>*Defendant.* | Case No. 0:24-cv-01419-NEB-ECW<br><br>**PLAINTIFFS' CERTIFICATE OF COMPLIANCE REGARDING MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |

This Memorandum of Law complies with the word-line limitation of Local Rule 7-1(f) because it contains 5,876 words, as determined by Microsoft 365 MSO, including the headings and footnotes and excluding the parts of the brief exempted by Local Rule 7-1(f). The brief also complies with the type size requirements of Local Rule 7-1(h) because the text appears in 13-point Times New Roman, a proportionally spaced serif typeface.

Dated: September 15, 2025

By:   */s/ Anthony Paronich*
       Anthony Paronich

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on September 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 15th day of September, 2025.

STRAUSS BORRELLI PLLC

*/s/ Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

28