UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ALISHA SALADINO and DAVID DONAHUE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MAD CITY HOME IMPROVEMENT, LLC, d/b/a MAD CITY WINDOWS & BATHS,<br><br>Defendant. | Case No. 0:24-cv-01419-NEB-EMB<br><br>Honorable Judge Nancy E. Brasel<br><br>Honorable Magistrate Judge Elsa M. Bullard<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER COMPELLING DISCOVERY** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................... 1

III. LEGAL STANDARD............................................................................................ 4

IV. ARGUMENT......................................................................................................... 6

   A. Mad City has failed to produce consumer complaints........................................ 6

   B. Mad City has not produced any outbound call or text records. ......................... 8

V. FEES AND DISCOVERY SANCTIONS ............................................................ 11

VI. CONCLUSION.................................................................................................... 12

# TABLE OF AUTHORITIES

**Administrative Materials**

*In re Dynasty Mortg., LLC,*
  22 F.C.C. Rcd. 9453, 9470 n. 86 (May 14, 2007) ...................................................... 7


**Cases**

*Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*,
  2014 U.S. Dist. LEXIS 192860 (D. Minn. May 23, 2014) .......................................... 6

*Cahill v. GC Servs. Ltd. P'ship*,
  2018 U.S. Dist. LEXIS 63918 (S.D. Cal. Apr. 16, 2018) .......................................... 10

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...................................................................................................... 10

*Dabney v. Montgomery Ward & Co.*,
  761 F. 2d 494 (8th Cir. 1985) ...................................................................................... 4

*Donnelly v. NCO Fin. Sys.*,
  263 F.R.D. 500 (N.D. Ill. 2009) .................................................................................. 7

*Grupo Petromex, S.A. De C.V. v. Polymetrix AG*,
  2019 U.S. Dist. LEXIS 87594 (D. Minn. May 24, 2019) .......................................... 5

*Gulf Ins. Co. v. Skyline Displays Inc.*,
  2003 U.S. Dist. LEXIS 26511 (D. Minn. October 20, 2003) .................................... 5

*Gusman v. Comcast Corp.*,
  298 F.R.D. 592 (S.D. Cal. 2014) ................................................................................11

*Haddley v. Next Chptr. Tech.*,
  2018 U.S. Dist. LEXIS 237983 (D. Minn. March 23, 2018) .................................... 5

*Hancock v. Credit Pros Int'l Corp.,*
  2021 U.S. Dist. LEXIS 131055 (D.N.J. July 13, 2021) .......................................... 10

*Hashw v. Dep't Stores Nat'l Bank,*
  986 F. Supp. 2d 1058 (D. Minn. 2013). ...................................................................... 7

*Heilman v. Waldron*,
    287 F.R.D. 467 (D. Minn. 2012) ................................................................................... 5

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ...................................................................................................... 4

*Hofer v. Mack Trucks, Inc.*,
    981 F.2d 377 (8th Cir. 1992) ........................................................................................ 5

*Knutson v. Schwan's Home Serv., Inc.*,
    2013 U.S. Dist. LEXIS 98735 (S.D. Cal. July 15, 2013) ............................................ 11

*Martin v. Bureau of Collection Recovery*,
    2011 U.S. Dist. LEXIS 157579 (N.D. Ill. June 13, 2011) ........................................... 11

*Mbazomo v. ETourandTravel, Inc*.,
    2017 U.S. Dist. LEXIS 82411 (E.D. Cal. May 26, 2017) ........................................... 11

*Meredith v. United Collection Bureau, Inc.*,
    319 F.R.D. 240 (N.D. Ohio 2017) ................................................................................ 9

*Mey v. Enter. Fin. Grp., Inc.*,
    2016 U.S. Dist. LEXIS 188389 (M.D. Fla. July 27, 2016) ........................................... 7

*O'Shea v. Am. Solar Solution, Inc.,*
    2016 U.S. Dist. LEXIS 23420 (S.D. Cal. Feb. 18, 2016) .............................................. 7

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ...................................................................................................... 4

*Ossola v. Am. Express Co.*,
    2015 U.S. Dist. LEXIS 117531 (N.D. Ill. Sep. 3, 2015) ............................................. 10

*Roylance v. ALG Real Estate Servs., Inc.,*
    2015 U.S. Dist. LEXIS 44930 (N.D. Cal. Mar. 16, 2015) ............................................ 7

*Thrasher v. CMRE Fin. Servs.,*
    2015 U.S. Dist. LEXIS 34965 (S.D. Cal., Mar. 13, 2015) .......................................... 11

*Whiteamire Clinic, P.A. v. Quill Corp.*,
    2013 U.S. Dist. LEXIS 136819 (N.D. Ill. Sep. 24, 2013) ........................................... 11

*Webb v. Healthcare Revenue Recovery Group LLC,*
    2014 U.S. Dist. LEXIS 11091 (N.D. Cal. Jan. 29, 2014) ............................................ 11

**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................................. 5
Fed. R. Civ. P. 37(a)(3) .................................................................................................. 5
Fed. R. Civ. P. 37(a)(4) .................................................................................................. 6
Fed. R. Civ. P. 37(a)(5)(A) .......................................................................................... 12

**Statutes**

28 U.S.C. § 1658(a) ....................................................................................................... 9
47 U.S.C. § 227 .................................................................................................... 1, 6, 7, 8

## I.   INTRODUCTION

Mad City's refusal to produce its outbound calling and texting records strikes at the heart of this TCPA case. Those records are the foundational, objective evidence needed to determine whether Mad City placed unlawful telemarketing calls to numbers listed on the National Do Not Call Registry or on its Internal Do Not Call list, how often those calls were made, and how many violations occurred. Without this data, Plaintiffs are effectively prevented from proving liability, statutory damages, or the classwide scope of Mad City's conduct. Mad City's parallel refusal to produce consumer complaints further compounds this prejudice, as those complaints bear directly on knowledge, willfulness, and entitlement to treble damages. Courts across the country routinely compel production of consumer complaints and outbound calling records in TCPA actions precisely because such evidence is indispensable to class certification and damages analysis.

Although Plaintiffs have met and conferred with Mad City for months to avoid this motion practice, Mad City continues to "decline to respond," citing boilerplate objections on "burden" without providing *any* support establishing its supposed burden. As a result, Plaintiffs seek an order compelling Mad City to produce documents responsive to Plaintiffs' Request Nos. 5 (complaints directed at Mad City or its vendor's outbound telephone calls) and 17 (Mad City's outbound call and text records).

## II.   BACKGROUND

Plaintiffs sued Mad City because it violated their rights under the TCPA, a law that guards "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms." 47 U.S.C. § 227. Mad City is a "home improvement" company that relies on telemarketing to solicit business. Doc. 30 ("Compl.") ¶¶ 6, 46. Ms. Saladino and Mr. Donahue never consented to Mad City's calls but received them anyway. *Id*. ¶ 22 ("At no point did the Plaintiffs consent to receiving telemarketing calls from the Defendants prior to receiving the automated calls at issue").

1

This violated the TCPA for two reasons. First, Plaintiff Donahue listed his number on the National Do Not Call Registry in 2022, warning telemarketers like Mad City not to call him. *Id*. ¶ 41. Despite that designation, Mad City called Mr. Donahue with its "automated" calling system that spammed Mr. Donahue's phone with calls between November 2023 and April 2024. *Id*. ¶ 43. Because Mad City would not stop calling despite Mr. Donahue's requests, Mr. Donahue sued for relief under a National DNC claim and an "internal" DNC claim. *See* Counts I and II. Second, like Mr. Donahue, Plaintiff Saladino also told Mad City to stop calling, but she nevertheless received "approximately 20 telemarketing calls" all with the "same scripted telemarketing pitch." *Id*. ¶¶ 30, 34. As a result, she too sued Mad City asserting an "internal" do not call claim. See Count II. And their experience was not isolated, as other consumers have reported the same misconduct. *Id*. ¶ 39.

Plaintiff Saladino filed the Complaint on April 19, 2024, which was amended on July 8, 2024, to include Plaintiff Donahue. ECF Nos. 1, 30. On February 18, 2025, the Court denied Mad City's Motion to Dismiss and Motion to Strike Class Allegations. ECF. No. 77. On February 19, 2025, the Court denied Mad City's Motion to Bifurcate Discovery. ECF No. 78. On March 4, 2025, Mad City answered the Complaint. ECF No. 79. On March 6, 2025, the Court ordered fact discovery to be completed by June 1, 2026. ECF No. 81. The Parties also exchanged initial disclosures in March 2025. Declaration of Anthony Paronich ("Paronich Decl."), ¶ 2. However, Mad City failed to identify any representatives or employees who may have information related to this case. *Id*., ¶ 2; *see also* Exhibit A, Defendant's Initial Disclosures.

Plaintiff served discovery requests on Mad City consisting of fourteen interrogatories and eighteen document requests. *Id*., ¶ 3. On April 3, 2025, Mad City served its responses. *Id.*, ¶ 3; Exhibit B, Defendant's Responses to Plaintiffs' Discovery Requests. But Mad City's responses were riddled with boilerplate objections and failed to provide substantive responses. *Id.* Out of the

2

fourteen interrogatories, Mad City refused to answer nine (Nos. 1, 3, 4, 5, 6, 7, 11, 13, 14) and withheld information when responding to the remaining six (Nos. 2, 8, 9, 10, 12). *Id.* Around two weeks later, Mad City produced only 18 pages in document production, withholding all other documents under the same objections. *Id.*, ¶ 4. Indeed, Mad City refused to produce anything beyond a portion of its Standard Operating Procedure for managing "Do Not Call" requests, a lead generation agreement between itself and Renuity, and a Guardian TCPA Report prepared for "Links Quotes." *Id.* Plaintiffs cannot advance their case with Mad City's 18-page production, as it is withholding the most basic evidence in this case. *Id.*, ¶ 5.

Following Plaintiffs' counsel's meet and confer efforts, Mad City agreed to supplement *some* responses by June 18, 2025. *Id.*, ¶ 6. Yet it never followed through. *Id.* For example, when the Parties met and conferred about Request for Production, Number 17, seeking outbound call records, Mad City confirmed it understood what information Plaintiffs were seeking, and agreed to consider what volume of EverConnect leads exist and/or canvassing by June 18, 2025. *Id.* But Mad City ignored Plaintiffs' attempts to revisit this issue. Accordingly, on September 15, 2025, Plaintiff filed a motion to compel the following categories of information: (A) basic witness information, including information regarding Mad City's vendor(s) (Interrogatory Nos. 1, 5, 6, and 8); (B) the dialing system it used to place the calls to Plaintiffs (Interrogatory Nos. 5 and 12); (C) complaints directed at Mad City or its vendor's outbound telephone calls (Request No. 5); (D) Mad City's outbound call and text records (Request No. 17); and (E) communications within Mad City and with other third parties as it relates to Plaintiffs and this litigation (Requests Nos. 8 and 18; Interrogatory No. 11). ECF No. 83; Paronich Decl., ¶ 8. The Court held an informal status conference on October 9, 2025, during which it directed the Parties to meet and confer and

instructed Plaintiff to withdraw the then-pending motion to compel and re-notice the motion for November 13, 2025, if necessary. ECF No. 91; Paronich Decl., ¶ 9.

The Parties continued their meet and confer efforts, including correspondence by videoconference, and on October 28, 2025, Mad City provided Supplemental Discovery Responses to Interrogatories Nos. 1, 5, 6, 8, 11, 12 and 18. Paronich Decl., ¶ 10; *see also* Exhibit C, Defendant's Supplemental Responses to Plaintiff's First Set of Discovery. Following additional meet and confers in November and December 2025, Mad City agreed to produce documents responsive to Requests for Production Nos. 8 and 18, and to serve a second set of supplemental responses to Interrogatories Nos. 5 and 11 in December 2025. *Id.,* ¶ 11. Plaintiffs are still waiting for Mad City to provide the supplemental responses it agreed to provide. *Id.* However, Mad City confirmed it would not produce documents responsive to Plaintiffs' Request Nos. 5 (complaints directed at Mad City or its vendor's outbound telephone calls) and 17 (Mad City's outbound call and text records). *Id.,* ¶ 11. In withholding calling records, Mad City has granted itself a motion to bifurcate discovery even after the Court declined to bifurcate (and has even withheld documents that would have been required in bifurcated discovery). *See* ECF No. 78. Mad City's position also ignores the proper scope of discovery under the Federal Rules of Civil Procedure. Consequently, Plaintiffs seek an order compelling Mad City to produce documents responsive to Plaintiffs' Request Nos. 5 and 17.

### III.   LEGAL STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure are designed to allow parties to gain discovery into matters which are reasonably calculated to lead to admissible evidence. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), LEXIS 113; *Dabney v. Montgomery Ward & Co.*, 761 F. 2d 494, 499 (8th Cir. 1985), LEXIS 31104. A

party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case… Information within this scope need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Indeed, "the standard of relevance in the context of discovery is broader than in the context of admissibility." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992), [LEXIS 32442](). As such, discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507, (1947), [LEXIS 2966](). *See also Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012) ("Relevance is construed broadly at the discovery stage."); *Gulf Ins. Co. v. Skyline Displays Inc.*, 2003 U.S. Dist. [LEXIS 26511](), at *4–5 (D. Minn. October 20, 2003) ("The general scope of discovery…encompasses any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case.").

A party may move for an order compelling discovery when a party fails to produce requested documents or to answer interrogatories. Fed. R. Civ. P. 37(a)(3). "Once the requesting party has established the relevancy of the discovery it seeks, the burden shifts to the party opposing the discovery to show why the discovery may not be had." *Haddley v. Next Chptr. Tech.*, 2018 U.S. Dist. [LEXIS 237983](), at *9-10 (D. Minn. March 23, 2018). *See also Grupo Petromex, S.A. De C.V. v. Polymetrix AG*, 2019 U.S. Dist. [LEXIS 87594](), at *4-5 (D. Minn. May 24, 2019) ("The party opposing discovery…has the burden of establishing some good cause or sound reason for blocking disclosure."). The objecting party "cannot rely upon boilerplate objections, but rather they must specify how each interrogatory or request for production is deficient and articulate the particular harm that would accrue if they were required to respond to the discovery request." *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 2014 U.S. Dist. [LEXIS 192860](), at *23 (D.

5

Minn. May 23, 2014) (citation omitted). An evasive or incomplete response must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

## IV.   ARGUMENT

Despite losing its request to bifurcate discovery (ECF No. 78) Mad City is not only failing to comply with its terms, but is withholding calling data – core evidence that allows Plaintiffs to prove TCPA liability on a classwide basis. This violates the Court's order and the Rules, necessitating Plaintiff's motion. As a result, Plaintiffs seek an order compelling Mad City to produce documents responsive to Plaintiffs' Request Nos. 5 and 17. The information sought in these requests include information regarding (A) complaints directed at Mad City or its vendor's outbound telephone calls (Request No. 5); and (B) Mad City's outbound call and text records (Request No. 17).

### A. Mad City has failed to produce consumer complaints.

Consumer complaints directed at Mad City's telemarketing misconduct related to issues affecting the merits and class certification, as they establish Mad City knew it was violating the law, who it affected, and how it affected them, all "relevant" to Plaintiffs' TCPA claims. 47 U.S.C. § 227(c) (providing "treble" damages for "willful" violations). The request is:

> **RPD No. 5:** Please produce all complaints concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

Mad City again "decline[d] to respond" to this Request, again claiming the request was overbroad, unduly burdensome, unascertainable, ambiguous, and seeks irrelevant information protected by the attorney-client privilege or and/or work product doctrine. Ex. B, pp. 44-47. It added that "[t]he receipt of complaints…is not proof of any issue relevant to this matter [because] [t]he TCPA is a strict liability statute. Either Mad City violated the statute, or it did not." *Id.* at p.

6

45. This defies logic. If consumers complained that Mad City was telemarketing them without consent, that is evidence Mad City "violated the statute[.]" In addition, the TCPA provides for treble damages (*i.e.,* $1,500 instead of $500 per violation) when a defendant "willfully or knowingly" violates the statute. 47 U.S.C. § 227(3)(C). The FCC has held that "'[w]illful' in this context means that the violator knew that he was doing the act in question…A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortg*., LLC, 22 F.C.C. Rcd. 9453, 9470 n. 86 (May 14, 2007). As such, courts "have generally interpreted willfulness to imply only that an action was intentional." *Roylance v. ALG Real Estate Servs., Inc.,* 2015 U.S. Dist. LEXIS 44930, at *31 (N.D. Cal. Mar. 16, 2015) (citing cases); *see also, e.g., Hashw v. Dep't Stores Nat'l Bank,* 986 F. Supp. 2d 1058, 1062 (D. Minn. 2013), LEXIS 167956 (agreeing that "knowledge of the law is unnecessary and that a plaintiff must only plead the defendant willfully made the ATDS calls").

In other words, complaints about misconduct go to the merits and damages. Given their relevance, courts do not hesitate to compel defendants to produce consumer complaints and investigations in TCPA actions. *See, e.g., Meredith,* 2016 U.S. Dist. LEXIS 156214, at *19 (granting plaintiffs' motion to compel the production of consumer complaints in TCPA class action because it " seeks information that could have bearing on plaintiff's class claims as well as defendant's alleged willfulness"); *O'Shea,* 2016 U.S. Dist. LEXIS 23420, at *19-20 (same); *Mey v. Enter. Fin. Grp., Inc.*, 2016 U.S. Dist. LEXIS 188389, at *22-23 (M.D. Fla. July 27, 2016) (requiring the defendant "to identify any consumer complaints, government investigations, and lawsuits involving allegations of a TCPA violation filed or asserted against [it]"); *Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 505 (N.D. Ill. 2009), LEXIS 124730 (granting motion to compel prior TCPA complaints because, if defendant "has been charged with violations on numerous prior

7

occasions, that is certainly relevant to its knowledge of the TCPA and the actions it did or did not take to ensure compliance with the statute.").

Furthermore, Plaintiffs specifically allege that other consumers have complained with the Better Business Bureau about the same misconduct, mirroring the complaints raised by Plaintiffs. ECF. No. 30, Comp., ¶ 39. Yet "Mad City denies that it wilfully and knowingly violated the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C)" and further claims that its actions were not knowing and/or wilful because any violation was unintentional and the result of a bona fide error despite the maintenance of procedures reasonably adapted to avoid such violations." ECF No. 79, Defendant's Answer, pp. 20-21. Thus, Mad City's knowledge and willfulness is a disputed, material issue relevant to the determination of damages.[1] Mad City's conclusory objections should be deemed invalid, and Mad City should be compelled to provide documentation completely responsive to Request No. 5.

**B. Mad City has not produced any outbound call or text records.**

Outbound call and text records are at the heart of this litigation, yet Mad City is withholding them to shield itself from classwide liability despite the fact this Court denied its motion to bifurcate discovery. ECF No. 78. The requested records are the only evidence that can establish the number of individuals who received Mad City's solicitations, the frequency of those communications, whether prerecorded content was used, and whether recipients were on the DNC Registry or attempted to opt out. As Plaintiffs' expert Aaron Woolfson explains, call detail records ("CDRs") can be efficiently and reliably analyzed to identify whether numbers were on the National DNC list for more than thirty days at the time of the call, the frequency of those calls

---

[1] Plaintiffs are willing to withdraw this request if Mad City stipulates that they acted knowingly or willfully.

within a twelve-month period, and whether calls continued after placement on Defendant's internal DNC list. Paronich Decl., ¶ 13; Declaration of Expert Aaron Woolfson ("Wolfson Decl."), ¶¶ 2-4, 17–21, 27. This information bears directly on liability, class certification, and damages. *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243 (N.D. Ohio 2017), LEXIS 56783, (ordering TCPA defendant to write computer program to extract class call and account note data from its system because "[t]he information that Plaintiff seeks is relevant to establishing the size and nature of the class" and the "the relief available under the TCPA because the statute provides for damages on a per-violation basis").

The disputed request at issue is below:

**RPD No. 17:** Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendor, including those made to the either of the Plaintiffs:
    a) the date and time;
    b) the caller ID;
    c) any recorded message used;
    d) the result;
    e) identifying information for the recipient; and
    f) any other information stored by the call detail records.

Mad City again responded in boilerplate. Ex. B, pp. 70-73. Mad City also claimed it would take "hundreds of thousands of hours" to produce responsive information, and such information would "needlessly risk[] the privacy of thousands of individuals." *Id.* at pp. 70, 71-72. But Mad City never supported its "hundreds of thousands of hours" figure with proof. Nor did it consider that Plaintiffs limited their request to the four years preceding the filing of the complaint, given the TCPA's four-year statute of limitations. *See* 28 U.S.C. § 1658(a). Additionally, the Request is not invasive, given that it seeks only "identifying information for the recipient" which can simply be a name or a number at this early stage. Mad City's asserted burden is also contradicted by Plaintiffs' expert, who explains that CDRs are inherently electronic, structured, and readily

9

searchable. Woolfson Decl. ¶¶ 17–21. Mad City's refusal to produce this data is therefore not based on burden or privacy concerns, but on a desire to withhold evidence essential to class certification.

It is apparent that Mad City's sole, true objection is that it does not want to give Plaintiffs' counsel what they need to properly support their class certification motion, even though such discovery is required in order for a court to perform its "rigorous analysis" in deciding class certification. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), LEXIS 2544. Indeed, when the Parties met and conferred about this request, Mad City confirmed it understood what information Plaintiffs were seeking, and agreed to consider what volume of EverConnect leads exist and/or canvassing by June 18, 2025, yet it never followed through. Paronich Decl., ¶ 7. More recently, in November 2026 and December 2026 meet and confers, Mad City reversed course and confirmed it would not produce Mad City's outbound call and text records. *Id.*, ¶ 12.

Mad City's position is directly contradicted by TCPA cases ordering production of call data sufficient to ascertain the proposed class, which is standard practice in TCPA class actions. *See, e.g., Hancock v. Credit Pros Int'l Corp.,* 2021 U.S. Dist. LEXIS 131055, at *26-27 (D.N.J. July 13, 2021) ("Contrary to [defendant's] asseverations, production of call logs and related data is standard fare in TCPA actions.); *Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531, at *23 (N.D. Ill. 2015) ("Call data is relevant, and thus produced as standard practice…in cases where the defendant is the alleged dialer.").

Courts throughout the country have likewise found that production of call data is standard practice in TCPA class actions. *Cahill v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 63918, at *13-14 (S.D. Cal. Apr. 16, 2018) ("The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is

10

so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a)."); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 U.S. Dist. LEXIS 66219, at *7 (E.D. Mich. May 11, 2012) (internal citation omitted) ("This information is both relevant to Plaintiff's class action claims… and such disclosure is a common practice in the class action context"); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017), LEXIS 82411 (compelling the production of call data because "the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity."). [2]

Without the requested information, Plaintiffs cannot demonstrate the scope of Mad City's violations or the commonality of its practices across the proposed class. This is the most basic evidence in the case, and it is Mad City's burden to show why it should be relieved from the requirement of producing discovery that is plainly relevant. Its objections do not. Mad City's call data is readily identifiable in its records, and the Court should order Mad City to fully respond to Request No. 17.

## V.  FEES AND DISCOVERY SANCTIONS

When a party fails to disclose or respond to discovery requests, the non-compliant party may be ordered to pay the moving party its reasonable attorneys' fees, costs and expenses incurred,

---

[2] *See also Knutson v. Schwan's Home Serv., Inc.*, 2013 U.S. Dist. LEXIS 98735, at *25-26 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class); *Thrasher,* 2015 U.S. Dist. LEXIS 34965, at *8 (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014), LEXIS 69918 (same); *Webb,* 2014 U.S. Dist. LEXIS 11091, at *11 (same); *Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 U.S. Dist. LEXIS 136819, at *13-14 (N.D. Ill. 2013) (same); *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579 at *8-12 (N.D. Ill. June 13, 2011) (same).

11

unless the motion was made without making a good faith effort to obtain discovery without having to involve the Court, or that the non-compliant party's failure was substantially justified or other circumstances exist making such an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). As detailed above, Plaintiffs' counsel made numerous efforts to obtain discovery without involving the Court and Mad City's failure to supplement or provide adequate responses was not substantially justified. In spite of Plaintiffs' counsel's best efforts and multiple notices, Mad City has failed or refused to comply.

Plaintiffs request that Mad City be ordered to pay the attorneys' fees, costs and expenses Plaintiffs incurred in filing this motion, given Mad City's nonresponses and continued refusal to supplement.

## VI.   CONCLUSION

For the above reasons, Mad City should be compelled to produce documents responding to Plaintiffs' Request Nos. 5 and 17. Plaintiffs request that this motion be granted in its entirety; and that Mad City be ordered to pay Plaintiffs' reasonable expenses including attorney's fees, incurred in filing this motion.

*[Counsel signature block to follow on next page.]*

Dated: January 20, 2026            By:  <u>*/s/ Raina C. Borrelli*</u>
Raina C. Borrelli
Alex Phillips (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
aphillips@straussborrelli.com

Anthony Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

13

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ALISHA SALADINO and DAVID DONAHUE, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MAD CITY HOME IMPROVEMENT, LLC, d/b/a MAD CITY WINDOWS & BATHS,<br><br>Defendant. | No. 0:24-cv-01419-NEB-EMB<br><br>Honorable Judge Nancy E. Brasel<br><br>Honorable Magistrate Judge Elsa M. Bullard<br><br>**PLAINTIFFS' CERTIFICATE OF COMPLIANCE REGARDING MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |

This Memorandum of Law complies with the word-line limitation of Local Rule 7-1(f) because it contains 3,787 words, as determined by Microsoft 365 MSO, including the headings and footnotes and excluding the parts of the brief exempted by Local Rule 7-1(f). The brief also complies with the type size requirements of Local Rule 7-1(h) because the text appears in 13-point Times New Roman, a proportionally spaced serif typeface.

Dated: January 20, 2026     By:     */s/ Raina C. Borrelli*
                                    Raina C. Borrelli

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on January 20, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 20th day of January, 2026.

By:   */s/ Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

15