# — EXHIBIT  C —

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA (DMN)

| | |
|---|---|
| **Alisha Saladino and David Donahue**, individually and on behalf of all other similarly situated, | Case No. 0:24-cv-01419-NEB-ECW |
| *Plaintiffs*, | **DEFENDANT MAD CITY'S SUPPLEMENTAL DISCOVERY RESPONSES TO PLAINTIFFS' FIRST SET OF DISCOVERY** |
| v. | |
| **Mad City Home Improvement, LLC** *doing business as* Mad City Windows & Baths, | |
| *Defendant*. | |

Defendant Mad City Home Improvement, LLC ("Mad City" or "Defendant" or "Responding Party") hereby supplements its responses to Plaintiffs Alisha Saladino's and David Donahue's ("Plaintiffs") First Set of Discovery Requests in accordance with Federal Rule of Civil Procedure ("Rule") 34, as follows:

## PRELIMINARY STATEMENT

Responding Party has not fully completed investigation of the facts relating to this case, has not fully completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based upon such information and documents which are presently available to and specifically known to this Responding Party and disclose only those contentions which presently occur to such Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of which will lead to substantial additions to, changes in, and variations from, the contentions herein set forth.

The following responses are given without prejudice to this Responding Party's right to produce evidence of any subsequently discovered facts which this Responding Party may later recall which would change or affect these responses. This Responding Party accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are developed. The responses contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of this Responding Party in relation to further discovery, research or analysis.

<u>**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**</u>

1.     Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

<u>**ORIGINAL ANSWER**</u>:

Objection. Although this Interrogatory spans only a few lines, a cross-reference of the Definitions section reveals that this request is not a single request but multiple. First, Plaintiffs ask Mad City to determine which "person[s]" fall within Plaintiffs' broad definition of the term. Then, as to each such "person," Mad City is asked to "identify" them. Plaintiffs' definition of "identify" as it relates to an entity, however, asks Mad City to state the entity's (1) full name, (2) address, (3) telephone number, (4) state of incorporation or organization, and (5) web address. Then, the definition requires Mad City to include within this scope "all persons in the relevant classification or category … includ[ing] all affiliated entities." As it relates to a natural person, the definition requires Mad City to state that natural person's (1) full name, (2) title, (3) business address, (4) telephone number, (5) email address, (6) occupation, (7) employer, and (8) a statement of whether that person is represented by Mad City's counsel in this litigation. After completing this process,

Mad City must then specify the interrogatories for which each person provided information. This far exceeds the limitations of Rule 33.

Mad City further objects to this Interrogatory as imposing an undue burden. To fulfill this request, Mad City would have to complete the many requests for each individual who supplied any relevant information, which would require interviewing staff members. Then, Mad City would have to ask each such person who they received this information from and who else forms part of the relevant classification or category, as required by Plaintiffs' definition of "identify." Mad City would then have to expand its search to these persons under the same umbrella, conduct another interview, and repeat the process. Throughout this process, Mad City would have to maintain records of each relevant answer to the many fields Plaintiffs ask for and follow the chain of information as far back as possible. The burden facing Mad City in completing this request would compound the farther back Mad City searches into the chain of information, as the scope continues to expand pursuant to demanding definition of "identify." Ultimately, this process would consume countless hours and funds for little return.

Mad City also objects to the scope of this Interrogatory as unwieldy and overbroad. Indeed, the farther Mad City pursues the search for information to fulfill this request, the wider the scope becomes, until it encompasses large swaths of individuals and outside entities over which Mad City has no control and outside this Court's jurisdiction. This is unlikely to yield relevant information under Rule 26.

Mad City also objects to this Interrogatory for vagueness. Plaintiffs define "person" to encompass "any natural person or legal entity, including, without limitation, any business or governmental entity or association." This definition appears to include anything, "without

3

limitation," and therefore has no cognizable parameters. As such, it is simply impossible for Mad City to determine what constitutes a "person" by this definition.

Similarly, the word "identify" is also vague. Plaintiffs include two definitions of the word, one when used in reference to a natural person, and another when used in reference to an entity. However, both definitions of the word incorporate the word "person" which is defined expansively to include "any natural person or legal entity, including, without limitation, any business or governmental entity or association." This definition of the word muddies the Plaintiffs' definitions of "identify." Plaintiffs' attempt to define the word "identify" as it relates to a natural person, but the word "person" in the definition includes entities. Conversely, Plaintiffs' definition of the word "identify" as it relates to an entity uses the word "person" in the definition, which includes natural persons. In sum, Plaintiffs' requests are rendered unintelligible by these conflicting definitions.

Mad City also objects to this Interrogatory insofar as it seeks information protected by confidentiality, attorney-client privilege, and/or work product doctrine. Needless to say, the individuals providing information on Mad City's behalf and as part of Mad City's legal representation in this matter fall within the scope of the attorney-client relationship, and the work Mad City's counsel does in recording this information is attorney work product.

On the basis of these objections, Mad City declines to respond.

**<u>SUPPLEMENTAL ANSWER</u>**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, Lauren Kingsley and Elias Ladas provided the information to answer interrogatories herein.

5.     Identify all employees or vendors involved in making outbound calls promoting your services. This includes, but is not limited to, (a) third parties that you contract with who make

telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**ORIGINAL ANSWER**:

Mad City first objects to this Interrogatory on the grounds that it makes assumptions Mad City must implicitly accept to respond. This request requires Mad City to implicitly agree that it makes "outbound calls promoting [its] services[,]" that it contracts with third parties who make calls to generate leads, that these calls constitute telemarketing, and that it uses a dialing system platform. Mad City explicitly rejects these assumptions.

Next, Mad City objects that this Interrogatory is multiple requests combined into one. It requires Mad City (1) to pinpoint "all employees or vendors involved in making outbound calls[,]" (2) to narrow the scope to only those "promoting [Mad City's] services[,]" and then to "identify" them. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Then, Mad City must (3) pinpoint any third parties with whom it contracts to "make telemarketing calls to generate leads" and repeat the identification process. As to each of these persons or entities, Mad City must (4) identify the dialing system platform or provider used to make calls, and (5) determine whether Mad City uses the dialing system platform or provider to obtain phone numbers.

Next, Mad City objects that this Interrogatory is incomprehensible. When Plaintiffs refer to "all employees or vendors," it is unclear whether they are only referring to current employees

or vendors, employees or vendors specific to the Plaintiffs, or whether this encompasses former vendors and employees. Plaintiffs also do not specify what constitutes "promoting [its] services." What constitutes promotion? Does a call to confirm an appointment constitute promotion? And which services?

The phrase "third parties that you contract with who make telemarketing calls to generate leads" is also confusing. Pursuant to Plaintiffs' expansive definition of "telemarketing," it would seem as though any and all kinds of outbound calls would constitute "telemarketing." However, Plaintiffs then cabin the scope of this term to the purpose of "generat[ing] leads," which is simply nonsensical. What does it mean to call for the purpose of generating leads? Mad City has no way of knowing and therefore, declines to respond.

Plaintiffs then further expand the scope of this request with the language "including, but not limited to" and include categories that do not intuitively follow from the initial request for "all employees or vendors." For example, Plaintiffs expand the scope to the dialing system platform or provider used by these employees and vendors. And while Plaintiffs provide specific definitions of "identify" as it relates to natural persons, documents, and entities, they do not as to equipment. Mad City must therefore guess. Subsection (c) also defies logic: it asks "where the phone numbers to make calls is obtained." In sum, this Interrogatory is unintelligible.

Because of the cumulative nature of this request, Mad City also objects that it imposes a disproportional and undue burden. To carry out this request, Mad City would have to first pull records of all outbound calls it has made over the Relevant Time Period, which spans more than four years and would yield millions of records. Then, it would have to subjectively determine which calls fall in the bucket of "promoting" its services, which Plaintiffs neglect to specify. After doing this, Mad City would have to search through these records and identify all employees,

current and former, and "vendors" to determine who was "involved" in making these calls. Then, Mad City would have to keep a record of all the information needed to "identify" these persons and entities pursuant to Plaintiffs' definitions. Then, Mad City would have to locate the "third parties" it contracted with over the Relevant Time Period who "ma[d]e telemarketing calls to generate leads." Mad City would have to guess what this entails, because Plaintiffs provide an expansive definition of "telemarketing" that seems to encompass all kinds of outbound calls, but then determine which were made "to generate leads," the meaning of which is unclear. Then, Mad City would have to reach out to all third parties, current and former vendors, and former employees to determine which dialing system platform or provider they used to make calls. This would require hours of interviews and consume significant resources. Finally, Mad City would be required to identify "where the phone numbers to make the calls is obtained," and guess the meaning of the statement. And since the definitions of the word "identify" require Mad City to include "all persons in the relevant classification or category" and "all affiliated entities," the demands of this request would be never ending. In sum, it would consume countless hours and significant resources.

Mad City also objects that the scope of this request far exceeds the bounds of Federal Rule of Civil Procedure 26. First, this request is not at all limited to only those employees and vendors that are relevant to the outbound calls allegedly received by the Plaintiffs. Instead, it seeks limitless information about all of Mad City's employees, vendors, and third parties engaged in any form of outbound calling, irrespective of relevance to the Plaintiffs. This is a flagrant disregard of Rule 26.

Next, Mad City objects to this request on the grounds that it seeks information outside its possession or control. Mad City does not have access to the records, dialing system platforms or providers, or any repositories of phone numbers in possession, ownership, or control of any third parties or vendors.

Additionally, Mad City objects to this request insofar as it seeks information protected by confidentiality, attorney-client privilege, and/or the work product doctrine.

On the basis of these objections, Mad City declines to respond.

**SUPPLEMENTAL ANSWER**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, the telephone dialer systems utilized for outbound communications from 2023 through June 2024 were most likely RingCentral, Vonage and/or Five9.

Mad City responds that it obtained Ms. Saladino's telephone number, (651) 279-1186, from Ms. Saladino on September 8, 2023, when Mad City visited her residence. Plaintiff Saladino interacted with the following Mad City employees. Those who remain actively employed with Mad City are Andrew Menningen, Candace George, Sabra Barrett and Jason Olson. Those who are no longer employed with Mad City are Sarai Espinoza, and Annastasha Nickelson. No third parties contacted Plaintiff Saladino nor was her information received from any other source.

As to Mr. Donahue, Mad City received Mr. Donahue's lead from Keyword Connect. The lead included the phone number (402) 689-0798 and was generated when Mr. Donahue visited LinksQuotes.com on April 8, 2024. Plaintiff Donahue interacted with the following Mad City employees who remain actively employed: Christopher Taylor-Buckingham, Erin Ann McConley, Candace George, Shawna Verges, Donovan Ogden and Adam Clark. Further, to the extent outbound calls were made, Mad City did not initiate any calls but rather received calls from Keyword Connect. Any other vendors associated with making outbound calls are downstream parties that Mad City does not have any relationship with.

6.      Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 5.

**ORIGINAL ANSWER**:

Mad City incorporates its objections to Interrogatory No. 5 herein. Moreover, this Interrogatory was asked and answered in Interrogatory No. 3. As such, Mad City incorporates its objections to Interrogatory Nos. 2 and 3.

Mad City objects to this request as it is multiple requests disguised as one in violation of Federal Rule of Civil Procedure 33. Indeed, Plaintiffs ask Mad City to (1) pinpoint each "employee or vendor" it identified in Interrogatory No. 5, and then (2) "identify" them. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented by Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Then, Mad City is to (3) "describe" their work, which requires Mad City to (a) "explain fully the characteristics, nature and substance" of their work, (b) "set forth all details, physical properties and dimensions" of their work, and (c) "specify all pertinent dates, locations, causes purposes, effects and results" of their work. In sum, this is an amalgamation of numerous requests.

Mad City also objects to this Interrogatory as incomprehensible. First, it is unclear whether Plaintiffs are referring to current or former employees and current or former vendors. Second, Mad City is unaware of what "work" Plaintiffs are referring to, and whether it is specific to that which involves Mad City, that which involves Plaintiffs, or the range of work these employees and vendors did and do.

Third, the definition of "vendor" given by Plaintiffs is without parameters. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

It is also unclear what Plaintiffs are asking Mad City to do when they say to "identify" in this Request. This Interrogatory incorporates, by reference, Interrogatory No. 5, which already required Mad City to "identify" these employees and vendors. Unless Plaintiffs are asking Mad City to duplicate its efforts, Mad City is confused as to the directive of "identify." Mad City is therefore unable to respond.

As a result of these many requests, this Interrogatory is unduly burdensome. In addition to the demands of Interrogatory Nos. 2, 3, and 5, which are extensive, Plaintiffs now ask Mad City to repeat its efforts.

Additionally, Mad City objects to the scope of this request, as it is not cabined to that which is relevant to Plaintiffs and seeks information outside the possession and control of Mad City. Indeed, Mad City is not privy to the general "work" all of its employees and vendors over the Relevant Time Period have engaged in, irrespective of whether this work was done for Mad City. This is a fishing expedition that flies in the face 5  Federal Rule of Civil Procedure 26.

Based on these objections, Mad City declines to respond.

**SUPPLEMENTAL ANSWER**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, the telephone dialer systems utilized for outbound communications from 2023 through June 2024 were most likely RingCentral, Vonage and/or Five9.

Mad City responds that it obtained Ms. Saladino's telephone number, (651) 279-1186, from Ms. Saladino on September 8, 2023, when Mad City visited her residence. Plaintiff Saladino interacted with the following Mad City employees. Those who remain actively employed with Mad City are Andrew Menningen, Candace George, Sabra Barrett and Jason Olson. Those who are no longer employed with Mad City are Sarai Espinoza, and Annastasha Nickelson. No third parties contacted Plaintiff Saladino nor was her information received from any other source.

As to Mr. Donahue, Mad City received Mr. Donahue's lead from Keyword Connect. The lead included the phone number (402) 689-0798 and was generated when Mr. Donahue visited LinksQuotes.com on April 8, 2024. Plaintiff Donahue interacted with the following Mad City employees who remain actively employed: Christopher Taylor-Buckingham, Erin Ann McConley, Candace George, Shawna Verges, Donovan Ogden and Adam Clark. Further, to the extent outbound calls were made, Mad City did not initiate any calls but rather received calls from Keyword Connect. Any other vendors associated with making outbound calls are downstream parties that Mad City does not have any relationship with.

8.     Identify each of the individuals that spoke with either of the Either of the Plaintiffss from your company or any of its vendors.

**ORIGINAL ANSWER**:

Mad City objects to this Interrogatory as unintelligible. This sentence simply does not make sense: Plaintiffs ask Mad City to identify those who "spoke with either of the Either of the Plaintiffss." The latter part of the sentence, "from your company or any of its vendors," fares no better. This seems to state that Plaintiffs are from "your company or any of its vendors," which defies logic. It is also unclear what the threshold is for an individual to have "spoke[n]" with either Plaintiff. Are Plaintiffs referring to outbound calls and/or outbound calls, or any casual conversation? Does this speech have to relate somehow to Mad City? It is ambiguous.

The definition of "vendors" is also unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Mad City also objects that this Interrogatory asks for information beyond the control and possession of Mad City. Mad City would simply not be privy to the array of individuals each Plaintiff spoke to throughout the Relevant Time Frame. To be sure, Plaintiffs spoke to many individuals during this four-plus-year period that Mad City would have no knowledge or documentation of. And if Plaintiffs spoke to third parties or vendors, Mad City would not have possession or control of the records of this communication. As such, this Interrogatory is beyond Mad City's reach.

Mad City also objects that this Interrogatory is cumulative of many requests in violation of Federal Rule of Civil Procedure 33. Indeed, Plaintiffs ask Mad City to somehow (1) pull records of each individual that Ms. Saladino spoke to, (2) pull records of each individual that Mr. Donahue spoke to, (3) determine whether they are from Mad City or one of its "vendors," and then (4) "identify them." To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. And to complete this request, Mad City would implicitly have to (5) request all records relating to Ms. Saladino from each of its vendors, (6) request all records relating to Mr. Donahue from each of its vendors, and then (7) repeat the identification process. This is simply not a single request.

As a result, this Interrogatory imposes an undue burden on Mad City. To complete this request, Mad City would have to guess as to its meaning. Then it would have to pull records of each individual that Ms. Saladino spoke to over the Relevant Time Frame and to do the same with Mr. Donahue. Mad City would then need to interview each current and former employee to obtain the relevant identification information, which would consume many hours. Then, Mad City would have to reach out to all "vendors" it used over the Relevant Time Frame to determine whether any of them "spoke" to Ms. Saladino and/or Mr. Donahue. This would be costly and time-consuming. Then, Mad City would be required to repeat the interview and identification processes as to any "individual" from any vendor that "spoke" with either Plaintiff during the Relevant Time Frame.

13

And since the identification process expands to encompass "all persons in the relevant classification or category" and "all affiliated entities," this burden is never-ending.

Mad City also objects to the scope and relevance of this Interrogatory. Plaintiffs neglect to limit this request in any way to the type of communication, to whether an agency relationship exists with Mad City and the vendor, and neglects to specify what constitutes speech in this context. As written, any individual from Mad City or any vendor who spoke to either Ms. Saladino or Mr. Donahue is encompassed. This encompasses non-telephonic speech, speech for non telemarketing purposes, speech unrelated to Mad City, and unrelated to this litigation. It is therefore outside the scope of Rule 26.

Without waiving these objections, to the extent that Plaintiffs are asking to whom Plaintiffs spoke, Mad City responds that it was Mad City.

**SUPPLEMENTAL ANSWER**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, Plaintiff Saladino interacted with the following Mad City employees. Those who remain actively employed with Mad City are Andrew Menningen, Candace George, Sabra Barrett and Jason Olson. Those who are no longer employed with Mad City are Sarai Espinoza, and Annastasha Nickelson.

Plaintiff Donahue interacted with the following Mad City employees who remain actively employed: Christopher Taylor-Buckingham, Erin Ann McConley, Candace George, Shawna Verges, Donovan Ogden and Adam Clark.

11.    Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

**ORIGINAL ANSWER:**

Mad City objects to this request as invading the bounds of confidentiality, attorney-client privilege, and/or the work product doctrine. Further, this request is a blatant invasion of privacy, as "all communications" Mad City has had that touch upon this lawsuit are not all relevant to this litigation, and therefore not discoverable. Such a request is harassing and unnecessary.

Next, Mad City objects that this is a series of sprawling requests disguised as one in violation of Federal Rule of Civil Procedure 33. First, Mad City must (1) determine which persons and entities fall within the expansive definition of "you," then (2) pinpoint all communications these persons and entities have engaged in, (3) to determine which of them were with a "third party other than your counsel," and (4) which discuss this lawsuit. Then, Mad City must somehow "identify" these communications, despite the lack of a fitting definition of "identify." This is more than a single request.

This request is also unintelligible. First, Plaintiffs' definition of "you" is not confined to Mad City. Instead, it "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include inter alia, Mad City's employees, agents, and affiliates, the communications of which are not at issue unless directly with Plaintiffs.

Given the expansive definition of "you," the definition of "third party" is relative. Indeed, it is defined as "any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you." This "you" is clearly relative. And since Mad City cannot be sure which persons and entities fit within its definition, it follows that it also

cannot be sure which persons and entities fit within the definition of "third party." As such, this request is simply unanswerable as written.

Mad City also objects to this request as overbroad and outside the scope of Rule 26. Plaintiffs do not require that any such communication be somehow relevant to any particular issue. And Plaintiffs seek information outside the possession and control of Mad City and invasive of the privacy concerns of Mad City and all implicated persons and entities. This will not yield relevant information.

Needless to say, the overbreadth of this Interrogatory renders it unduly burdensome. The guesswork and research by itself that would be involved in ascertaining the persons and entities implicated by this Interrogatory would consume hundreds of hours. Then, Mad City would have to comb through the business records and personal records of all relevant persons and entities to find those that may have touched upon the current litigation. To do this, Mad City would have to reach out to these persons and entities for relevant records, and personal records would predictably be impossible to get. This is disproportionate and absurd.

Based on these objections, Mad City declines to respond.

**<u>SUPPLEMENTAL ANSWER</u>**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, Mad City has communicated with Keywords Connect, identified as the lead provider for Plaintiff Donahue. In addition, Mad City has issued subpoenas to LinksQuotes.com (identified as the lead source) and GoDaddy.com, LLC, for the purpose of obtaining information relating to LinksQuotes.com.

12.    Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact either of the Either of the Plaintiffss.

**ORIGINAL ANSWER:**

Mad City objects to this Interrogatory, as it is not a single request, but a series of requests in violation of Federal Rule of Civil Procedure 33, which requires interrogatories to be limited to a single question each. Plaintiffs ask Mad City to note the make, model, structure, and location the system(s), platform(s), and/or equipment used by Mad City, or any vendor, to contact either Plaintiff. This is clearly overbroad.

Mad City also objects that this Interrogatory is impossible to comprehend as written. Indeed, "identify" is defined by Plaintiffs as to documents, natural persons, and entities, but not as to equipment. It is therefore anyone's guess what the demand of "identify" is. Next, it asks Mad City to describe the equipment used to contact "either of the Either of the Plaintiffss." Again, it is simply unclear what Plaintiff seeks in this request.

Next, "you" is not confined to Mad City. Instead, it "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include inter alia, Mad City's employees, agents, and affiliates, which Mad City cannot speak for.

Third, the definition of "vendors" is also unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to

which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Fourth, it is unclear what Plaintiffs refer to when they say "contact." Does this include nontelephonic communication? Does this include calls and text messages? Inbound calls? Plaintiffs do not clarify and Mad City will not speculate to its peril.

Predictably, this Interrogatory is overly broad. It requests that Mad City search through each of its records, and those of its employees, agents, affiliates, and vendors, for any contact that any individual ever made to either Plaintiff in order to determine which make, model, structure and location the system(s), platform(s), and/or equipment was used. This is unreasonable, especially considering that Mad City is not in possession or control of the records of any third party, vendor, or other entity. Mad City cannot reasonably be expected to engage in the massive process of collective all communications ever made by such a wide array of persons and entities over more-than-four-year period, and then to filter these results to search for communications related to Plaintiffs.

Mad City also objects to the extent that this Interrogatory implies that Mad City makes, or engages an agent to make, artificial or prerecorded calls or those using an automatic telephone dialing system. Mad City vehemently denies and rejects this implication.

This Interrogatory is also unduly burdensome. Indeed, the burden associated with first locating the persons and entities that fall within the wide-ranging definitions of "you" and "vendor" would be high. Then, Mad City would have to spend hundreds of hours reaching out to these outside persons and companies to track down records it does not own pertaining to contact with the Plaintiffs. It is unclear what relevance, if any, the structure and location of every system,

platform or equipment used by Mad City and every other employee, affiliate, vendor, and agent would have to Plaintiffs' claims. Even more concerning is how this information is relevant to any vendor of Mad City. This would be costly and consume huge amounts of time. It is simply not proportional to the needs of this case.

Mad City also objects here insofar as this Interrogatory requests information not in Mad City's control or possession and calls upon Mad City to speculate as to the system used by a third party placing calls to Plaintiffs.

Without waiving these objections, Mad City responds that Mad City contacted Ms. Saladino by visiting her residence in person on September 8, 2023, during which time Ms. Saladino voluntarily gave her phone number and scheduled an in-person appointment for window services. Mad City further responds that Mr. Donahue provided consent on April 8, 2024, to https://LinksQuotes.com. Mad City then received Mr. Donahue's consent and contact information from Keywords Connect.

**SUPPLEMENTAL ANSWER**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, the telephone dialer systems utilized for outbound communications from 2023 through June 2024 were most likely RingCentral, Vonage and/or Five9.

### SUPPLEMENTAL RESPONSES TO DOCUMENT REQUESTS

18. All communications with any third party concerning this litigation other than your attorney.

**INITIAL ANSWER**:

Objection. This request is vague and ambiguous as it might be read to include a demand for privileged records—such as Mad City's outside counsel's entire litigation file for this case, or the records of communication between Mad City's legal department and outside counsel, or the

records of communication between Mad City's legal staff and its executives. This information is absolutely not admissible and is outside the scope of discovery. As knowingly seeking privileged records in unethical and inappropriate conduct, however, Mad City will presume Plaintiffs seeks solely non-privileged communications.

Mad City objects cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

This request is also unintelligible. It is unclear what it means for a communication to "concern[] this litigation[.]" Further, the definition of "you" is so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

The definition of "communication" is also so wide-ranging that it provides no guidelines as to what to produce. Indeed, it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs, as long as it relates to such third party and concerns this litigation.

Moreover, Plaintiffs do not specify with whom such third party must be communicating. This could stretch so far as to include any employee and their relative regarding this litigation and ask for that employee's personal communications. This is unconscionable, an invasion of privacy, and outside the scope of Rule 26.

As written, this Request also implicates confidentiality, attorney-client privilege, and/or work product doctrine, even though Plaintiffs attempt to sidestep this issue. Plaintiffs specify that this communication must not involve Mad City's attorney, but it can involve an expert witness, for example, which may fall under this umbrella.

Based on these objections, Mad City declines to produce responsive documents.

**SUPPLEMENTAL ANSWER**:

Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, Mad City will produce responsive, non-privileged documents in its possession, custody, or control.

Dated: 10/28/2025

TROUTMAN AMIN, LLP

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera (FBN 1034545)
1825 NW Corporate Blvd, Ste. 100
Boca Raton, Florida 33431
400 Spectrum Center Dr., Ste. 1550
Irvine, California 92618
Telephone: 561-834-0883
jenniffer@troutmanamin.com
*Counsel for Defendant Mad City
Home Improvement, LLC, doing
business as Mad City Windows &
Baths*
