# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **ALISHA SALADINO** and **DAVID DONAHUE,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MAD CITY HOME IMPROVEMENT, LLC** d/b/a **MAD CITY WINDOWS & BATHS,**<br><br>Defendant. | Case No. 0:24-cv-01419-NEB-ECW<br><br>Honorable Magistrate Judge Elsa M. Bullard<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER COMPELLING DISCOVERY** |

## **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 1

III. LEGAL STANDARD ..................................................................................................... 6

IV.  ARGUMENT ................................................................................................................. 7

    A.   Mad City has failed to identify the lead sources and dialing system(s) used during the class period. ............................................................................................................... 8

    B.   Mad City has not produced relevant communications. ...................................... 11

V.   FEES AND DISCOVERY SANCTIONS .................................................................... 15

VI.  CONCLUSION ............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                     <u>Page(s)</u>

*Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*,
   2014 U.S. Dist. LEXIS 192860 (D. Minn. 2014) ..................................................... 7

*Bond v. Utreras*,
   2009 U.S. App. LEXIS 24593 (7th Cir. 2009) ......................................................... 6

*Critchlow v. Sterlinging Jewelers*,
   2019 U.S. Dist. LEXIS 239943 (M.D. Fla. 2019) ................................................... 9

*DeJesus v. Cigna Corp.*,
   2017 U.S. Dist. LEXIS 209777 (M.D. Fla. 2017) ................................................... 9

*Grant v. Regal Auto. Grp., Inc.,*
   2020 U.S. Dist. LEXIS 42685 (M.D. Fla. 2020) ................................................... 14

*Grupo Petromex S.A. De C.V. v. Polymetrix AG,*
   2019 U.S. Dist. LEXIS 87594 (D. Minn. 2019) ..................................................... 7

*Gulf Ins. Co. v. Skyline Displays Inc.*,
   2003 U.S. Dist. LEXIS 26511 (D. Minn. 2003) ..................................................... 6

*Haddley v. Next Chptr. Tech.*,
   2018 U.S. Dist. LEXIS 237983 (D. Minn. 2018) ................................................... 7

*Hancock v. Credit Pros Int'l Corp.,*
   2021 U.S. Dist. LEXIS 131055 (D. New Jersey 2021) ......................................... 14

*Heilman v. Waldron*,
   2012 U.S. Dist. LEXIS 145285 (D. Minn. 2012) ................................................... 6

*Hickman v. Taylor*,
   1947 U.S. LEXIS 2966 (1947) ............................................................................... 6

*Hofer v. Mack Trucks, Inc.*,
   1992 U.S. App. LEXIS 32442 (8th Cir. 1992) ....................................................... 6

O'Shea v. Am. Solar Solution, Inc.,
   2016 U.S. Dist. LEXIS 23420 (S.D. Cal. 2016)…………………………………………14

*Roark v. Credit One Bank, N.A.,*
   2016 U.S. Dist. LEXIS 197329 (D. Minn. 2016). .............................................. 13

## <u>Rules & Statutes</u>

47 U.S.C. § 227 ................................................................................................................ 1

Fed. R. Civ. P. 26(a)(1)(A)(i) ........................................................................................ 8

Fed. R. Civ. P. 26(b)(1) .................................................................................................. 6

Fed. R. Civ. P. 34(b)(2)(C) ......................................................................................... 15

Fed. R. Civ. P. 37(a)(3) .................................................................................................. 7

Fed. R. Civ. P. 37(a)(4) .................................................................................................. 7

Fed. R. Civ. P. 37(a)(5)(A) ......................................................................................... 15

## I.    INTRODUCTION

In a case about telemarketing, Mad City refuses to produce discovery identifying the lead sources it used during the class period, the dialing systems used to contact those leads, and its communications about Plaintiffs, those lead sources, and this litigation. In other words, Mad City is withholding core information necessary to litigate Plaintiffs' claims. Compounding the problem, Mad City has repeatedly represented during the meet-and-confer process that it would supplement its responses to provide the additional information Plaintiffs seek only to provide nothing. Plaintiffs have attempted for months to resolve these deficiencies without court intervention, but Mad City's repeated assurances followed by inaction have left Plaintiffs with no choice but to seek relief. As a result, Plaintiffs seek an order compelling Mad City to serve second supplemental responses to Interrogatory Nos. 5 and 11 and Requests for Production No. 18, a supplemental response to Request for Production No. 8, and to produce all responsive documents.

## II.    BACKGROUND

Plaintiffs sued Mad City because it violated their rights under the TCPA, a law that guards "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms." 47 U.S.C. § 227. Mad City is a "home improvement" company that relies on telemarketing to solicit business. Doc. 30 ("Compl.") ¶¶ 6, 46. Ms. Saladino and Mr. Donahue never consented to Mad City's calls but received them anyway. *Id*., ¶ 22 ("At no point did the Plaintiffs consent to receiving telemarketing calls from the Defendants prior to receiving the automated calls at issue").

This violated the TCPA for two reasons. First, Plaintiff Donahue listed his number on the National Do Not Call Registry in 2022, warning telemarketers like Mad City not to call him. *Id*., ¶ 41. Despite that designation, Mad City called Mr. Donahue with its "automated" calling system that spammed Mr. Donahue's phone with calls between November 2023 and April 2024. *Id*., ¶ 43. Because Mad City would not stop calling despite Mr. Donahue's requests, Mr. Donahue sued for relief under a National DNC claim and an "internal" DNC claim. *See* Counts I and II. Second, like Mr. Donahue, Plaintiff Saladino also told Mad City to stop calling, but she nevertheless received "approximately 20 telemarketing calls" all with the "same scripted telemarketing pitch." *Id*., ¶¶ 30, 34. As a result, she too sued Mad City asserting an "internal" do not call claim. See Count II. And their experience was not isolated, as other consumers have reported the same misconduct. *Id.*, ¶ 39.

Plaintiff Saladino filed the Complaint on April 19, 2024, which was amended on July 8, 2024, to include Plaintiff Donahue. ECF Nos. 1, 30. On February 18, 2025, the Court denied Mad City's Motion to Dismiss and Motion to Strike Class Allegations. ECF. No. 77. On February 19, 2025, the Court denied Mad City's Motion to Bifurcate Discovery. ECF No. 78. On March 4, 2025, Mad City answered the Complaint. ECF No. 79. On March 6, 2025, the Court ordered fact discovery to be completed by June 1, 2026. ECF No. 81. The Parties also exchanged initial disclosures in March 2025. Declaration of Anthony Paronich ("Paronich Decl."), ¶ 2. However, Mad City failed to identify any representatives or employees who may have information related to this case. *Id*., ¶ 2; *see also* Exhibit A, Defendant's Initial Disclosures.

2

Plaintiff served discovery requests on Mad City consisting of fourteen interrogatories and eighteen document requests. *Id.*, ¶ 3. On April 3, 2025, Mad City served its responses. *Id.*, ¶ 3; Exhibit B, Defendant's Responses to Plaintiffs' Discovery Requests. But Mad City's responses were riddled with boilerplate objections and failed to provide substantive responses. *Id.* Out of the fourteen interrogatories, Mad City refused to answer nine (Nos. 1, 3, 4, 5, 6, 7, 11, 13, 14) and withheld information when responding to the remaining six (Nos. 2, 8, 9, 10, 12). *Id.* Around two weeks later, Mad City produced only 18 pages in document production, withholding all other documents under the same objections. *Id.*, ¶ 4. Indeed, Mad City refused to produce anything beyond a portion of its Standard Operating Procedure for managing "Do Not Call" requests, a lead generation agreement between itself and Renuity, and a Guardian TCPA Report prepared for "Links Quotes." *Id.* Plaintiffs cannot advance their case with Mad City's 18-page production, as it is withholding the most basic evidence in this case. *Id.*, ¶ 5.

Following Plaintiffs' counsel's meet and confer efforts, Mad City agreed to supplement *some* responses by June 18, 2025. *Id.*, ¶ 6. Yet it never followed through. *Id.* Accordingly, on September 15, 2025, Plaintiff filed a motion to compel the following categories of information: (A) basic witness information, including information regarding Mad City's vendor(s) (Interrogatory Nos. 1, 5, 6, and 8); (B) the dialing system it used to place the calls to Plaintiffs (Interrogatory Nos. 5 and 12); (C) complaints directed at Mad City or its vendor's outbound telephone calls (Request No. 5); (D) Mad City's outbound call and text records (Request No. 17); and (E) communications within Mad City and with other third parties as it relates to Plaintiffs and this litigation (Requests Nos. 8 and 18;

3

Interrogatory No. 11). ECF No. 83; Paronich Decl., ¶ 8. The Court held an informal status conference on October 9, 2025, during which it directed the Parties to meet and confer and instructed Plaintiff to withdraw the then-pending motion to compel and re-notice the motion for November 13, 2025, if necessary. ECF No. 91; Paronich Decl., ¶ 9.

The Parties continued their meet and confer efforts, including correspondence by videoconference, and on October 28, 2025, Mad City provided Supplemental Discovery Responses to Interrogatories Nos. 1, 5, 6, 8, 11, and 12, and Request for Production No. 18. Paronich Decl., ¶ 10; *see also* Exhibit C, Defendant's Supplemental Responses to Plaintiff's First Set of Discovery. Following additional meet and confers in November and December 2025, Mad City confirmed it would not produce documents responsive to Plaintiffs' Request Nos. 5 (complaints directed at Mad City or its vendor's outbound telephone calls) and 17 (Mad City's outbound call and text records). *Id.,* ¶ 11. Consequently, Plaintiffs filed a motion to compel production of documents responsive to Requests for Production Nos. 5 and 17 on January 20, 2026. ECF Nos. 93-98, 109. Mad City has since filed two unopposed extensions to respond to Plaintiffs' motion to compel, which this Court granted. ECF Nos. 99, 104, 108-109.

However, on November 11, 2025, Mad City clarified that although it had not supplemented its response to Request No. 8 in its October 28, 2025 supplemental responses, it had intended to do so and that was an oversight. Paronich Decl., ¶ 12. During that same conference, Mad City also agreed to produce documents responsive to Requests for Production Nos. 8 and 18 and to serve a second set of supplemental responses to Interrogatories Nos. 5 and 11. *Id*. On November 15 and November 19, 2025, Plaintiffs

4

followed up with Mad City regarding its promised responses. *Id.,* ¶ 13. In response, on November 19, 2025, Mad City agreed to provide its "updated responses next week." *Id*. It did not. *Id*. Plaintiffs follow up again on December 1 and December 6, 2025. *Id.,* ¶ 14. On December 8, 2025, Mad City promised "to serve a second supplement to…Interrogatory No. 5, Interrogatory No. 11, RPD 8 and 18 by the end of this week," and further stated that it intended to produce the responsive documents the following week. *Id.* It did not. *Id*. Plaintiffs continued to follow up in December and January, noting that Mad City's responses had been outstanding for months. *Id.,* ¶ 15. The Parties then held a videoconference on January 8, 2026, in which Mad City again promised to provide documents responsive to Requests for Production Nos. 8 and 18 and to serve a second supplemental response to Interrogatories Nos. 5 and 11. *Id.,* ¶ 16. On January 12, 2026, Mad City claimed that it was "continuing to work on obtaining the requested information" and would "revert as soon as possible." *Id.,* ¶ 17. Plaintiffs followed up multiple times in January and February, but Mad City continued to delay, at various points stating that it had a call scheduled with its client or that it would respond after further internal discussions. *Id.,* ¶ 18. Despite Mad City's repeated assurances, Plaintiffs are still waiting for Mad City's second supplemental response to Interrogatories Nos. 5 and 11 and the documents responsive to Requests for Production 8 and 18. *Id.,* ¶ 19. Mad City's continued failure to provide the documents and supplemental responses it repeatedly promised has forced Plaintiffs to seek the Court's intervention.[1]

---

[1] Throughout this litigation, Mad City has repeatedly stalled and delayed, including in connection with Plaintiffs' pending motion to compel and other key deadlines. For example, on January 12,

## III.    LEGAL STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*,  1947 U.S. LEXIS 2966, 329 U.S. 495, 507 (1947). The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras*, 2009 U.S. App. LEXIS 24593, 585 F.3d 1061, 1075 (7th Cir. 2009). A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case… Information within this scope need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Indeed, "the standard of relevance in the context of discovery is broader than in the context of admissibility." *Hofer v. Mack Trucks, Inc.*, 1992 U.S. App. LEXIS 32442, 981 F.2d 377, 380 (8th Cir. 1992). As such, discovery is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). *See also Heilman v. Waldron*, 2012 U.S. Dist. LEXIS 145285 , 287 F.R.D. 467, 473 (D. Minn. 2012) ("Relevance is construed broadly at the discovery stage."); *Gulf Ins. Co. v. Skyline Displays Inc.*, 2003 U.S. Dist. LEXIS 26511, at *4–5 (D. Minn. October 20, 2003) ("The general scope of discovery…encompasses any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case.").

---

2026, Mad City sought additional time to prepare its expert report "due to the volume and complexity of the data at issue." ECF Nos. 100, 103; Paronich Decl. ¶ 20. Plaintiffs agreed to a 28-day extension, moving the deadline to February 20, 2026, but Mad City failed to serve an expert report by that date and has not done so since, despite Plaintiffs' follow-up. ECF Nos. 100, 103, 105; Paronich Decl. ¶ 20. In light of these repeated delays and Mad City's continued withholding of information critical to Plaintiffs' case and class certification, Plaintiffs will not agree to any further extensions. If Mad City attempts to serve an untimely expert report, Plaintiffs will move to strike it and preclude expert testimony.

A party may move for an order compelling discovery when a party fails to produce requested documents or to answer interrogatories. Fed. R. Civ. P. 37(a)(3). "Once the requesting party has established the relevancy of the discovery it seeks, the burden shifts to the party opposing the discovery to show why the discovery may not be had." *Haddley v. Next Chptr. Tech.*, 2018 U.S. Dist. LEXIS 237983, at *9-10 (D. Minn. March 23, 2018). *See also Grupo Petromex, S.A. De C.V. v. Polymetrix AG*, 2019 U.S. Dist. LEXIS 87594, at *4-5 (D. Minn. May 24, 2019) ("The party opposing discovery…has the burden of establishing some good cause or sound reason for blocking disclosure."). The objecting party "cannot rely upon boilerplate objections, but rather they must specify how each interrogatory or request for production is deficient and articulate the particular harm that would accrue if they were required to respond to the discovery request." *Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 2014 U.S. Dist. LEXIS 192860, at *23 (D. Minn. May 23, 2014) (citation omitted). An evasive or incomplete response must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

## IV.    ARGUMENT

Despite losing its request to bifurcate discovery (ECF No. 78), Mad City continues to withhold core discovery necessary to litigate Plaintiffs' TCPA claims. The requests at issue seek basic information regarding the witnesses and entities involved in generating the leads Mad City used during the class period (Interrogatory No. 5), as well as communications within Mad City and with third parties relating to Plaintiffs, the lead sources at issue, and this litigation (Requests for Production Nos. 8 and 18; Interrogatory No. 11).

Despite months of meet-and-confer efforts and unfulfilled promises to supplement, Mad City has produced only incomplete and qualified responses. For example, in response to Interrogatory No. 5, Mad City has not identified all lead sources used during the class period, instead limiting its response to a truncated timeframe ("from 2023 through June 2024") and stating only that certain platforms were "most likely" used. Similarly, in response to Interrogatory No. 11 and Request for Production No. 18, Mad City acknowledges communications with the lead provider Keywords Connect and states that subpoenas were issued to LinksQuotes.com and GoDaddy, yet it has neither produced those communications nor identified them in a privilege log. And despite its promise to do so, Mad City has not supplemented its response to Request for Production No. 8 to produce non-privileged communications with or about KeyConnect and other third parties concerning this litigation.

Mad City has not even attempted to justify its failure to fully answer Interrogatories Nos. 5 and 11 and Requests for Production Nos. 8 and 18. Instead, it has repeatedly agreed to supplement, underscoring that it recognizes its existing responses are deficient. Mad City's continued withholding of this core information violates the Court's order and the Federal Rules, necessitating Plaintiffs' motion to compel.

**A. Mad City has failed to identify the lead sources and dialing system(s) used during the class period.**

Witness discovery is not a formality – it is foundational to fair litigation. At the outset, Fed. R. Civ. P. 26(a)(1)(A)(i) requires each party to "provide to the other parties…the name and, if known, the address and telephone number of each individual

likely to have discoverable information…that the disclosing party may use to support its claims or defenses." This obligation is automatic and does not require a discovery request. Yet Mad City failed to identify any representatives or employees who may have information related to this case in its initial disclosure. Ex. A. In the same way, Mad City failed to provide basic witness information in response to the following Interrogatory:

> **Interrogatory No. 5:** Identify all employees or vendors involved in making outbound calls promoting your services. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

The discovery Plaintiffs seek in this Interrogatory—identifying lead sources, dialing systems, and vendors involved in Mad City's telemarketing program—is routine in TCPA litigation. *See, e.g. DeJesus v. Cigna Corp.*, 2017 U.S. Dist. LEXIS 209777, at *11-13 (M.D. Fla. Dec. 21, 2017) (compelling discovery regarding dialing systems used to place calls and vendors involved in telemarketing operations); *Critchlow v. Sterlinging Jewelers*, 2019 U.S. Dist. LEXIS 239943, at *7-8 (M.D. Fla. Feb. 26, 2019) (compelling dialing manuals from Defendant's Five9 calling system to the extent they were available).

Originally, Mad City entirely "decline[d] to respond" to Interrogatory No. 5 and raised only boilerplate objections. Ex. B, p. 18. Following subsequent meet and confers, on October 28, 2025, Mad City responded as follows:

> **Supplemental Response to Interrogatory No. 5:** Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, the telephone dialer systems utilized for outbound communications from 2023 through June 2024 were most likely RingCentral, Vonage and/or Five9.  Mad City responds that it obtained Ms. Saladino's telephone number, (651) 279-1186, from Ms. Saladino on September 8, 2023, when Mad City visited her residence. Plaintiff Saladino interacted with the following Mad City employees. Those who remain actively

employed with Mad City are Andrew Menningen, Candace George, Sabra Barrett and Jason Olson. Those who are no longer employed with Mad City are Sarai Espinoza, and Annastasha Nickelson. No third parties contacted Plaintiff Saladino nor was her information received from any other source. As to Mr. Donahue, Mad City received Mr. Donahue's lead from Keyword Connect. The lead included the phone number (402) 689-0798 and was generated when Mr. Donahue visited LinksQuotes.com on April 8, 2024. Plaintiff Donahue interacted with the following Mad City employees who remain actively employed: Christopher Taylor-Buckingham, Erin Ann McConley, Candace George, Shawna Verges, Donovan Ogden and Adam Clark. Further, to the extent outbound calls were made, Mad City did not initiate any calls but rather received calls from Keyword Connect. Any other vendors associated with making outbound calls are downstream parties that Mad City does not have any relationship with.

Ex. C, p. 8.

Mad City's Supplemental Response is still incomplete and evasive for three reasons.

**First,** it fails to identify all lead sources used during the class period—the central information sought by the interrogatory. Instead, Mad City provides a narrative about the two named Plaintiffs while omitting the broader identification of vendors, platforms, or entities involved in generating leads or making outbound calls for Mad City. **Second,** Mad City improperly limits its response to the timeframe within which Plaintiffs received the illegal calls ("from 2023 through June 2024"), effectively granting itself the bifurcation the Court already rejected. The relevant class period extends four years prior to the filing of the complaint, beginning in April 2020, and Mad City cannot unilaterally narrow discovery to a shorter period. And ***third,*** Mad City's statement that dialing systems were "most likely" RingCentral, Vonage, and/or Five9 is not a proper interrogatory response. If these systems were used, Mad City must identify them; if additional systems were used, those must also be disclosed. As written, the response leaves Plaintiffs without the basic witness and vendor information necessary to investigate Mad City's telemarketing operations

during the class period. And even Mad City agreed. Following meet and confer efforts,

Mad City agreed to supplement this response to at least identify the dialing system, but did

not. Paronich Decl., ¶¶ 12, 19. A court order is therefore necessary to compel Mad City to

provide a complete response to Interrogatory No. 5.

**B. Mad City has not produced relevant communications.**

Plaintiffs seek documents on Mad City's relationship with its third-party dialing

vendors, and communications concerning Plaintiffs and this litigation. These

communications are probative of Mad City's knowledge and willfulness, and may also

show how Mad City implemented its alleged Do Not Call procedures. Plaintiffs made the

following disputed requests:

> **Interrogatory No. 11:** Identify all communications you've had with any third
> party, other than your counsel, regarding this lawsuit.
>
> **RPD No. 8:** All internal communications at your company regarding any
> vendor that provided you with the either of the Plaintiffs' telephone number
> or information.
>
> **RPD No. 18:** All communications with any third party concerning this litigation
> other than your attorney.

To date, Mad City has not produced any communications between itself and its

vendors, or any communications between itself and any third parties concerning Plaintiffs

and this litigation, despite agreeing to do so. Paronich Decl., ¶ 19. Originally, Mad City

"decline[d] to respond" to each. Ex. B, pp. 31, 53, 75. Then, on October 28, 2025, Mad

City supplemented its responses to Interrogatory No. 11 and Request No. 18 as follows:

> **Supplemental Response to Interrogatory No. 11:** Upon reasonable inquiry and to
> the best of Defendant's present knowledge, information, and belief, Mad City has
> communicated with Keywords Connect, identified as the lead provider for Plaintiff

Donahue. In addition, Mad City has issued subpoenas to LinksQuotes.com (identified as the lead source) and GoDaddy.com, LLC, for the purpose of obtaining information relating to LinksQuotes.com.

**Supplemental Response to Request No. 18:** Upon reasonable inquiry and to the best of Defendant's present knowledge, information, and belief, Mad City will produce responsive, non-privileged documents in its possession, custody, or control.

Ex. C, pp. 16, 21.

Additionally, during the Parties' November 11, 2025 discovery conference, Mad City stated that it intended to serve a supplemental response to Request No. 8 similar to its response to Request No. 18 and to likewise produce responsive documents for both requests. Paronich Decl., ¶ 12. Despite these representations, Mad City has not produced any communications with Keywords Connect, LinksQuotes.com, GoDaddy, or any other third party relating to Plaintiffs or this litigation. Nor has Mad City produced any internal communications responsive to Request No. 8. Mad City also has not identified any such documents in a privilege log. Identifying that communications occurred while simultaneously producing none of those communications does not satisfy Mad City's discovery obligations.

Mad City's failure to produce these communications is particularly problematic because its defenses rely on the conduct of the very third parties whose communications it refuses to disclose. For example, Mad City claims Plaintiff Donahue provided one of its vendors or lead generators with consent to be contacted. ECF. No. 79, ¶¶ 5, 44. By raising these defenses, Mad City concedes that its communications with its vendors are relevant to Plaintiffs' claims and its own defenses. Mad City cannot claim on the one hand that Plaintiff Donahue provided consent to be contacted, while simultaneously refusing to

produce its correspondence with the entity which alleged received Plaintiff Donahue's consent. Moreover, Mad City's communications with its vendors and lead generators will shed light upon Mad City's state of mind in making calls to noncustomers on the National DNC Registry, or noncustomers who have asked Mad City to stop calling, like Plaintiffs. These requests also encompass any agreements between Mad City and any third-party vendor(s) that provided Mad City with either of Plaintiffs' telephone numbers. Much like Mad City's communications with its vendors, complete contractual agreements with its vendors are relevant to Plaintiffs' claims and are undoubtedly discoverable.

In *Roark v. Credit One Bank, N.A.,* the District of Minnesota was faced with nearly identical issues. <u>2016 U.S. Dist. LEXIS 197329</u> (D. Minn. Dec. 1, 2016). Plaintiff Roark sought the following:

> Request No. 13: All documents relating to or evidencing any communications (written or verbal) between you and any other person or entity as it relates to making, placing and/or initiating telephone calls to Plaintiff and/or Plaintiff's Cell Phone Number. This Request includes communications with any third party vendor, outside dialing company, and/or any other person or entity that makes, initiates or places telephone calls on behalf of Defendant.

> Request No. 15: All documents relating to or evidencing any contracts or agreements (written or oral) between you and any person or entity as it relates to making, placing and/or initiating telephone calls to Plaintiff and/or Plaintiff's Cell Phone Number. This Request includes agreements with any third party vendor, outside dialing company, and/or any other person or entity that makes, initiates or places telephone calls on behalf of Defendant.

*Id.* at \*3. In response, defendant objected "that its communications and Agreements with its vendors do not relate to the claims and defenses" and that "that it is obligated to maintain the confidentiality of its vendor Agreements." *Id.* at \*8-9. The Court disagreed and ordered defendant to respond to both requests, stating:

13

Communications between Credit One and the vendors hired to make those calls are highly relevant to the claims at issue. The Court also observes that these communications do not fall within the scope of any asserted privilege and are squarely within the purview of Rule 26. Roark is entitled to the documents requested in his Request No. 13….[and] Roark is entitled to unredacted copies of the Agreements between Credit One and its vendors as requested in Request No. 15 in order to better understand the role that Credit One anticipated its vendors would perform.

*Id.* at *9. The disputed requests here are strikingly similar to *Roark* in that Plaintiffs seek communications between Mad City and third parties, including its vendors, concerning Plaintiffs and this litigation. Importantly, the court in *Roark* ordered defendant to produce the requests materials. Likewise, this Court should follow suit.

The District of Minnesota is not alone in finding that such communications are relevant and should be produced. *See, e.g., Hancock,* 2021 U.S. Dist. LEXIS 131055, at *26-27 ("Plaintiff has requested 'contracts or agreements with Defendant or anyone acting on their behalf.' This demand is proper, with a caveat: such agreements are discoverable to the extent that they concern the vendors placing voice or text messages during the relevant period."); *Grant v. Regal Auto. Grp., Inc.,* 2020 U.S. Dist. LEXIS 42685, at *6-7 (M.D. Fla. Mar. 12, 2020) (defendant's communications with third-party vendors regarding voicemail campaigns during actionable time period to be relevant and proportional to the needs of the case); *O'Shea,* 2016 U.S. Dist. LEXIS 23420, at *16 (ordering production of materials "concern[ing TCPA] Defendant's relationship to other entities or persons" because "[w]hether other entities aided [defendant] in placing phone calls is relevant to [plaintiff's] TCPA claims and discoverable."). Mad City should be

14

compelled to produce communications between itself and third-parties relating to Plaintiffs and this litigation, as it has already agreed to do.

Finally, to the extent Mad City is withholding information it believes is confidential, it must produce a privilege log detailing what information it has withheld and on what basis. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). As such, Mad City is required to state for each objection whether documents were withheld.

## V.    FEES AND DISCOVERY SANCTIONS

When a party fails to disclose or respond to discovery requests, the non-compliant party may be ordered to pay the moving party its reasonable attorneys' fees, costs and expenses incurred, unless the motion was made without making a good faith effort to obtain discovery without having to involve the Court, or that the non-compliant party's failure was substantially justified or other circumstances exist making such an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A).

None of those exceptions apply here. As detailed above, Plaintiffs' counsel engaged in extensive meet-and-confer efforts over the course of many months to obtain basic discovery. Following those efforts, Mad City agreed to supplement certain responses by June 18, 2025, but never did so. Paronich Decl. ¶ 6. Plaintiff therefore filed a motion to compel on September 15, 2025 seeking information regarding, among other things, Mad City's vendors, its dialing system, complaints concerning its outbound calling practices, outbound call and text records, and communications relating to Plaintiffs and this litigation.

15

*Id.*, ¶ 8. At the Court's direction during an October 9, 2025 status conference, Plaintiffs withdrew that motion and tried to resolve the dispute without further court involvement. *Id.*, ¶ 9.

Although Mad City served some supplemental interrogatory responses on October 28, 2025, it continued to withhold key discovery and ultimately confirmed it would not produce documents responsive to Requests for Production Nos. 5 and 17, necessitating Plaintiffs' January 20, 2026 motion to compel. *Id.*, ¶¶ 10–11. Meanwhile, Mad City repeatedly promised additional supplementation and document production for the other discovery requests. Specifically, on November 11, 2025, it agreed to produce documents responsive to Requests for Production Nos. 8 and 18 and to serve second supplemental responses to Interrogatories Nos. 5 and 11. *Id.*, ¶ 12. Over the next several months, Plaintiffs repeatedly followed up regarding these promised responses. Mad City assured Plaintiffs on multiple occasions—including November 19, 2025, December 8, 2025, and again during a January 8, 2026 conference—that supplemental responses and documents would be forthcoming. *Id.*, ¶¶ 13–18. Yet despite these assurances, Mad City never produced the promised materials and continued to delay while claiming it was still "working on obtaining the requested information." *Id.*, ¶¶ 17–19.

In short, Plaintiffs made repeated good-faith efforts to obtain the discovery without Court intervention, while Mad City repeatedly promised but failed to provide the discovery it agreed to produce. Mad City's conduct has forced Plaintiffs to expend significant time and resources seeking basic discovery through motion practice. Because Mad City's failure to provide the promised supplemental responses and document production was not

substantially justified, Plaintiffs respectfully request an award of the attorneys' fees, costs, and expenses incurred in bringing this motion.

## VI.    CONCLUSION

For the above reasons, Mad City should be compelled to serve second supplemental responses to Interrogatory Nos. 5 and 11 and Requests for Production No. 18, a supplemental response to Request for Production No. 8, and to produce all responsive documents to Request Nos. 8 and 18. Plaintiffs request that this motion be granted in its entirety; and that Mad City be ordered to pay Plaintiffs' reasonable expenses including attorney's fees, incurred in filing this motion.

*[Counsel signatures to follow on next page.]*

Date: March 9, 2026

By:  */s/ Raina C. Borrelli*
Raina C. Borrelli
Alex Phillips (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

By:  */s/ Anthony Paronich*
Anthony Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiffs
and the Proposed Class*

18

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 9th day of March, 2026.

Respectfully submitted,

*/s/ Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

19