— **EXHIBIT  B** —

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA (DMN)

|  |  |
|---|---|
| **Alisha Saladino and David Donahue**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**Mad City Home Improvement, LLC** *doing business as* Mad City Windows & Baths,<br><br>*Defendant*. | Case No. 0:24-cv-01419-NEB-ECW |

### DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND FOR INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Defendant Mad City Home Improvement, LLC, doing business as Mad City Windows & Baths ("Mad City") submits the following Responses and Objections to Plaintiffs Alisha Saladino's ("Ms. Saladino") and David Donahue's ("Mr. Donahue") (collectively, "Plaintiffs") First Set of Interrogatories and Requests for Production of Documents.

### PRELIMINARY STATEMENT

These responses are made solely for the purpose of the above-captioned action. Each response is subject to all objections which would exclude any statement herein if the request were posed to, and the answer made by, a witness present and testifying in Court. All objections and grounds for objections are reserved and may be raised at the time of trial.

Mad City has not yet completed its investigation of the facts relating to this action, its discovery in this action, or its preparation for trial of this action. Consequently, these responses are given without prejudicing Mad City's right to produce any and all subsequently discovered

evidence relating to the proof of presently known material facts, and of subsequently discovered material facts, at the time of trial.

Except for explicit facts admitted herein, no admissions of any kind are implied, or should be inferred, from these responses and objections. The fact that any request herein has been answered should not be taken as an admission or acceptance of the existence of any fact(s) set forth or assumed by a request, nor should it be taken as an admission that such response constitutes admissible evidence.

In responding to these requests, Mad City assumes that the propounding party and all parties to this lawsuit possess, and are familiar with, all discovery proceedings in this action. Therefore, when a request calls for information contained in the discovery materials available to all parties, that request will be answered only by reference to those discovery materials. This Preliminary Statement is incorporated herein by reference to each response as if stated in full.

## **GENERAL OBJECTIONS**

Mad City answers Plaintiffs' First Set of Interrogatories subject to the following objections. These objections are part of Mad City's answer to each request and are set forth here to avoid repetition. These General Objections may also be separately stated in Mad City's responses to individual requests for emphasis and clarity. However, the lack of a specific reference should not be construed as a waiver of any General Objection.

The responses set forth below are based upon Mad City's interpretation of the language used in the requests. Mad City reserves its right to amend or supplement its responses if Plaintiffs raise an interpretation that differs from Mad City's.

These responses and objections are based on Mad City's present knowledge, information, and belief. Mad City reserves the right to amend, revise, supplement, correct, or clarify any response or objection.

Mad City objects to these requests to the extent that they purport to impose requirements, obligations, or duties beyond those prescribed by the Federal Rules of Civil Procedure or the Local Rules.

Mad City generally objects to the scope of each request insofar as they incorporate the Relevant Time Period, which exceeds the four-year statute of limitations for TCPA claims. *See* 28 U.S.C. § 1658(a) (providing the four-year statute of limitations).

## INTERROGATORIES

1.     **Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.**

**ANSWER:**

Objection. Although this Interrogatory spans only a few lines, a cross-reference of the Definitions section reveals that this request is not a single request but multiple. First, Plaintiffs ask Mad City to determine which "person[s]" fall within Plaintiffs' broad definition of the term. Then, as to each such "person," Mad City is asked to "identify" them. Plaintiffs' definition of "identify" as it relates to an entity, however, asks Mad City to state the entity's (1) full name, (2) address, (3) telephone number, (4) state of incorporation or organization, and (5) web address. Then, the definition requires Mad City to include within this scope "all persons in the relevant classification or category … includ[ing] all affiliated entities." As it relates to a natural person, the definition requires Mad City to state that natural person's (1) full name, (2) title, (3) business address, (4)

3

telephone number, (5) email address, (6) occupation, (7) employer, and (8) a statement of whether that person is represented by Mad City's counsel in this litigation. After completing this process, Mad City must then specify the interrogatories for which each person provided information. This far exceeds the limitations of Rule 33.

Mad City further objects to this Interrogatory as imposing an undue burden. To fulfill this request, Mad City would have to complete the many requests for each individual who supplied any relevant information, which would require interviewing staff members. Then, Mad City would have to ask each such person who they received this information from and who else forms part of the relevant classification or category, as required by Plaintiffs' definition of "identify." Mad City would then have to expand its search to these persons under the same umbrella, conduct another interview, and repeat the process. Throughout this process, Mad City would have to maintain records of each relevant answer to the many fields Plaintiffs ask for and follow the chain of information as far back as possible. The burden facing Mad City in completing this request would compound the farther back Mad City searches into the chain of information, as the scope continues to expand pursuant to demanding definition of "identify." Ultimately, this process would consume countless hours and funds for little return.

Mad City also objects to the scope of this Interrogatory as unwieldy and overbroad. Indeed, the farther Mad City pursues the search for information to fulfill this request, the wider the scope becomes, until it encompasses large swaths of individuals and outside entities over which Mad City has no control and outside this Court's jurisdiction. This is unlikely to yield relevant information under Rule 26.

Mad City also objects to this Interrogatory for vagueness. Plaintiffs define "person" to encompass "any natural person or legal entity, including, without limitation, any business or

4

governmental entity or association." This definition appears to include anything, "without limitation," and therefore has no cognizable parameters. As such, it is simply impossible for Mad City to determine what constitutes a "person" by this definition.

Similarly, the word "identify" is also vague. Plaintiffs include two definitions of the word, one when used in reference to a natural person, and another when used in reference to an entity. However, both definitions of the word incorporate the word "person" which is defined expansively to include "any natural person or legal entity, including, without limitation, any business or governmental entity or association." This definition of the word muddies the Plaintiffs' definitions of "identify." Plaintiffs' attempt to define the word "identify" as it relates to a natural person, but the word "person" in the definition includes entities. Conversely, Plaintiffs' definition of the word "identify" as it relates to an entity uses the word "person" in the definition, which includes natural persons. In sum, Plaintiffs' requests are rendered unintelligible by these conflicting definitions.

Mad City also objects to this Interrogatory insofar as it seeks information protected by confidentiality, attorney-client privilege, and/or work product doctrine. Needless to say, the individuals providing information on Mad City's behalf and as part of Mad City's legal representation in this matter fall within the scope of the attorney-client relationship, and the work Mad City's counsel does in recording this information is attorney work product.

On the basis of these objections, Mad City declines to respond.

**2.    Identify all employees or vendors involved in making outbound calls as part of the campaign(s) that contacted either of the Either of the Plaintiffss. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls were obtained**.

**ANSWER**:

Mad City objects to this Interrogatory because it assumes that Mad City was "involved in making outbound calls as part of the campaign(s) that contacted" Plaintiffs. It further assumes that Mad City contracts with third parties "who make telemarketing calls to generate leads," and that it uses a "dialing system platform or provider." Mad City rejects these implicit assumptions.

Further, this is not a single request, but many, in violation of Federal Rule of Civil Procedure 33. Plaintiffs ask Mad City to (1) locate the alleged campaign(s) that contacted them and (2) pinpoint the employees, "vendors," and third parties with whom Mad City contracts with who "make telemarketing calls to generate leads," and (3) determine which other persons or entities may fall within Plaintiffs' umbrella of the language "includes, but is not limited to." Then, (4) Mad City must "identify" the persons and entities that fall within these categories. To "identify" a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. After "identifying" these persons and entities, Plaintiffs ask Mad City to pinpoint (5) the origin of the phone numbers it allegedly obtained as part of the calling campaign(s) that contacted Plaintiffs, and (6) the alleged dialing system platform or provider used to make the calls in the campaign(s). Mad City is then to "identify" what is in (5) and (6), despite the fact that Plaintiffs do not define the word "identify" as it relates to equipment, so Mad City would have to guess. And as to the origin of the phone numbers, Mad City would be required to undergo the same process of identification explained in (4). In sum, this Interrogatory aggregates tens of interrogatories in one and violates Rule 33.

As a result of the cumulative nature of this request, Mad City must also object to the undue burden it imposes. To satisfy this request, Mad City would be required to scour its databases to find the alleged calling campaign that contacted each Plaintiff. Then, Mad City would have to locate each number called as part of the alleged campaign to locate the vendors, employees, and third parties with whom it contracts that provided the numbers or made the calls. Mad City would then have to subjectively determine what "includes, but is not limited to" encompasses. After completing this process, which would take countless hours, Mad City would then have to conduct interviews of each person or entity that falls within this broad scope in order to collect the information required to "identify" them. This process of identification would lead Mad City to "all persons in the relevant classification or category" as it relates to a person, and "all affiliated entities" as it relates to an entity. Mad City would need to subjectively determine which persons and entities are encompassed within this language and repeat the process, which has no end point delineated. As to each person or entity, Mad City would then need to "identify" the alleged dialing system platform or provider used. Since Plaintiffs do not explain what is required to "identify" equipment and/or providers, Mad City would have to guess. Ultimately, Mad City would have to complete this process as to each Plaintiff, given that each involves distinct facts.

Mad City further objects that this request is vague and unintelligible. First, Plaintiffs ask Mad City to "identify" equipment but do not provide a definition of "identify" as it relates to equipment. Second, the definition of "vendors" is unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities

that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Third, the definition of "telemarketing," which is incorporated by reference in this Interrogatory, is amorphous. Mad City objects to this definition insofar as it broadens the TCPA's definition of the word, thereby rendering Mad City's responses capable of more than one meaning. Even disregarding this point, it is unclear what Plaintiffs mean by "a telecommunication that could have generated or was intended to generate leads, customers or sales[.]" Any telecommunication could fall within this definition. It is also unclear how Mad City would determine the intent of a telecommunication, given that intent is a subjective state of mind. The latter portion of the definition is so broad as to encompass all forms of communication within the definition of telemarketing, even communications with "other, additional persons," with those who "consented to receive it," those with "prior existing business relationship[s]," and even those not made by Mad City or for its exclusive or direct benefit. Mad City fails to see the parameters of this definition and thereby finds it to be incomprehensible.

Because these definitions are without limiting principles, Mad City objects on the grounds that this Interrogatory is overbroad and therefore unlikely to yield relevant information. It therefore asks for information outside the scope of discovery delineated by Federal Rule of Civil Procedure 26.

Without waiving these objections, Mad City responds that it obtained Ms. Saladino's telephone number, (651) 279-1186, from Ms. Saladino on September 8, 2023, when Mad City

visited her residence. During this visit, Ms. Saladino scheduled an appointment for window services, which she rescheduled twice. To the extent that Plaintiffs seek information about which party contacted Ms. Saladino, Mad City responds that Mad City contacted Ms. Saladino regarding these appointments and the window services requested.

As to Mr. Donahue, Mad City obtained Mr. Donahue's phone number, (402) 689-0798, when he visited LinksQuotes.com on April 8, 2024. Mr. Donahue entered his full name and phone number, checked the box acknowledging the consent language, and clicked the "Submit" button below it. In doing so, Mr. Donahue "agree[d] to receive telemarketing calls and pre-recorded messages via an automated dialing system, even if your phone number is a mobile number this is currently listed on any state, federal or corporate Do Not Call list." After receiving Mr. Donahue's prior express written consent, Mad City contacted Mr. Donahue on April 8 and 9, 2024.

**3.    Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.**

**ANSWER**:

Objection. Mad City incorporates its objections to Interrogatory No. 2 herein.

Mad City also objects to this Interrogatory because it is multiple interrogatories disguised as one in violation of Federal Rule of Civil Procedure 33. Plaintiffs ask Mad City to (1) pinpoint each employee or "vendor" found in response to Interrogatory No. 2, then to (2) "identify" each employee or "vendor" found. To "identify" a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all

affiliated entities. Then, (3) Mad City is to "describe" the work of these employees and vendors. As defined, to "describe" requires Mad City to (a) "explain fully the characteristics, nature and substance" of their work, (b) "set forth all details, physical properties and dimensions of a physical thing inquired about," and specify all (c) pertinent dates, (d) locations, (e) causes, (f) purposes, (g) effects and results of their work. This is a flagrant violation of Rule 33.

Mad City also objects to this Interrogatory on the grounds that it is incomprehensible. First, it is unclear what Plaintiffs ask Mad City to do by their repeated use of the word "identify." Plaintiffs specifically defined this word as it relates to documents, natural persons, and entities and Plaintiffs requested that Mad City "identify" these employees and vendors in Interrogatory No. 2. Unless Plaintiffs are asking Mad City to duplicate its efforts in response to Interrogatory No. 2, it is unclear how else Plaintiffs want Mad City to "identify" these employees and vendors.

Next, the definition of "vendors" is unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

The definition of the word "describe" is also impossible to understand and renders this Interrogatory incomprehensible. For example, it is unclear whether the requirement that Mad City "set forth all details, physical properties and dimensions of a physical thing inquired about" only

applies to physical things inquired about or if the first clause asking for "all details" applies to non-physical things inquired about. It is also unclear what constitutes "pertinent dates, locations, causes, purposes, effects and results" of the employees' and vendors' work. As such, Plaintiffs' request is unintelligible.

Next, Mad City objects to this Interrogatory as overbroad and seeking information outside the scope of Federal Rule of Civil Procedure 26. Since Interrogatory No. 2 was so overbroad, the list of employees and vendors pinpointed would be extensive with no end point. As such, much of the information gleaned from "identifying" them would be outside the scope of Rule 26 and certainly, irrelevant to this litigation. Indeed, the definition of the word "identify" would inevitably lead Mad City to other entities and parties not involved with or related to Mad City or the parties. Any information gleaned about such unrelated parties is clearly irrelevant. Furthermore, Mad City does not know the work of any entity or person that is not Mad City. That work is also irrelevant to this litigation.

Mad City also objects to this Interrogatory on the grounds that it is overburdensome and disproportionate to the needs of this case. To satisfy this request, Mad City would first be required to carry out the burdens imposed by Interrogatory No. 2. First, Mad City would be required to scour its databases to find the alleged calling campaign that contacted each Plaintiff. Then, Mad City would have to locate each number called as part of the alleged campaign to locate the vendors, employees, and third parties with whom it contracts that provided the numbers or made the calls. Mad City would then have subjectively determine what "includes, but is not limited to" encompasses. After completing this process, which would take countless hours, Mad City would then have to conduct interviews of each person or entity that falls within this broad scope in order to collect the information required to "identify" them. This process of identification would lead

Mad City to "all persons in the relevant classification or category" as it relates to a person, and "all affiliated entities" as it relates to an entity. Mad City would need to subjectively determine which persons and entities are encompassed within this language and repeat the process, which has no end point delineated. As to each person or entity, Mad City would then need to "identify" the alleged dialing system platform or provider used. Since Plaintiffs do not explain what is required to "identify" equipment and/or providers, Mad City would have to guess.

Then, Mad City would have to carry out the requirements of Interrogatory No. 3. It would need to pinpoint the employees and "vendors" "identified" pursuant to Interrogatory No. 2 and determine which fall within the definition of a "vendor." Then, Mad City would have to conduct additional interviews with each employee and vendor to satisfy the requirements of the definition of "describe." And "to specify all pertinent dates, locations, causes, purposes, effects and results" of their work, Mad City would have to work with each employee or vendor to find such information. And since the databases with the relevant information are typically handled by separate departments within each entity, this would likely entail working with different departments to obtain this information. All in all, this is overburdensome with no end point.

Mad City also objects to this Interrogatory insofar as it seeks information protected by confidentiality, attorney-client privilege, and/or work product doctrine. Needless to say, the individuals providing information as part of Mad City's legal representation in this matter fall within the scope of the attorney-client relationship, and the work Mad City's counsel does in recording this information is protected by the work product doctrine.

On the basis of these objections, Mad City declines to respond.

**4.     Identify all third parties or sub-vendors used by your vendors to for you as part of your relationship with any vendor identified in response to Interrogatory No. 2.**

**ANSWER:**

Mad City incorporates its objections to Interrogatory No. 2 herein.

Mad City objects to this Interrogatory as many requests disguised as one. Plaintiffs ask Mad City to collect the list of persons and entities pinpointed and "identified" by Mad City as part of Interrogatory No. 2. Then, Mad City must identify which persons or entities are considered to be "vendors" by Plaintiffs' broad definition. Next, Mad City must pinpoint the "third parties or sub-vendors" our "vendors" use as part of our relationship and then "identify" them. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Mad City would then also have to guess as to what constitutes a "sub-vendor," as a definition is not provided, and repeat the process. This violates Rule 33.

Because of the breadth of this request, it is also overly burdensome. Mad City would first be required to carry out all tasks required to fulfill the demands of Interrogatory No. 2. Then Mad City would have to determine which persons and entities are "vendors" and interview them to determine whether they use "third parties or sub-vendors" as part of their relationship with Mad City. This would require more speculation, given that "sub-vendors" is an undefined term. Then, Mad City would need to contact these "third parties or sub-vendors" and interview them to obtain the relevant information to "identify" them. And because the definition of "identify" requires Mad City to incorporate "all persons in the relevant classification or category" and "all affiliated

entities," this request would be never-ending. In sum, this is simply too burdensome to be proportional to the needs of the case.

Mad City also objects to the overbreadth of this Interrogatory on the grounds that it is not limited whatsoever to the vendors that are relevant to Plaintiffs. This is a plain fishing expedition. Indeed, Plaintiffs seek all information about the vendors Mad City contracts with, irrespective of whether these vendors are related to Plaintiffs whatsoever. Plaintiffs then take it further by asking for the "third parties or sub-vendors" of these unrelated and irrelevant vendors. This defies the scope of Federal Rule of Civil Procedure 26.

Mad City also objects on the grounds that Plaintiffs seek information not in Mad City's possession or control. Indeed, Plaintiffs seek information about the "third parties or sub-vendors" of Mad City's "vendors." This is plainly outside Mad City's control.

This Interrogatory is also unintelligible. The request as written simply makes no sense. Plaintiffs ask Mad City to "identify" the entities that are "used by your vendors to for you as part of your relationship with any vendor[.]" It is unclear what it means for a vendor to use an entity "to for you." It is also unclear what it means for such entities to be used "as part of [Mad City's] relationship with any vendor[.]" Does Mad City have to be aware of these entities for it to be part of its relationship with its vendors? Do these entities have to be listed in the contracts with Mad City? This is simply vague and thus, impossible to answer.

Second, the definition of "vendors" is unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this

scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Third, the word "sub-vendors" is undefined. And if Mad City incorporates the definition of "vendor" Plaintiffs offer, the meaning becomes no clearer. As such, this is unintelligible.

Based on these objections, Mad City declines to respond.

**5.      Identify all employees or vendors involved in making outbound calls promoting your services. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.**

**ANSWER:**

Mad City first objects to this Interrogatory on the grounds that it makes assumptions Mad City must implicitly accept to respond. This request requires Mad City to implicitly agree that it makes "outbound calls promoting [its] services[,]" that it contracts with third parties who make calls to generate leads, that these calls constitute telemarketing, and that it uses a dialing system platform. Mad City explicitly rejects these assumptions.

Next, Mad City objects that this Interrogatory is multiple requests combined into one. It requires Mad City (1) to pinpoint "all employees or vendors involved in making outbound calls[,]" (2) to narrow the scope to only those "promoting [Mad City's] services[,]" and then to "identify" them. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel

in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Then, Mad City must (3) pinpoint any third parties with whom it contracts to "make telemarketing calls to generate leads" and repeat the identification process. As to each of these persons or entities, Mad City must (4) identify the dialing system platform or provider used to make calls, and (5) determine whether Mad City uses the dialing system platform or provider to obtain phone numbers.

Next, Mad City objects that this Interrogatory is incomprehensible. When Plaintiffs refer to "all employees or vendors," it is unclear whether they are only referring to current employees or vendors, employees or vendors specific to the Plaintiffs, or whether this encompasses former vendors and employees. Plaintiffs also do not specify what constitutes "promoting [its] services." What constitutes promotion? Does a call to confirm an appointment constitute promotion? And which services?

The phrase "third parties that you contract with who make telemarketing calls to generate leads" is also confusing. Pursuant to Plaintiffs' expansive definition of "telemarketing," it would seem as though any and all kinds of outbound calls would constitute "telemarketing." However, Plaintiffs then cabin the scope of this term to the purpose of "generat[ing] leads," which is simply nonsensical. What does it mean to call for the purpose of generating leads? Mad City has no way of knowing and therefore, declines to respond.

Plaintiffs then further expand the scope of this request with the language "including, but not limited to" and include categories that do not intuitively follow from the initial request for "all employees or vendors." For example, Plaintiffs expand the scope to the dialing system platform or provider used by these employees and vendors. And while Plaintiffs provide specific definitions

of "identify" as it relates to natural persons, documents, and entities, they do not as to equipment. Mad City must therefore guess. Subsection (c) also defies logic: it asks "where the phone numbers to make calls is obtained." In sum, this Interrogatory is unintelligible.

Because of the cumulative nature of this request, Mad City also objects that it imposes a disproportional and undue burden. To carry out this request, Mad City would have to first pull records of all outbound calls it has made over the Relevant Time Period, which spans more than four years and would yield millions of records. Then, it would have to subjectively determine which calls fall in the bucket of "promoting" its services, which Plaintiffs neglect to specify. After doing this, Mad City would have to search through these records and identify all employees, current and former, and "vendors" to determine who was "involved" in making these calls. Then, Mad City would have to keep a record of all the information needed to "identify" these persons and entities pursuant to Plaintiffs' definitions. Then, Mad City would have to locate the "third parties" it contracted with over the Relevant Time Period who "ma[d]e telemarketing calls to generate leads." Mad City would have to guess what this entails, because Plaintiffs provide an expansive definition of "telemarketing" that seems to encompass all kinds of outbound calls, but then determine which were made "to generate leads," the meaning of which is unclear. Then, Mad City would have to reach out to all third parties, current and former vendors, and former employees to determine which dialing system platform or provider they used to make calls. This would require hours of interviews and consume significant resources. Finally, Mad City would be required to identify "where the phone numbers to make the calls is obtained," and guess the meaning of the statement. And since the definitions of the word "identify" require Mad City to include "all persons in the relevant classification or category" and "all affiliated entities," the demands of this request would be never ending. In sum, it would consume countless hours and significant resources.

Mad City also objects that the scope of this request far exceeds the bounds of Federal Rule of Civil Procedure 26. First, this request is not at all limited to only those employees and vendors that are relevant to the outbound calls allegedly received by the Plaintiffs. Instead, it seeks limitless information about all of Mad City's employees, vendors, and third parties engaged in any form of outbound calling, irrespective of relevance to the Plaintiffs. This is a flagrant disregard of Rule 26.

Next, Mad City objects to this request on the grounds that it seeks information outside its possession or control. Mad City does not have access to the records, dialing system platforms or providers, or any repositories of phone numbers in possession, ownership, or control of any third parties or vendors.

Additionally, Mad City objects to this request insofar as it seeks information protected by confidentiality, attorney-client privilege, and/or the work product doctrine.

On the basis of these objections, Mad City declines to respond.

**6.     Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 5.**

**<u>ANSWER</u>**:

Mad City incorporates its objections to Interrogatory No. 5 herein. Moreover, this Interrogatory was asked and answered in Interrogatory No. 3. As such, Mad City incorporates its objections to Interrogatory Nos. 2 and 3.

Mad City objects to this request as it is multiple requests disguised as one in violation of Federal Rule of Civil Procedure 33. Indeed, Plaintiffs ask Mad City to (1) pinpoint each "employee or vendor" it identified in Interrogatory No. 5, and then (2) "identify" them. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer,

and (h) state whether that person is represented by Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Then, Mad City is to (3) "describe" their work, which requires Mad City to (a) "explain fully the characteristics, nature and substance" of their work, (b) "set forth all details, physical properties and dimensions" of their work, and (c) "specify all pertinent dates, locations, causes purposes, effects and results" of their work. In sum, this is an amalgamation of numerous requests.

Mad City also objects to this Interrogatory as incomprehensible. First, it is unclear whether Plaintiffs are referring to current or former employees and current or former vendors. Second, Mad City is unaware of what "work" Plaintiffs are referring to, and whether it is specific to that which involves Mad City, that which involves Plaintiffs, or the range of work these employees and vendors did and do.

Third, the definition of "vendor" given by Plaintiffs is without parameters. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

It is also unclear what Plaintiffs are asking Mad City to do when they say to "identify" in this Request. This Interrogatory incorporates, by reference, Interrogatory No. 5, which already required Mad City to "identify" these employees and vendors. Unless Plaintiffs are asking Mad City to duplicate its efforts, Mad City is confused as to the directive of "identify." Mad City is therefore unable to respond.

As a result of these many requests, this Interrogatory is unduly burdensome. In addition to the demands of Interrogatory Nos. 2, 3, and 5, which are extensive, Plaintiffs now ask Mad City to repeat its efforts.

Additionally, Mad City objects to the scope of this request, as it is not cabined to that which is relevant to Plaintiffs and seeks information outside the possession and control of Mad City. Indeed, Mad City is not privy to the general "work" all of its employees and vendors over the Relevant Time Period have engaged in, irrespective of whether this work was done for Mad City. This is a fishing expedition that flies in the face 5  Federal Rule of Civil Procedure 26.

Based on these objections, Mad City declines to respond.

**7.**    **Identify all third parties or sub-vendors used by your vendors to for you as part of your relationship with any vendor identified in response to Interrogatory No. 5.**

**ANSWER:**

Mad City incorporates its objections to Interrogatory No. 5 herein. And because this Interrogatory is duplicative of Interrogatory No. 4, which incorporates by reference Interrogatory No. 2, Mad City incorporates its objections to Interrogatory Nos. 2 and 4 herein. Mad City maintains that it has asked and answered this request.

Nevertheless, Mad City objects to this Interrogatory as many requests disguised as one. Plaintiffs ask Mad City to (1) respond to Interrogatory No. 5, (2) pinpoint which persons or entities

are considered to be "vendors" by Plaintiffs' broad definition. Next, Mad City must pinpoint the "third parties or sub-vendors" our "vendors" use as part of our relationship and then "identify" them. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Mad City would then also have to guess as to what constitutes a "sub-vendor," as a definition is not provided, and repeat the process. This violates Rule 33.

Because of the breadth of this request, it is overly burdensome. Mad City would first be required to carry out all tasks required to fulfill the demands of Interrogatory No. 5. Then Mad City would have to determine which persons and entities are "vendors" and interview them to determine whether they use "third parties or sub-vendors" as part of their relationship with Mad City. This would require another guess, given that "sub-vendors" is an undefined term. Then, Mad City would need to contact these "third parties or sub-vendors" and interview them to obtain the relevant information to "identify" them. And because the definition of "identify" requires Mad City to incorporate "all persons in the relevant classification or category" and "all affiliated entities," this request would be never-ending. In sum, this is simply too burdensome to be proportional to the needs of the case.

Mad City also objects to the overbreadth of this Interrogatory on the grounds that it is not limited whatsoever to the vendors that are relevant to Plaintiffs. This is a plain fishing expedition. Indeed, Plaintiffs seek all information about the vendors Mad City contracts with, irrespective of whether these vendors are related to Plaintiffs whatsoever. Plaintiffs then take it further by asking

21

for the "third parties or sub-vendors" of these unrelated and irrelevant vendors. This defies the scope of Federal Rule of Civil Procedure 26.

Mad City also objects on the grounds that Plaintiffs seek information not in Mad City's possession or control. Indeed, Plaintiffs seek information about the "third parties or sub-vendors" of Mad City's "vendors." This is plainly outside Mad City's control.

This Interrogatory is also unintelligible. The request as written simply makes no sense. Plaintiffs ask Mad City to "identify" the entities that are "used by your vendors to for you as part of your relationship with any vendor[.]" It is unclear what it means for a vendor to use an entity "to for you." It is also unclear what it means for such entities to be used "as part of [Mad City's] relationship with any vendor[.]" Does Mad City have to be aware of these entities for it to be part of its relationship with its vendors? Do these entities have to be listed in the contracts with Mad City? This is simply vague.

Second, the definition of "vendors" is unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Third, the word "sub-vendors" is undefined. And if Mad City incorporates the definition of "vendor" Plaintiffs offer, the meaning becomes no clearer. As such, this is unintelligible.

Based on these objections, Mad City declines to respond.

**8.      Identify each of the individuals that spoke with either of the Either of the Plaintiffss from your company or any of its vendors.**

**ANSWER**:

Mad City objects to this Interrogatory as unintelligible. This sentence simply does not make sense: Plaintiffs ask Mad City to identify those who "spoke with either of the Either of the Plaintiffss." The latter part of the sentence, "from your company or any of its vendors," fares no better. This seems to state that Plaintiffs are from "your company or any of its vendors," which defies logic. It is also unclear what the threshold is for an individual to have "spoke[n]" with either Plaintiff. Are Plaintiffs referring to outbound calls and/or outbound calls, or any casual conversation? Does this speech have to relate somehow to Mad City? It is ambiguous.

The definition of "vendors" is also unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Mad City also objects that this Interrogatory asks for information beyond the control and possession of Mad City. Mad City would simply not be privy to the array of individuals each Plaintiff spoke to throughout the Relevant Time Frame. To be sure, Plaintiffs spoke to many

individuals during this four-plus-year period that Mad City would have no knowledge or documentation of. And if Plaintiffs spoke to third parties or vendors, Mad City would not have possession or control of the records of this communication. As such, this Interrogatory is beyond Mad City's reach.

Mad City also objects that this Interrogatory is cumulative of many requests in violation of Federal Rule of Civil Procedure 33. Indeed, Plaintiffs ask Mad City to somehow (1) pull records of each individual that Ms. Saladino spoke to, (2) pull records of each individual that Mr. Donahue spoke to, (3) determine whether they are from Mad City or one of its "vendors," and then (4) "identify them." To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. And to complete this request, Mad City would implicitly have to (5) request all records relating to Ms. Saladino from each of its vendors, (6) request all records relating to Mr. Donahue from each of its vendors, and then (7) repeat the identification process. This is simply not a single request.

As a result, this Interrogatory imposes an undue burden on Mad City. To complete this request, Mad City would have to guess as to its meaning. Then it would have to pull records of each individual that Ms. Saladino spoke to over the Relevant Time Frame and to do the same with Mr. Donahue. Mad City would then need to interview each current and former employee to obtain the relevant identification information, which would consume many hours. Then, Mad City would have to reach out to all "vendors" it used over the Relevant Time Frame to determine whether any

of them "spoke" to Ms. Saladino and/or Mr. Donahue. This would be costly and time-consuming. Then, Mad City would be required to repeat the interview and identification processes as to any "individual" from any vendor that "spoke" with either Plaintiff during the Relevant Time Frame. And since the identification process expands to encompass "all persons in the relevant classification or category" and "all affiliated entities," this burden is never-ending.

Mad City also objects to the scope and relevance of this Interrogatory. Plaintiffs neglect to limit this request in any way to the type of communication, to whether an agency relationship exists with Mad City and the vendor, and neglects to specify what constitutes speech in this context. As written, any individual from Mad City or any vendor who spoke to either Ms. Saladino or Mr. Donahue is encompassed. This encompasses non-telephonic speech, speech for non-telemarketing purposes, speech unrelated to Mad City, and unrelated to this litigation. It is therefore outside the scope of Rule 26.

Without waiving these objections, to the extent that Plaintiffs are asking to whom Plaintiffs spoke, Mad City responds that it was Mad City.

**9.      If you contend that Either of the Plaintiffs provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.**

        **ANSWER:**

Mad City objects to this Interrogatory on the grounds that it is not a single request, but many. Plaintiffs ask Mad City to do three things: (1) state all facts in support of the contention that either Plaintiff provided consent to receive solicitation telephone calls, (2) identify the date(s) on which consent was obtained, and (3) the means by which consent was obtained. This is clearly cumulative in violation of Federal Rule of Civil Procedure 33.

Next, Plaintiff objects to this request as amorphous and vague. A quick glance at Plaintiffs' definition of "you" reveals that it is not confined to Mad City. Instead, it "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include *inter alia*, Mad City's employees, agents, and affiliates, the contentions of which are not relevant or at issue. Since Plaintiffs' definition of "you" fails to confine itself to only Mad City, Mad City cannot answer.

Further, Mad City objects that "solicitation telephone calls" is ambiguous. Plaintiffs do not provide a definition. While "telephone solicitation" and "telemarketing" are terms defined by the TCPA, Plaintiffs provided their own definition of "telemarketing" that encompasses significantly more conduct than the definition provided by the TCPA. It is therefore unclear whether "solicitation telephone calls" comports with the TCPA definition or is akin to that of Plaintiffs' definition of "telemarketing." If not, it is unclear what Plaintiffs consider to be solicitation telephone calls in general. Does this encompass appointment verifications or calls pursuant to an established business relationship? This requires Mad City to guess.

This request is also unintelligible and overbroad because Plaintiffs do not indicate from whom Mad City contends that Plaintiffs consented to receive solicitation telephone calls. Plaintiffs fail to specify whether they are referring solely to any form of consent provided to Mad City, to any of its vendors, or to any unrelated person or entity. As such, this request asks for a bevy of information that is not relevant to this litigation and contravenes Rule 26.

Moreover, to the extent that "you" encompasses such employees, agents, and affiliates, Mad City objects to the scope of the Interrogatory. Mad City declines to speak to the contentions

of non-parties to this litigation. They are irrelevant and outside the scope of Federal Rule of Civil Procedure 26.

Mad City also objects to this Interrogatory as to Ms. Saladino. Ms. Saladino's telephone number was personally given to Mad City by her and was not obtained through the submission of any other form of consent. As such, this request is irrelevant to her claims.

Because the scope of this request is so broad, the burden is heavy on Mad City. To answer this Interrogatory, Mad City would have to survey "without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives" to ask whether they contend that either Plaintiff consented to receive solicitation telephone calls from any entity. Just pinpointing the relevant parties on this list would consume countless hours, and this burden would be compounded by the time it would take Mad City to interview these parties. Next, Mad City would have to ask each individual party for "all facts in support of that contention," to "identify the date(s) on which" this consent was contained, and "the means by which" that party contends consent was obtained. Mad City would have to compile all of this information through interviews, which would be time consuming, costly, and yield little return.

Additionally, Mad City objects to this request insofar as it seeks information protected by confidentiality, attorney-client privilege, and/or the work product doctrine.

Without waiving these objections, Mad City responds that it received Mr. Donahue's prior express written consent to be called on April 8, 2024, through LinksQuotes.com. While visiting this website, Mr. Donahue entered his full name and phone number, checked the box acknowledging the consent language, and clicked the "Submit" button below it. In doing so, Mr. Donahue "agree[d] to receive telemarketing calls and pre-recorded messages via an automated

27

dialing system, even if your phone number is a mobile number this is currently listed on any state, federal or corporate Do Not Call list."

**10.    If you contend that a third party made the calls alleged in the complaint, identify that third party and state all facts in support of the same.**

**ANSWER:**

Mad City objects that this request is unintelligible. Plaintiffs' definition of "you" is not confined to Mad City. Instead, it "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include *inter alia*, Mad City's employees, agents, and affiliates, the contentions of which are not relevant or at issue. Since Plaintiffs' definition of "you" fails to confine itself to only Mad City, Mad City cannot answer.

Moreover, to the extent that "you" encompasses such employees, agents, and affiliates, Mad City objects to the scope of the Interrogatory. Mad City declines to speak to the contentions of non-parties to this litigation. They are irrelevant and outside the scope of Federal Rule of Civil Procedure 26.

Because the scope of this request is so broad, the burden is heavy on Mad City. To answer this Interrogatory, Mad City would have to survey "without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives" to ask whether they contend that a third party made the calls alleged in the complaint. Just pinpointing the relevant parties on this list would consume countless hours, and this burden would be compounded by the time it would take Mad City to interview these parties. Mad City would then have to "identify"

these parties. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. This would require substantial record keeping on the part of Mad City. Finally, Mad City would have to ask these third parties to state all facts in support of their contention and record them. This process would then have to be repeated pursuant to the definition of identify, which includes "all persons in the relevant classification or category" and "all affiliated entities." Ultimately, this would be costly, burdensome, and time consuming for little payoff.

Consistent with this burden, Mad City objects that this is not a single request but multiple requests disguised as one. First, Mad City would need to compile a list of all persons and entities encompassed within the definition of "you" given by Plaintiffs. Then, Mad City would have to determine which are "third parties." At this point, Mad City would have to interview each relevant party for all relevant facts to support its contention that a third party made the calls at issue. Finally, Mad City would need to "identify" these third parties. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. This is clearly more than a single request.

Without waiving said objections, Mad City responds that Mr. Donahue provided consent on April 8, 2024, via https://LinksQuotes.com. Mad City then received Mr. Donahue's consent and contact information from Keywords Connect.

**11.    Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.**

<u>**ANSWER:**</u>

Mad City objects to this request as invading the bounds of confidentiality, attorney-client privilege, and/or the work product doctrine. Further, this request is a blatant invasion of privacy, as "all communications" Mad City has had that touch upon this lawsuit are not all relevant to this litigation, and therefore not discoverable. Such a request is harassing and unnecessary.

Next, Mad City objects that this is a series of sprawling requests disguised as one in violation of Federal Rule of Civil Procedure 33. First, Mad City must (1) determine which persons and entities fall within the expansive definition of "you," then (2) pinpoint all communications these persons and entities have engaged in, (3) to determine which of them were with a "third party other than your counsel," and (4) which discuss this lawsuit. Then, Mad City must somehow "identify" these communications, despite the lack of a fitting definition of "identify." This is more than a single request.

This request is also unintelligible. First, Plaintiffs' definition of "you" is not confined to Mad City. Instead, it "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include *inter alia*, Mad City's

30

employees, agents, and affiliates, the communications of which are not at issue unless directly with Plaintiffs.

Given the expansive definition of "you," the definition of "third party" is relative. Indeed, it is defined as "any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you." This "you" is clearly relative. And since Mad City cannot be sure which persons and entities fit within its definition, it follows that it also cannot be sure which persons and entities fit within the definition of "third party." As such, this request is simply unanswerable as written.

Mad City also objects to this request as overbroad and outside the scope of Rule 26. Plaintiffs do not require that any such communication be somehow relevant to any particular issue. And Plaintiffs seek information outside the possession and control of Mad City and invasive of the privacy concerns of Mad City and all implicated persons and entities. This will not yield relevant information.

Needless to say, the overbreadth of this Interrogatory renders it unduly burdensome. The guesswork and research by itself that would be involved in ascertaining the persons and entities implicated by this Interrogatory would consume hundreds of hours. Then, Mad City would have to comb through the business records and personal records of all relevant persons and entities to find those that may have touched upon the current litigation. To do this, Mad City would have to reach out to these persons and entities for relevant records, and personal records would predictably be impossible to get. This is disproportionate and absurd.

Based on these objections, Mad City declines to respond.

12.    **Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact either of the Either of the Plaintiffss.**

**ANSWER:**

Mad City objects to this Interrogatory, as it is not a single request, but a series of requests in violation of Federal Rule of Civil Procedure 33, which requires interrogatories to be limited to a single question each. Plaintiffs ask Mad City to note the make, model, structure, and location the system(s), platform(s), and/or equipment used by Mad City, or any vendor, to contact either Plaintiff. This is clearly overbroad.

Mad City also objects that this Interrogatory is impossible to comprehend as written. Indeed, "identify" is defined by Plaintiffs as to documents, natural persons, and entities, but not as to equipment. It is therefore anyone's guess what the demand of "identify" is. Next, it asks Mad City to describe the equipment used to contact "either of the Either of the Plaintiffss." Again, it is simply unclear what Plaintiff seeks in this request.

Next, "you" is not confined to Mad City. Instead, it "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include *inter alia*, Mad City's employees, agents, and affiliates, which Mad City cannot speak for.

Third, the definition of "vendors" is also unintelligible. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs

refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

Fourth, it is unclear what Plaintiffs refer to when they say "contact." Does this include non-telephonic communication? Does this include calls and text messages? Inbound calls? Plaintiffs do not clarify and Mad City will not speculate to its peril.

Predictably, this Interrogatory is overly broad. It requests that Mad City search through each of its records, and those of its employees, agents, affiliates, and vendors, for any contact that any individual ever made to either Plaintiff in order to determine which make, model, structure and location the system(s), platform(s), and/or equipment was used. This is unreasonable, especially considering that Mad City is not in possession or control of the records of any third party, vendor, or other entity. Mad City cannot reasonably be expected to engage in the massive process of collective all communications ever made by such a wide array of persons and entities over more-than-four-year period, and then to filter these results to search for communications related to Plaintiffs.

Mad City also objects to the extent that this Interrogatory implies that Mad City makes, or engages an agent to make, artificial or prerecorded calls or those using an automatic telephone dialing system. Mad City vehemently denies and rejects this implication.

This Interrogatory is also unduly burdensome. Indeed, the burden associated with first locating the persons and entities that fall within the wide-ranging definitions of "you" and

"vendor" would be high. Then, Mad City would have to spend hundreds of hours reaching out to these outside persons and companies to track down records it does not own pertaining to contact with the Plaintiffs. It is unclear what relevance, if any, the structure and location of every system, platform or equipment used by Mad City and every other employee, affiliate, vendor, and agent would have to Plaintiffs' claims. Even more concerning is how this information is relevant to any vendor of Mad City. This would be costly and consume huge amounts of time. It is simply not proportional to the needs of this case.

Mad City also objects here insofar as this Interrogatory requests information not in Mad City's control or possession and calls upon Mad City to speculate as to the system used by a third party placing calls to Plaintiffs.

Without waiving these objections, Mad City responds that Mad City contacted Ms. Saladino by visiting her residence in person on September 8, 2023, during which time Ms. Saladino voluntarily gave her phone number and scheduled an in-person appointment for window services. Mad City further responds that Mr. Donahue provided consent on April 8, 2024, to https://LinksQuotes.com. Mad City then received Mr. Donahue's consent and contact information from Keywords Connect.

**13.    State all facts in support of any affirmative defenses you have raised.**

**<u>ANSWER</u>**:

Mad City objects because this Interrogatory is overly burdensome, vague, and ambiguous. A single Interrogatory is a disproportionate vehicle to demand that Mad City provide all information with respect to each allegation in the First Amended Complaint and the relevant affirmative defenses.

Further, to the extent that the affirmative defenses are aimed at class members' claims, this request is wildly overbroad, unduly burdensome, and premature because it would require Mad City to comb through the records of every individual that received a call from Mad City to assess whether these individuals were called using automated technology and/or provided consent to determine class membership, and then determine each and every possible piece of evidence that might support a merits defense as to each such class member.

This Interrogatory is also disproportionate to the needs of the case at this stage, prior to the class definition being certified. As such, it is unduly burdensome to require Mad City to produce such information relating to any and all affirmative defenses relating to the class members' claims.

Moreover, the interrogatory is overly broad because the class as pleaded in the complaint may yet be narrowed prior to the certification stage and there is no basis to state all facts regarding defenses applicable to non-class members. Indeed, such a response would violate the privacy rights of these parties respecting confidential financial matters.

Lastly, this request also plainly seeks attorney work product mental impressions—i.e., the opinion of Mad City's counsel as to what facts do or do not support a defense. Hence, the response it seeks is outside the scope of discovery.

On the basis of these objections, Mad City declines to respond.

**14.    Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.**

**ANSWER**:

Mad City objects to this Interrogatory as not a single request, but a series of sprawling requests in violation of Federal Rule of Civil Procedure 33. This request asks Mad City to (1) pinpoint any person, employed by Mad City or not, that it has "disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls." Then, Mad City must (2) "identify" these persons. To "identify" a third party that is a natural person, Mad City is then required to state that person's (a) full name, (b) title, (c) business address, (d) telephone number, (e) email address, (f) occupation, (g) employer, and (h) state whether that person is represented my Mad City's counsel in this litigation. To "identify" a third party that is an entity, Mad City must state the entity's (a) full name, (b) address, (c) telephone number, (d) state of incorporation or organization, (e) web address, and (f) all affiliated entities. Then, Mad City is asked to again (3) "identify" any persons involved in any investigation, (4) "describe" the reasons for the disciplinary action or reprimand, and (5) "describe" the action taken against the person. Within (4) and (5), Plaintiffs' definition of "describe" requires Mad City to "explain fully the characteristics, nature and substance" of (4) and (5), "set forth all details, physical properties and dimensions" of (4) and (5), and "specify all pertinent dates, locations, causes, purposes, effects and results" of (4) and (5). This Interrogatory thereby comprises numerous requests.

Mad City also objects to the assumptions underlying this Interrogatory that Mad City must implicitly accept to respond. Mad City vehemently denies that it engages in any unlawful outbound calls and is compliant with the demands of the TCPA.

Notably, this request is wildly overbroad because it has nothing to do with Plaintiff's claims. In other words, Mad City would need to engage in a voluminous and futile search to potentially discover something which is unrelated to Plaintiff's suit. Indeed, Mad City would need to search every single database for each and every record that may relate to the many sub-

categories sought herein to satisfy Plaintiff's whim. Certainly, this is not proportional to the needs of this case.

Mad City further objects to the scope and relevance of this Interrogatory. It is boundless. Whether Mad City has engaged in such disciplinary action is unrelated to Plaintiffs claims or the facts at issue in this matter. This is an unlimited request to engage in a fishing expedition in the hopes of finding any information. As such, the interrogatory is overly broad and fails the proportionality requirements of Rule 26.

Given the limitless scope of this request, Mad City objects to the undue burden imposed by it. To comply with it, Mad City would be required to somehow scour its databases and conduct interviews to determine whether it has ever investigated or disciplined a person or entity for making outbound calls. Then, Mad City would need to engage in interviews to gather the information required to "identify" these persons and entities, the disciplinary action, the investigation, and the reasoning. This would consume countless hours to yield results that would be neither relevant nor useful to this litigation.

Certainly, this request is excessively burdensome as phrased. Requiring Mad City to search for the identification of *any* individual to *ever* have been disciplined would require at least dozens of hours—not because there are numerous individuals—but because every business unit would have to be consulted to even find such names. The needs of this case do not justify this search because the names of the individuals who may or may not have been disciplined do not have any conceivable relevance to the case. And the burden on Mad City to then produce the names (if any) of unrelated third parties, is excessive given the needs of the case. Further, *if* such names were found and provided, such information would threaten the privacy of those individuals unrelated to this case.

Lastly, Mad City objects to this request insofar as it seeks to violate the privacy of nonparties to this litigation and may implicate confidentiality concerns.

Based on these objections, Mad City declines to respond.

## REQUESTS FOR PRODUCTION

**1.    Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.**

**RESPONSE:**

Mad City objects to this demand as it does not set forth a single reasonably particularized category of documents to be produced. Although it seems like a single request, it is actually three separate requests: all documents identified in interrogatories, all documents used to research interrogatories in this case, and all documents of draft responses to interrogatories in this case.

While the Request seems to limit the demand by excluding documents protected by attorney-client privilege, it is still problematic. The research and draft responses are privileged information which include mental impressions of attorney-client communications. Simply adding this exclusion to the Request does not dissolve the protection afforded litigants.

Even disregarding privileged records, however, the burden imposed by Plaintiffs in this Request is excessive. This request is unlimited in scope and includes all research, drafts, notes, investigation, or mental impressions used in responding to Plaintiffs' interrogatories. Indeed, this demand is so extreme that it purports to require Mad City to search the records of each and every employee for any scrap of paper or electronic record that could have been used to respond in this case.

Based on these objections, Mad City declines to produce responsive documents.

2.      **Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.**

**<u>RESPONSE:</u>**

Mad City objects that this Request is vague and fails to set forth a reasonably particularized category of documents to be produced. This Request is actually two separate demands masquerading as a single Request: Plaintiffs ask Mad City to produce (1) all documents supporting any affirmative defense made by Mad City, and (2) all documents contradicting any affirmative defense made by Mad City. However, neither of these Requests set forth a reasonably particularized category of documents for Mad City to produce and both seek to impose a massive burden on Mad City.

Mad City further objects to the scope of this Request insofar as it seeks records supporting and contradicting every defense applicable to every putative class member. This is wildly overbroad and burdensome. Such a request would require Mad City to research the highly individualized issues regarding the legality of each call to each putative class member, including by analyzing each file of each individual that received calls from Mad City to extract each fact supporting or contradicting every defense applicable to that individual. This would take hundreds of hours. That so many disparate records need to be reviewed and assessed to determine the merits of the putative class members' claims underscores why the classes in this case are uncertifiable.

This demand is also overbroad because the class as pleaded in the First Amended Complaint may still be narrowed before the class certification stage. Therefore, there is no reason to compel production of such wide-ranging documents relating to defenses of individuals who may not be class members. Such a production would violate the privacy rights of these parties.

As phrased, this Request is broad enough to encompass records of communication between Mad City's attorneys, in addition to core attorney-client communications. This is inadmissible and outside the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1) (providing that discovery is permitted on *nonprivileged* matters only). This Request is similarly broad enough to seek documents protected by the attorney work product doctrine—i.e., records discussing the opinions of Mad City's counsel as to whether a record supports a defense. As such, these records are outside the scope of discovery.

Based on these objections, Mad City declines to produce any responsive documents.

**3.      Please produce all documents related to either of the Plaintiffs, including, but not limited to, all documents evidencing your relationship with either of the Plaintiffs or your investigation into outbound calls made to either of the Plaintiffs.**

**RESPONSE:**

Mad City objects that this demand does not set forth a reasonably particularized category of documents to be produced.

This demand is vague and ambiguous. For example, the language "including, but not limited to," broadens the scope of the request without a limiting or guiding principle for Mad City to following. It is not clear what Plaintiffs consider evidencing a "relationship" in this context either. Plaintiffs' definition of the word "you" is also so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. Then, Plaintiffs include *inter alia*, Mad City's affiliates, which Mad City cannot speak for.

This request is overly broad in that it seeks all documents related to either of the Plaintiffs, including, but not limited to, all documents evidencing Mad City's relationship with either of the Plaintiffs or Mad City's investigation into outbound calls made to either of the Plaintiffs—not just those at issue in the case. The demand is also overly broad because it seeks "all documents related" to an event, instead of a specific and reasonably particularized category of documents as the rules require.

This demand is also unduly burdensome because it seeks *all* documents related to either of the Plaintiffs, including, but not limited to, all documents evidencing Mad City's relationship with either of the Plaintiffs or Mad City's investigation into outbound calls made to either of the Plaintiffs. Indeed, the burden placed upon Mad City to produce all such documents relating to Plaintiffs, evidencing Mad City's relationship with either Plaintiff or an investigation into outbound calls made to either Plaintiff is overwhelming and beyond the scope of Rule 26. To fashion a response to this demand would require Mad City to search every single document in its possession and then filter those results to those that relate to Plaintiff. Then, Mad City would need to determine which documents evidence Mad City's relationship with Plaintiff and which documents evidence Mad City's investigation into outbound calls.

In fact, this demand is so burdensome that Mad City would need to interview every current and possibly former employee to determine if he or she may have any knowledge of communications. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct a wholly irrelevant and unnecessary search.

This demand is objectionable as it may be read to include a demand for privileged records, such as counsel for Mad City's entire litigation file for this case, the records of communication

between Mad City's legal department and outside counsel, or the records of communication between Mad City's legal department and its executives. As knowingly seeking privileged records is unethical and inappropriate conduct, Mad City will presume that Plaintiffs seek only business records relating to them.

Even focusing on non-privileged records, however, the burden attendant of the email search Plaintiffs demand is excessive given the limited needs of this case. This request is unlimited in scope in that it includes everything remotely related to the named Plaintiffs. The demand imposes an extreme burden to the extent it purports to require Mad City to search the records of each and every employee for any scrap of paper or electronic record that might make mention of the Plaintiffs. Such a search might take hundreds of hours, yet only those business records that deal with consent or outbound calls are conceivably relevant to the case. So, the proportionality requirements of Rule 26 are exceeded.

Based on these objections, Mad City declines to produce responsive records.

**4.      Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.**

**RESPONSE:**

Mad City objects to this Requests as it incorrectly assumes that there was any such failure of a vendor to abide by Mad City's policies or procedures. Mad City rejects this supposition.

The demand is also impermissibly vague. Plaintiffs' definition of the word "you" is also so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just

the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

The definition of "vendor" is similarly unclear. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter.

This demand is also ambiguous as it might be read to include a demand for privileged records— such as Mad City's outside counsel's entire litigation file for this case, or the records of communication between Mad City's legal department and outside counsel, or the records of communication between Mad City's legal department and its executives. As knowingly seeking privileged records is unethical and inappropriate conduct, however, Mad City will presume Plaintiffs seek solely business records.

Even focusing on non-privileged records, however, the burden attendant of the search Plaintiffs demand is excessive given the limited needs of this case. This request imposes an extreme burden to the extent it purports to require Mad City to search across all its databases and its records for any failure related to any outbound call ever made from April 19, 2020, to the present.

This request is overly broad in that it seeks all records relating to any form of policy violation connected with the sending of outbound calls—not just those at issue in the case. The demand is also overly broad because it seeks "all documents related" to an event, instead of a specific and reasonably particularized category of documents as the rules require.

Moreover, records related to the conduct of vendors or employees that did not involve class members are classically outside the scope of discovery in this suit and unrelated to the subject matter of the action. Given the great burden associated with the demanded search and production, Mad City objects that the Request seeks to impose a burden that is disproportionate to the need for the records in this case.

On the basis of these objections, Mad City declines to respond to this request.

**5.     Please produce all complaints concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.**

**RESPONSE:**

Mad City objects to this request on the grounds that it does not set forth a single reasonably particularized category of documents as the Federal Rules of Civil Procedure require. Instead, it sets forth nearly a dozen, wide-ranging and misshapen requests that impose an undue burden on Mad City.

First, Plaintiffs ask Mad City to "produce all complaints concerning outbound calls made by you or by any vendor of yours[.]" The definitions incorporated by reference into this request render it overbroad. Plaintiffs' definition of the word "you" is so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations,

divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

To make matters worse, the definition of "vendor" is similarly unclear. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter. And given that "vendor" is relative to the subject "you," this request is wholly unascertainable.

This demand is entirely overbroad, given that the complaints sought are not those relating to this case, but those relating to outbound calls in general. The combination of this scope with the breadth of "vendor" and "you" will yield huge amounts of irrelevant information and inflict an undue burden on Mad City in the process.

The receipt of complaints—even those related to the issues in this case—is not proof of any issue relevant to this matter. The TCPA is a strict liability statute. Either Mad City violated the statute, or it did not. And Plaintiffs cannot prove claims using un-litigated hearsay complaints of third parties. Notably, Plaintiffs do not limit their demand to complaints by class members so

they are seeking statements by third parties that will have no bearing on the outcome of this action. For this reason, too, therefore, the demand imposes an undue burden and fails the proportionality requirements of Rule 26.

Next, Plaintiffs seek only those complaints "for allowing or making allegedly unlawful or unauthorized outbound calls." This is too broad in scope. It is not at all relevant in this case whether the "vendor" of an affiliate, which is included in the definition of "you," was the subject of a complaint for allowing or making such calls. As written, this can be written to involve wholly separate entities from Mad City. And Mad City cannot be asked to produce documents outside its possession or control.

Plaintiffs further add to the ambiguity of this Request by including the language "[t]his request, but is not limited to, any written complaints[.]" What does this mean? Mad City will not speculate at its peril. Plaintiffs then further expand the scope of "written complaints" to those that are "litigation or pre-litigation," whatever that means. What is a pre-litigation complaint? Is a bad Google review a pre-litigation complaint? Must an official complaint have been filed for a previous complaint to be considered pre-litigation? This defies sense.

Then, Plaintiffs further expand the scope to seek any of these complaints "received by you, any response sent, and any internal correspondence about the same." Again, the subject of "you" is ambiguous. To the extent that it refers to a third party affiliate unrelated to this litigation, Mad City objects that such information is not within its possession or control and is therefore outside the scope of Rule 26.

Moreover, this Request can be read to encompass information protected by confidentiality obligations, attorney-client privilege, and/or the work product doctrine. Indeed, this Request can be read to include correspondence between its internal counsel and Mad City employees, directors,

and executives, between internal and external counsel, and so on. It can also encompass the mental impressions of counsel for Mad City.

Based on these objections, Mad City declines to respond.

**6.      All contracts or documents representing agreements with any vendor that provided you with the either of the Plaintiffs' telephone number or information.**

**RESPONSE:**

Mad City objects that this request is unintelligible. It is unclear what it means for a document to "represent" an agreement. The definition of "you" is so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

The definition of "vendor" is similarly unclear.  It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter. And given that "vendor" is relative to the subject "you," this request is wholly unascertainable.

Next, Mad City objects to the scope of this Request, as it seeks "all contracts or documents representing agreements" and is not confined to any vendor or service agreement. And since it is unclear what it means for a document to represent an agreement, this can encompass all forms of communications between "you" and the "vendor," irrespective of whether the communication or contract is at all relevant to Plaintiffs.

As written, this demand is so overbroad that it seeks for Mad City to produce "all contracts or documents representing agreements" for a four-year time period relating to any vendor that provided either Plaintiff's telephone number. This search alone would consume hundreds of hours because Mad City would need to search every single document in every database for contracts and/or documents representing agreements that relate to any vendor and then filter those search results for vendors that provided either of the Plaintiffs' telephone number.

This demand is also unduly burdensome as Mad City would need to identify each vendor ever used during the relevant period—which itself is complicated due to the evolving business relationships and the availability of accurate records. To the extent that this request seeks documents for vendors that did not contact Plaintiff, this demand is beyond the scope of relevant discovery.

Importantly, this request is not limited to entities authorized by Mad City —if any—to call the Plaintiff. As such, this request is overbroad and unduly burdensome. Mad City would need to interview every current and possibly former employee to determine if he or she may have any knowledge of all contracts or documents representing agreements with each vendor. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct same.

To the extent Mad City contracted with any entity that communicated with Plaintiff unrelated to Mad City's services, the demand is overly broad and seeks information outside the scope of discovery.

Further, this Request implicates confidentiality concerns, attorney-client privilege, and/or the work product doctrine. If a legal document is involved, these discussions may have been between one party and their counsel, or between the parties. This may include the mental impressions of either party's attorneys.

Without waiving these objections, Mad City responds that it has no responsive documents as to Ms. Saladino because Ms. Saladino gave her phone number to Mad City in person on September 8, 2023. No such contract exists with Ms. Saladino. As to Mr. Donahue, Mad City will produce responsive documents.

**7.    All communications with any vendor that provided you with the either of the Plaintiffs' telephone number or information.**

**RESPONSE:**

Mad City objects to this Request as it does not seek a reasonably particularized category of documents to be produced.

As written, this request is so overbroad that it seeks *all* communications from any medium and without any limit as to time or subject made between any Mad City employee and any vendor or any third party that Mad City has ever had any relationship with. Indeed, this demand seeks to impose a burden on Mad City by having Mad City search every single document in its possession. To the extent that this request seeks communications for vendors that did not contact Plaintiffs, or communications that are unrelated to Plaintiffs, this demand is wildly overbroad, unduly burdensome and beyond the scope of relevant discovery.

Moreover, all communications with any vendor that provided either of the Plaintiffs' telephone number or information are not relevant to Plaintiffs' claims. As such, requesting all communications is certainly beyond the scope of discovery.

This demand also invades the privacy of any "vendor" and "you." Indeed, it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs and the litigation.

Mad City objects that this request is unintelligible. The definition of "you" is so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

The definition of "vendor" is similarly unclear. It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant."

This is simply confusing, especially considering Mad City is the only defendant in this matter. And given that "vendor" is relative to the subject "you," this request is wholly unascertainable

And because these terms are so expansive, the burden placed upon Mad City to produce all such communications relating to these many possible entities from these many possible sources is overwhelming and beyond the scope of Rule 26. In fact, this demand is so burdensome that Mad City would need to interview every current and possibly former employee to determine if he or she may have any knowledge of communications with each vendor that that provided Plaintiffs' telephone number. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct a wholly irrelevant and unnecessary search.

In this regard, this Request implicates confidentiality concerns, attorney-client privilege, and/or the work product doctrine. These communications may have been between one party and their counsel, or between the parties. This may include the mental impressions of either party's attorneys.

While Mad City is willing to discuss what, precisely, Plaintiff is seeking and meet and confer in good faith about a potential production of information that is relevant to this action, it will not produce any records in response to this inappropriate demand.

**8.    All internal communications at your company regarding any vendor that provided you with the either of the Plaintiffs' telephone number or information.**

**RESPONSE:**

Mad City objects that this demand is overbroad and burdensome because it seeks all internal communications at your company regarding any vendor that provided you with either Plaintiff's telephone number. Thus, the demand requires Mad City to identify every

communication with any vendor, from any medium and without any limit as to time or subject, made between any Mad City employees, officers, and/or directors. This search alone would consume hundreds of hours because Mad City would need to search every single document over the last four-plus years constituting internal communication about any such vendor, and any personal communications between any such parties within the company related to any such vendor.

This demand is also unduly burdensome as Mad City would need to identify each vendor ever used during the relevant period, which is itself complicated due to the evolving business relationships and availability of accurate records. To the extent that this request seeks documents relating to vendors that did not contact either Plaintiff, this demand is beyond the scope of relevant discovery.

Next, Mad City objects to the invasive nature of this demand, given that the definition of "communication" relates to personal records. Indeed, it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs and the litigation, as long as it relates to such vendor.

This demand is also unintelligible. The definition of "you" is so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

The definition of "vendor" is similarly unclear.  It uses "third party," which is also a defined term, in reference to those "under contract with, hired by, employed by, paid by or working for [Mad City], directly or indirectly," even though the definition of "third party" specifically refers to those "not owned or controlled by" Mad City. It is unclear what Plaintiffs refer to when they refer to "phone-based activities or services." They then list a host of activities that fall within this scope but broaden these activities without limitation with the language "including, but not limited to." Plaintiffs seem to attempt to anchor these activities to a subject to which they relate but then remove this limiting principle with the language "including, but not limited to, any co-defendant." This is simply confusing, especially considering Mad City is the only defendant in this matter. And given that "vendor" is relative to the subject "you," this request is wholly unascertainable.

Then, considering the definition of "communication," which is so personally defined, it is unclear what Plaintiffs mean when they refer to "internal communication." Mad City is unsure how the definition of communication, as drafted by Plaintiffs, could be any more internal than it currently is.

And because these terms are so expansive, the burden placed upon Mad City to produce all such communications relating to these many possible entities from these many possible sources is overwhelming and beyond the scope of Rule 26.

In this regard, this Request implicates confidentiality concerns, attorney-client privilege, and/or the work product doctrine. These communications may have been between one party and their counsel, or between the parties. This may include the mental impressions of either party's attorneys.

Based on these objections, Mad City declines to respond.

9.      All contracts or documents representing agreements with any third party that dialed the calls to the either of the Plaintiffs.

**RESPONSE:**

Mad City objects to this Request as it does not seek a reasonably particularized category of documents to be produced.

It is also unintelligible. It is unclear what it means for a document to represent an agreement. It is also unclear which contracts or documents Plaintiffs seek, since they specify that it is "with any third party," but does not specify that Mad City is a party to that contract or document. Mad City objects that it cannot produce documents not reasonably within its possession or control.

Mad City also objects to the scope and relevance of this Request. All agreements with any third party that dialed either Plaintiff are not all relevant to this litigation. The only relevant documents are those governing any relevant relationship between Mad City and any potential entity with which it contracts. Since this request is not so limited, it is beyond the scope of Rule 26.

Moreover, Mad City objects that if a third party dialed calls to either Plaintiff, such records are not within the control or possession of Mad City. They are therefore outside the scope of Rule 26.

Next, because "documents representing agreements" is so vague that it may encompass any form of communication, it implicates confidentiality, privacy, attorney-client privilege, and/or the work product doctrine.

As written, this demand is so overbroad that it seeks for Mad City to produce all contracts or agreements for a four-year time period regardless of whether the vendor ever contacted Plaintiff.

This search alone would consume hundreds of hours because Mad City would need to search every single document in every database for contracts and/or documents relating to agreements that relate to third party that dialed calls to either Plaintiffs.

This demand is also unduly burdensome as Mad City would need to identify each vendor ever used during the relevant period—which itself is complicated due to the evolving business relationships and the availability of accurate records. To the extent that this request seeks documents for vendors that did not contact Plaintiff, this demand is beyond the scope of relevant discovery.

Importantly, this request is not limited to entities authorized by Mad City —if any—to call the Plaintiff. As such, this request is overbroad and unduly burdensome. Mad City would need to interview every current and possibly former employee to determine if he or she may have any knowledge of all contracts or documents representing agreements with each vendor that made telemarketing calls and generated leads for Defendant. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct same.

To the extent Mad City contracted with any entity that communicated with Plaintiff unrelated to Mad City's services, the demand is overly broad and seeks information outside the scope of discovery.

Mad City also objects to this request on the grounds that it cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by

you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

Based on these objections, Mad City declines to produce responsive documents.

**10.    All communications with any third party that dialed the calls to the either of the Plaintiffs relating to telemarketing or lead generation.**

**RESPONSE:**

Mad City objects to this request as wholly unintelligible. First, Plaintiffs seek communications with "any third party that dialed the calls to Plaintiffs," but do not specify with whom the third party was communicating. Next, Plaintiffs fail to define "lead generation," leaving Mad City to guess. Third, Plaintiffs define "telemarketing" so expansively as to include any telecommunication, regardless of whether it was inbound or outbound, the exceptions to the TCPA definition, and regardless of purpose. This, combined with the broad definition of "communication" leave Mad City without direction as to what type of communication Plaintiffs seek.

Next, this request is overbroad. Indeed, it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs and the litigation, as long as it relates to such third party.

Although this request is limited to potential third parties that dialed the calls to Plaintiffs, the types of communications sought are not cabined to only those that are relevant to Plaintiffs. As such, this is an invasive request that goes far beyond the scope of relevance under Rule 26.

Also, this demand is overbroad and burdensome because it seeks *all* communications with any third party that dialed the calls to either of the Plaintiffs relating to telemarketing or lead generation. Thus, the demand requires Mad City to identify every communication – from any medium and without any limit as to time or subject— in Mad City's possession for a four-year timeframe. Mad City would have to conduct a search of every scrap of paper and data element in the possession of any of its employees that might conceivably pertain to the subject matter of the request. This search alone would consume hundreds of hours because Mad City would need to search every single document and further filter the results for those that pertain to the company that contacted Plaintiffs. Then, Mad City would need to filter the search for those communications that relate to telemarketing and lead generation.

Further, this demand is unduly burdensome as it seeks Mad City to interview every current and possibly former employee to determine if he or she may have any knowledge of communications relating the Plaintiff. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct same.

Mad City also objects to this request on the grounds that it cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

Since these are third party communications, Mad City does not have them within its control or possession. It therefore cannot be expected to produce them.

Based on these objections, Mad City declines to produce responsive documents.

**11.    All internal communications at your company regarding any third party that dialed the calls to the either of the Plaintiffs relating to telemarketing or lead generation.**

**<u>RESPONSE:</u>**

Mad City objects to this request as not putting forth a reasonably particularized category of documents sought.

Next, Mad City objects that this demand is impossible to understand. First, Plaintiffs seek communications with "any third party that dialed the calls to Plaintiffs," but do not specify with whom the third party was communicating. Plaintiffs then fail to define "lead generation," leaving Mad City to guess. Third, Plaintiffs define "telemarketing" so expansively as to include any telecommunication, regardless of whether it was inbound or outbound, the exceptions to the TCPA definition, and regardless of purpose. This, combined with the broad definition of "communication" leave Mad City without direction as to what type of communication Plaintiffs seek.

And given the definition of "communication," which is so personally defined, it is unclear what Plaintiffs mean when they refer to "internal communication." Mad City is unsure how the definition of communication, as drafted by Plaintiffs, could be any more internal than it currently is.

Next, this request is overbroad. Indeed, it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs and the litigation, as long as it relates to such third party.

Also, this demand is overbroad and burdensome because it seeks *all* internal communications at your company regarding the company that contacted the Plaintiff. Thus, the demand requires Mad City to identify every communication – from any medium and without any limit as to time or subject— in Mad City's possession for a four-year timeframe. Mad City would have to conduct a search of every scrap of paper and data element in the possession of any of its employees that might conceivably pertain to the subject matter of the request. This search alone would consume hundreds of hours because Mad City would need to search every single document and further filter the results for those that pertain to the company that contacted the Plaintiff.

Although this request is limited to potential third parties that dialed the calls to Plaintiffs, the types of communications sought are not cabined to only those that are relevant to Plaintiffs. As such, this is an invasive request that goes far beyond the scope of relevance under Rule 26.

Moreover, not every communication with any company that may have contacted Plaintiff has any potential relevance to this case, and the effort and burden imposed on Mad City to respond is incredibly high. The needs of this case do not justify this search because only a tiny sliver of such communications could have any conceivable relevance.  Thus, the burden on Mad City to then produce an overwhelming number of irrelevant communications, is extremely excessive to those needs.

Lastly, this demand is unduly burdensome as it seeks for Mad City to interview every current and possibly former employee to determine if he or she may have any knowledge of communications relating the Plaintiff. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct same.

In this regard, this Request implicates confidentiality concerns, attorney-client privilege, and/or the work product doctrine. These communications may have been between one party and their counsel, or between the parties. This may include the mental impressions of either party's attorneys.

Mad City also objects to this request on the grounds that it cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

Based on these objections, Mad City declines to respond.

**12.    All communications with any third party that provided you the either of the Plaintiffs' telephone number relating to data purchases, telemarketing or lead generation.**

**RESPONSE:**

Mad City objects that this is not a reasonably particularized category of documents to be produced, especially considering the breadth of the definitions Plaintiffs provided. In fact, this request seeks at least six separate categories. That is, three categories for each Plaintiff: all communications with any third party that provided telephone number relating to data purchases, telemarketing or lead generation.

Mad City also objects to the scope and intelligibility of this request. Pursuant to the definition of "communication," it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible

but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs and the litigation, as long as it relates to such third party.

This request is not made clearer or more reasonable in scope by the inclusion of the language "relating to data purchases, telemarketing, or lead generation." First, Plaintiffs did not define data purchases or lead generation. However, even assuming the plain meaning of these terms, "telemarketing" as defined by Plaintiffs opens the door to all forms of telecommunication without limit. As such, it is unclear specifically what Plaintiffs seek, aside from all communications.

Also, this demand is overbroad and burdensome because it seeks *all* communications at your company regarding the company that provided either of the telephone numbers for Plaintiffs. Thus, the demand requires Mad City to identify every communication – from any medium and without any limit as to time or subject— in Mad City's possession for a four-year timeframe. Mad City would have to conduct a search of every scrap of paper and data element in the possession of any of its employees that might conceivably pertain to the subject matter of the request. This search alone would consume hundreds of hours because Mad City would need to search every single document and further filter the results for those that pertain to the company that contacted the Plaintiff.

Although this request is limited to potential third parties that provided the telephone numbers of the Plaintiffs, the types of communications sought are not cabined to only those that are relevant to Plaintiffs. As such, this is an invasive request that goes far beyond the scope of relevance under Rule 26.

Moreover, not every communication with any company that may have contacted Plaintiff has any potential relevance to this case, and the effort and burden imposed on Mad City to respond

is incredibly high. The needs of this case do not justify this search because only a tiny sliver of such communications could have any conceivable relevance. Thus, the burden on Mad City to then produce an overwhelming number of irrelevant communications, is extremely excessive to those needs.

Lastly, this demand is unduly burdensome as it seeks for Mad City to interview every current and possibly former employee to determine if he or she may have any knowledge of communications relating the Plaintiff. This process alone will take hundreds of hours, but Mad City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct same.

In this regard, this Request implicates confidentiality concerns, attorney-client privilege, and/or the work product doctrine. These communications may have been between one party and their counsel, or between the parties. This may include the mental impressions of either party's attorneys.

Mad City objects to this request on the grounds that it cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

Based on these objections, Mad City declines to produce responsive documents.

**13.    All internal communications at your company regarding any third party that provided you the either of the Plaintiffs' telephone number related to data purchases, telemarketing or lead generation.**

**RESPONSE:**

Mad City objects that this is not a reasonably particularized category of documents to be produced, especially considering the breadth of the definitions Plaintiffs provided. In fact, this request seeks at least six separate categories. That is, three categories for each Plaintiff: all internal communications with any third party that provided telephone number relating to data purchases, telemarketing or lead generation.

Mad City also objects to the scope and intelligibility of this request. Pursuant to the definition of "communication," it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs and the litigation, as long as it relates to such third party.

This request is not made clearer or more reasonable in scope by the inclusion of the language "relating to data purchases, telemarketing, or lead generation." First, Plaintiffs did not define data purchases or lead generation. However, even assuming the plain meaning of these terms, "telemarketing" as defined by Plaintiffs opens the door to all forms of telecommunication without limit. As such, it is unclear specifically what Plaintiffs seek, aside from all communications.

And given the definition of "communication," which is so personally defined, it is unclear what Plaintiffs mean when they refer to "internal communication." Mad City is unsure how the definition of communication, as drafted by Plaintiffs, could be any more internal than it currently is.

Also, this demand is overbroad and burdensome because it seeks *all* communications at your company regarding the company that provided either of the telephone numbers for Plaintiffs. Thus, the demand requires Mad City to identify every communication – from any medium and without any limit as to time or subject— in Mad City's possession for a four-year timeframe. Mad City would have to conduct a search of every scrap of paper and data element in the possession of any of its employees that might conceivably pertain to the subject matter of the request. This search alone would consume hundreds of hours because Mad City would need to search every single document over the last four-plus years constituting internal communication about any such third party, and any personal communications between any such parties within the company related to any such third party.

Although this request is limited to potential third parties that provided the telephone numbers of Plaintiffs, the types of communications sought are not cabined to only those that are relevant to Plaintiffs. As such, this is an invasive request that goes far beyond the scope of relevance under Rule 26.

Moreover, not every communication with any company that may have provided Plaintiffs' phone numbers have any potential relevance to this case, and the effort and burden imposed on Mad City to respond is incredibly high. The needs of this case do not justify this search because only a tiny sliver of such communications could have any conceivable relevance. Thus, the burden on Mad City to then produce an overwhelming number of irrelevant communications, is extremely excessive to those needs.

Lastly, this demand is unduly burdensome as it seeks for Mad City to interview every current and possibly former employee to determine if he or she may have any knowledge of communications relating to the Plaintiffs. This process alone will take hundreds of hours, but Mad

City has no way of knowing how many persons need to be interviewed nor the amount of time, money and resources necessary to conduct same.

In this regard, this Request implicates confidentiality concerns, attorney-client privilege, and/or the work product doctrine. These communications may have been between one party and their counsel, or between the parties. This may include the mental impressions of either party's attorneys.

Lastly, Mad City objects to this request on the grounds that it cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

Based on these objections, Mad City declines to respond.

**14.    Please produce all documents relating to insurance coverage of the acts alleged by either of the Plaintiffs, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.**

**<u>RESPONSE:</u>**

Objection. This demand is not a reasonably particularized category of documents to be produced. Instead, it is several requests, each of which is separately inappropriate and violates the Rules.

The inclusion of language like all, any, and including but not limited are overbroad and burdensome since it requires every document "relating to insurance coverage of the acts alleged by either of the Plaintiffs including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter." All communication may not be relevant to this case and therefore outside the scope of discovery. Such a demand is a complete disregard for the burden placed on Mad City.

Mad City objects as this demand is overbroad and unduly burdensome. Having to find all documents in its possession that even remotely relate to insurance coverage is a timely and impermissible request. It would require a search of every employee, piece of paper, file, email, and such in order to ensure compliance. Certainly, this information will not lead to any evidence that it is more or less likely a violation of the TCPA occurred. And as such, this request is not proportional to the needs of the case.

Next, the demand seeks all documents relating to insurance coverage regardless of whether or not such coverage purports to exclude the acts alleged in this matter by Plaintiffs and regardless of whether or not such insurers have declined coverage in this matter. As such, the Request plainly seeks records outside the scope of discovery in this action and imposes a burden on Mad City far in excess of the needs of this case.

Also, Mad City objects on the grounds of relevance, as the demand seeks documents that may not bear on the claims or defenses in this litigation. The request for "all potentially applicable policies" and "all communications," including those not directly pertaining to the coverage of the acts alleged, extends the discovery to areas not apparently connected to the dispute's subject matter.

Furthermore, Mad City objects to this demand as it may encroach upon confidential and sensitive business information—including details of insurance policies and communications that have proprietary or privacy implications.

On the basis of these objections, Mad City responds that it does not have any responsive documents.

**15.    Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.**

**<u>RESPONSE:</u>**

Objection. This request is not a reasonably particularized single category of documents to be produced as the Rules require. Instead, this is two requests, each of which is separately inappropriate and violated the Rules.

Mad City objects to this request because it presumes without proper basis that Mad City had any such agreements. Moreover, the records are confidential and proprietary business records. To the extent the request seeks for "all communications with those third parties," the request is overly broad. This request is further vague and overbroad as to scope because it does not specify the subject matter regarding those communications. As phrased, the request seeks every single communication with a third party regarding any subject matter at any time by any means.

The burden of the search Plaintiffs demand is excessive given the limited needs of this case. This request imposes an extreme burden to the extent it purports to require Mad City to search across all its databases and its records for any reference to a third party that it has indemnification agreements with. Such a search might take thousands of hours, yet only those communications

with Plaintiffs are conceivably relevant to the case. So, the proportionality requirements of Rule 26 are exceeded.

Without waiving these objections, Mad City responds that it will produce responsive documents as to Mr. Donahue and that it has no such documents as to Ms. Saladino.

**16.    Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:**

      **a)  compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;**

      **b)  obtaining or verifying prior express consent;**

      **c)  complying with E-SIGN Act, 15 U.S.C. §§ 7001 et seq.**

**<u>RESPONSE:</u>**

Objection. This request is not a reasonably particularized single category of documents to be produced as the Rules require. Instead, it is a sprawling series of requests, each of which is separately inappropriate and violates the Rules.

First, the request seeks "all documents related to your policies" which is not a reasonably particularized category of documents to be produced, but a shapeless and overly broad demand seemingly seeking every communication, note, or record ever made by any employee regarding any responsive policy. Attempting to search for and produce all such records would take many

thousands of hours as there are simply no contours to the request and no limit to the number of potential custodians.

Next, the demand seeks "all documents necessary to construct a timeline[.]" Here, the demand plainly does not set forth a reasonably particularized category of documents to be produced. There is no way for Mad City to know what Plaintiffs consider "necessary" to create a timeline. And the rules do not require Mad City to create any records in responding to a document demand. Indeed, Plaintiffs seem to plainly be misusing the Request for Production device—which is not limited in terms of the number of demands that may be served—as a substitute for an interrogatory— which are limited in number. But this is plainly an abuse of the discovery process and an end run around the applicable rules.

Even if the demand were properly limited to seek just the policies and procedures—as opposed to the shapeless set of documents "related" to them—the demand would still be overly broad and impose an undue burden. Not every policy related to the TCPA is at issue in this case. To the extent the demand seeks information beyond the contours of the pleaded claims, it seeks information outside of the scope of discovery in excess of the proportionality mandates of Rule 26.

Further, policies are not relevant at all because a TCPA violation is a strict liability offense. Either Mad City violated the law, or it did not. So, its policies have nothing to do with the case. Not only is the scope of records sought remarkably inappropriate, so too, is the "category" of records requested. The category is "all documents" which means that Mad City would have to conduct a search of every scrap of paper and data element in the possession of any of its thousands of employees that might conceivably pertain to the subject matter of the request. Mad City

conservatively estimates that the search required to locate such records would take hundreds of hours. Yet, there is no need for any of these materials in connection with this case.

Finally, the demand—as phrased—is broad enough to include any communication of advice given by any Mad City legal staff member to any employee regarding these topics (and may be broad enough to include outside counsel's records). As knowingly seeking privileged materials is unethical and inappropriate, Mad City assumes this vague demand seeks only business records and will reply accordingly.

Without waiving these objections, Mad City will provide responsive documents.

**17.    Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendor, including those made to the either of the Plaintiffs:**

      **a)  the date and time;**

      **b)  the caller ID;**

      **c)  any recorded message used;**

      **d)  the result;**

      **e)  identifying information for the recipient; and**

      **f)  any other information stored by the call detail records.**

**<u>RESPONSE:</u>**

Objection. This request is not a reasonably particularized single category of documents to be produced but rather seeks all documents containing eight separate categories of information for each outbound telemarketing call or prerecorded voice call made by or on behalf of Mad City.

First, the demand seeks "all documents containing" any of the following of innumerable categories of information. Obviously, this is a demand for a shapeless mass of records "containing"

any one of over a half dozen data points. Attempting to fashion a search for such a broad ranging set of information—regarding each of potentially millions of occurrences— would consume a truly monumental amount of time. As phrased, Mad City would have to fashion a specific search regarding each of numerous data sets related to every single call that it made—directly or indirectly—over a multiyear span. It is impossible to know for sure how long such a search would take, but without question it would consume hundreds of thousands of hours.

This demand is also vague as to "any other information stored by the call detail records." This requires Mad City to speculate as to what level of detail is deemed necessary to answer. Mad City will not guess, at its peril, what documents the Plaintiff will deem sufficient for his purposes.

Next, this demand is wildly over broad. Mad City does not have any set or category of documents at its disposal that identifies all documents for each call made by or on behalf of Mad City. To fashion a search for this demand, Mad City would need to search and produce every single call ever made for a four-year timeframe. Then, Mad City would need to gather the following for each call: a) the date and time; b) the caller ID; c) any recorded message used; d) the result; e) identifying information for the recipient; and f) any other information stored by the call detail records. Also, Plaintiff's "Document" definition further extends the breadth of this inappropriate request and the congruent burden associated with same. All in all this would require an extreme amount of time, money, and resources in order to achieve compliance for records that have nothing to do with Plaintiff's claims.

But also, there is no conceivable relevance to much of the demanded information. As the demand is not limited to calls made to class members, none of the data sought is relevant to the case with respect to information on calls to non-class members. So, Plaintiff demands a huge amount of sensitive data for people who are not—and never will be—parties to this suit. In so

doing, he needlessly risks the privacy of thousands of individuals while, ironically, claiming a violation of his own privacy.

Even as to data sets related to potential class members, the demand is overly broad. Records related to "identifying information for the intended recipient" are unnecessary—particularly at this stage of the case given that the identity of class members need not be determined pre-certification. Similarly, the demand for "other information stored by the call detail records" is plainly just an intrusive fishing expedition untethered to any need and imposing a great and unsustainable burden on Mad City.

Remarkably, the request also does not specify what type of calls it seeks data on—other than "outbound telemarking call(s)." The request, as phrased, seeks data regarding any outbound telemarketing call ever made from July 8, 2020 to the present. For this reason, the request is also excessively burdensome.

Additionally, this request seeks call data from vendors that did not even contact Plaintiffs nor bear any relationship with Plaintiffs. Such call data with unrelated vendors is completely irrelevant to this case. If Mad City were to produce such records, such production would threaten the privacy of hundreds or thousands of Mad City customers and inquirers who may have ever received a call from Mad City or its vendors.

Moreover, this demand seeks to impose an undue burden. As written, this demand seeks Mad City to search for every outbound call – directly and indirectly – for a four-year timeframe. In other words, Mad City would need to search its own internal records for each outbound call ever made. Then, Mad City would need to search every single document in its possession that relates to the outbound call search. A secondary search to identify the subset of data elements would need to be performed. And given Plaintiffs' catch all phrase "any other information stored

by the call detail records," there's no guarantee that the results of said search would be responsive to Plaintiffs' demand.

Still then, Mad City would need to identify any vendors or third parties that may have initiated calls on behalf of Mad City for a four-year timeframe. Once Mad City identifies the vendors, then Mad City must obtain each call ever placed by said vendor. Then, Mad City would need to search every single document in the vendor's possession that relates to the outbound call search. An additional search to identify the subset of data elements would need to be performed. And even after performing these burdensome and unnecessary searches, there's no guarantee that the results of said search would be responsive to Plaintiff's demand.

Lastly, Mad City objects to this demand as to the extent that these documents are not in its possession since this request asks for recorded messages "sent by you or your vendors." Those recorded messages sent by the vendors are likely not going to be in Mad City possession. In the end, it is unclear what documents Plaintiff is even after, given the scope and phrasing of the demand.

While Mad City is willing to discuss what, precisely, Plaintiff is seeking and meet and confer in good faith about a potential production of information that is relevant to this action, it will not produce any records in response to this inappropriate demand.

**18.    All communications with any third party concerning this litigation other than your attorney.**

**RESPONSE:**

Objection. This request is vague and ambiguous as it might be read to include a demand for privileged records—such as Mad City's outside counsel's entire litigation file for this case, or the records of communication between Mad City's legal department and outside counsel, or the

records of communication between Mad City's legal staff and its executives. This information is absolutely not admissible and is outside the scope of discovery. As knowingly seeking privileged records in unethical and inappropriate conduct, however, Mad City will presume Plaintiffs seeks solely non-privileged communications.

Mad City objects cannot be vicariously liable for calls made by any third party without any limit. For vicarious liability to attach, Mad City must have had an agency relationship with this third party. However, the definition provided by Plaintiffs of "third party" specifically refers to persons and entities "not owned or controlled by you." Since control is a defining factor of an agency relationship, by definition, Mad City cannot be held liable for calls made by such third parties.

This request is also unintelligible. It is unclear what it means for a communication to "concern[] this litigation[.]" Further, the definition of "you" is so expansive that it is not clear who the demand refers to. It "includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives." Just the words "includes, without limitation" render this definition unascertainable. As such Mad City is unclear as to the subject of this request.

The definition of "communication" is also so wide-ranging that it provides no guidelines as to what to produce. Indeed, it seeks "all forms of correspondence, including but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages." The language "including but not limited to" renders the definition of "communication" unintelligible but far-reaching. It asks for all communication, regardless of whether it relates whatsoever to Plaintiffs, as long as it relates to such third party and concerns this litigation.

Moreover, Plaintiffs do not specify with whom such third party must be communicating. This could stretch so far as to include any employee and their relative regarding this litigation and ask for that employee's personal communications. This is unconscionable, an invasion of privacy, and outside the scope of Rule 26.

As written, this Request also implicates confidentiality, attorney-client privilege, and/or work product doctrine, even though Plaintiffs attempt to sidestep this issue. Plaintiffs specify that this communication must not involve Mad City's attorney, but it can involve an expert witness, for example, which may fall under this umbrella.

Based on these objections, Mad City declines to produce responsive documents.

Dated: April 2, 2025

TROUTMAN AMIN, LLP

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera (FBN 1034545)
1825 NW Corporate Blvd, Ste. 100
Boca Raton, Florida 33431
400 Spectrum Center Dr., Ste. 1550
Irvine, California 92618
Telephone: 561-834-0883
jenniffer@troutmanamin.com
*Counsel for Defendant Mad City Home Improvement, LLC, doing business as Mad City Windows & Baths*

## CERTIFICATION

I hereby certify that on April 2, 2025, a copy of the foregoing was served via electronic mail to Plaintiffs' counsel of record.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera