## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA (DMN)

| | |
|---|---|
| **Alisha Saladino** and **David Donahue**, individually and on behalf of all others similarly situated, | Case No. 0:24-cv-01419-NEB-EMB |
| Plaintiff, | |
| v. | |
| **Mad City Home Improvement, LLC** *doing business as* Mad City Windows & Baths, | |
| Defendant. | |

### DEFENDANT MAD CITY HOME IMPROVEMENT, LLC'S
### OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Defendant Mad City Home Improvement, LLC *doing business as* Mad City Windows & Baths, ("Mad City"), by and through its undersigned counsel, respectfully moves this Court for an order denying Alisha Saladino's and David Donahue's ("Plaintiffs") Motion to Compel Discovery ("Motion" or "Mot.") for the reasons set forth in the memorandum below.

## **TABLE OF CONTENTS**

I.  INTRODUCTION.................................................................................... 9

II.  BACKGROUND FACTS ........................................................................ 10

 A.  Plaintiffs Consented to Receiving Calls and/or Texts from Mad City........ 10

 B.  Plaintiffs Serve Overly Broad Demands on Mad City Seeking a Sweeping Production of Consumer Complaints, and All Outbound Call and Text Records ................................................................................................ 10

III.  LEGAL STANDARD ............................................................................ 12

IV.  THE MOTION TO COMPEL MUST BE DENIED AS PLAINTIFFS' DISCOVERY DEMANDS, AS SERVED, ARE OVERLY BROAD, SEEK IRRELEVANT INFORMATION, IMPOSE AN UNDUE BURDEN AND OTHERWISE NEEDLESSLY INVADE THE PRIVACY OF THIRD PARTIES WHO ARE NOT, AND NEVER WILL BE, CLASS MEMBERS ................................................................................................ 13

 A.  Plaintiffs' Demands for Consumer Complaint Information Exceeds the Scope of Permissible Discovery ............................................ 13

  1.  Plaintiffs' Consumer Complaint Information Discovery Demands Seek Irrelevant Information ............................................... 13

  2.  Plaintiffs' Consumer Complaint Information Discovery Demands Are Overbroad and Overburdensome .............................. 16

  3.  Plaintiffs' Consumer Complaint Information Discovery Demands Are Subject to Confidentiality ......................................... 18

 B.  Mad City Should Not Be Compelled to Produce All Call and Text Records Without Limitation ......................................................... 20

  1.  Plaintiffs' Request for All Call and Text Records Is Overbroad and Encapsulates Data Not Within Mad City's Possession ............. 21

  2.  Plaintiffs' Request for All Call and Text Records Is Not Necessary and Implicates Severe Privacy Concerns......................... 21

  3.  Plaintiffs' Request for All Call and Text Records Imposes an Undue and Unjustified Burden On Mad City .................................. 24

  4.  Plaintiffs' Motion to Compel a Response to RFP 17 Lacks Any Supporting Basis .............................................................. 25

     5.     Mad City Proposes to Provide a Representative Call-Record Sample of its Data ............................................................................ 28

V.    PLAINTIFFS' REQUEST FOR AN AWARD OF FEES AND SANCTIONS AGAINST MAD CITY IS MERITLESS AND MUST BE DENIED .................. 29

VI.   MAD CITY REQUESTS THE COURT AWARD FEES AND SANCTIONS AGAINST PLAINTIFFS. ...................................................................... 31

VII.  CONCLUSION. ...................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Immanuel Med. Ctr.*,
2007 WL 2914547 (D. Neb. Oct. 3, 2007) .................................................................. 30

*Blaylock v. Wells Fargo Bank, N.A.*,
2012 WL 2529197 (D. Minn. June 29, 2012) .............................................................. 31

*Briseno v. ConAgra Foods, Inc.*,
674 F. App'x 654 (9th Cir. 2017) ............................................................................ 26-27

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ................................................................................. 26-27

*Cahill v. GC Servs. Ltd. P'ship*,
2018 U.S. Dist. LEXIS 63918 (S.D. Cal. Apr. 16, 2018) ............................................ 25

*Chrysler Corp. v. Carey*,
186 F.3d 1016 (8th Cir. 1999) ..................................................................................... 31

*Cmty. Ass'n Underwriters of Am. v. Torrington Water Co.*,
2023 WL 2187166 (D. Conn. Feb. 23, 2023) .............................................................. 27

*Cold Spring Granite Co. v. Matthews Int'l Corp.*,
2012 WL 13026738 (D. Minn. Aug. 20, 2012) ................................................. 26, 30-31

*Credit Lyonnais v. SGC Int'l, Inc.*,
160 F.3d 428 (8th Cir.1998) ........................................................................................ 12

*Desai v. US Bank*,
2007 WL 2410537 (D. Neb. Aug. 21, 2007) ............................................................... 32

*Diaz-Lebel v. TD Bank USA, N.A.*,
2018 WL 4145912 (D. Minn. Aug. 30, 2018) ............................................................. 14

*Donaldson Co., Inc. v. Fleetguard, Inc.*,
2005 WL 8163190 (D. Minn. Aug. 19, 2005) ............................................................. 26

*Donnelly v. NCO Fin. Sys., Inc.*,
2010 WL 308975 (N.D. Ill. Jan. 13, 2010) ................................................................. 15

*Donnelly v. NCO Fin. Sys., Inc.*,
  263 F.R.D. 500 (N.D. Ill. 2009) .................................................................. 15

*Dueker v. CSRT Expedited Inc.*,
  2020 WL 7222095 (C.D. Cal. Dec. 7, 2020) ................................................ 28

*Dyess v. Mullins*,
  2017 WL 3838642 (S.D. Ohio Sept. 1, 2017) .............................................. 14

*Fams. for Asbestos Compliance, Testing & Safety v. City of St. Louis, Mo.*,
  2008 WL 4279569 (E.D. Mo. Sept. 15, 2008) ........................................26-27

*Fossil Grp., Inc. v. Angel Seller LLC*,
  2022 WL 1216256 (E.D.N.Y. Feb. 28, 2022) ..........................................13-14

*Fossil Grp., Inc. v. Angel Seller LLC*,
  2023 WL 1359761 (E.D.N.Y. Jan. 31, 2023) ...........................................13-14

*Hancock v. Credit Pros Int'l Corp.*,
  2021 U.S. Dist. LEXIS 131055 (D.N.J. July 13, 2021)................................ 25

*Harris v. Kroger Ltd. P'ship I*,
  2019 WL 13301637 (E.D. Ark. Mar. 25, 2019) ........................................... 30

*Hofer v. Mack Trucks, Inc.*,
  981 F.2d 377 (8th Cir. 1992) ....................................................................... 12

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) .......................................................26-27

*Itasca Images, LLC v. Shutterstock, Inc.*,
  2021 WL 6849104 (D. Minn. Nov. 22, 2021) ..........................................30-31

*Jackson v. Minnesota Dep't of Hum. Servs.*,
  2022 WL 1261690 (D. Minn. Apr. 28, 2022)..........................................20, 25

*Kampfe v. Petsmart, Inc.*,
  304 F.R.D. 554 (N.D. Iowa 2015) ............................................................... 13

*Kane v. Nat'l Action Fin. Servs., Inc.*,
  2012 U.S. Dist. LEXIS 66219 (E.D. Mich. May 11, 2012) .......................... 25

*Kirby v. United Am. Ins. Co.*,
  2009 WL 10675166 (E.D. Ark. Feb. 13, 2009) ......................................................30-31

*Kyle v. Fed. Trade Comm'n*,
  2021 WL 1407960 (W.D. Mo. Apr. 14, 2021) ............................................................. 23

*Markson v. CRST Int'l, Inc.*,
  2020 WL 7089957 (C.D. Cal. Oct. 27, 2020) .............................................................. 29

*Mbazomo v. ETourandTravel, Inc.*,
  2017 WL 2346981 (E.D. Cal. May 30, 2017) .............................................................. 25

*Mead Corp. v. Riverwood Nat. Res. Corp.*,
  145 F.R.D. 512 (D. Minn. 1992) ............................................................................18-19

*Mey v. Enter. Fin. Grp., Inc.*,
  2016 WL 9110357 (M.D. Fla. July 27, 2016) ...........................................................15-16

*Mgmt. Registry, Inc. v. A.W. Companies, Inc.*,
  2020 WL 4915832 (D. Minn. Aug. 21, 2020) ..........................................................30-31

*Murphy v. Aurora Loan Servs., LLC*,
  518 F. App'x 511 (8th Cir. 2013) ...........................................................................32-33

*Murphy v. Aurora Loan Servs., LLC*,
  859 F. Supp. 2d 1016 (D. Minn. 2012) ...................................................................32-33

*Nanninga v. Best Buy Co.*,
  2005 WL 8163317 (D. Minn. Aug. 10, 2005) ..........................................................12-13

*Nerland v. Caribou Coffee Co.*,
  564 F. Supp. 2d 1010 (D. Minn. 2007) ....................................................................... 22

*Niemeyer v. Store Kraft Mfg. Co.*,
  2012 WL 2576400 (D. Neb. July 3, 2012) .................................................................. 32

*Nw. Airlines v. Loc. 2000, Int'l Bhd. of Teamsters*,
  2000 WL 33419439 (D. Minn. Jan. 11, 2000) ............................................................ 25

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .................................................................................................. 13

*O'Shea v. Am. Solar Sol., Inc.*,
   2016 WL 701215 (S.D. Cal. Feb. 18, 2016) ................................................................. 15

*Ossola v. Am. Express Co.*,
   2015 U.S. Dist. LEXIS 117531 (N.D. Ill. 2015) ......................................................... 25

*Payne v. Geer*,
   2025 WL 2061651 (D. Neb. July 23, 2025) ................................................................. 21

*Roadway Exp., Inc. v. Piper*,
   447 U.S. 752 (1980) ................................................................................................... 30-31

*Rojas v. Marko Zaninovich, Inc.*,
   2011 WL 4375297 (E.D. Cal. Sept. 19, 2011) ........................................................ 27-28

*Sherwood v. BNSF Ry. Co.*,
   2018 WL 3340571 (D. Idaho July 6, 2018) ............................................................. 26-27

*Theisen v. Extendicare Health Servs., Inc.*,
   2005 WL 8164906 (D. Minn. Aug. 3, 2005) ........................................................... 31-32

*U.S. ex rel. Dyer v. Raytheon Co.*,
   2013 WL 5348571 (D. Mass. Sept. 23, 2013) ............................................................ 28

*United States v. Dish Network, LLC*,
   2011 WL 98951 (C.D. Ill. Jan. 10, 2011) .................................................................... 19

*Vallejo v. Amgen, Inc.*,
   903 F.3d 733 (8th Cir. 2018) ................................................................................. 11, 20

*Wallence v. Treadwell*,
   165 F.R.D. 43 (E.D. Pa. 1995) .................................................................................... 14

*Ward v. Copenhaver*,
   2025 WL 2964335 (E.D. Ark. Oct. 20, 2025) ............................................................ 30

*Wegener v. Johnson*,
   527 F.3d 687 (8th Cir. 2008) ...................................................................................... 31

**Statutes**

Fed. R. Civ. P. 11(b)(1) ................................................................................................... 31

Fed. R. Civ. P. 26 ................................................................................................................ 13

Fed. R. Civ. P. 26(b) ........................................................................................................... 11

Fed. R. Civ. P. 26(b)(1) ...................................................................................................... 12

Fed. R. Civ. P. 26(b)(2)(C) ................................................................................................. 12

Fed. R. Civ. P. 26(b)(2)(C)(iii) ........................................................................................... 12

Fed. R. Civ. P. 26(b)(2)(C)(i-ii) .......................................................................................... 12

## I.    <u>INTRODUCTION</u>

Plaintiffs and their counsel compound their abuse of this frivolous lawsuit by distorting the discovery process—pressing meritless motions to compel based on improper, overly broad, and burdensome demands that bear no relation to the issues in this case. This is not discovery; it is an attempt to weaponize the discovery process to pressure Mad City into an inflated settlement. The Court should not lend its authority to such tactics.

Plaintiffs' discovery demands are nothing short of a shotgun blast. The circumstances of the two Plaintiffs could not be more different: Mad City obtained Ms. Saladino's telephone number directly from her, after visiting her home, where she rescheduled her appointment with Mad City—twice.  By contrast, Mr. Donahue voluntarily provided his prior express consent to be contacted by Mad City to Keywords Connect, and was then transferred to Mad City. Despite these divergent factual backgrounds, Plaintiffs now insist on sweeping discovery untethered to either Plaintiffs' claims. Instead of focusing on the relevant consumer complaints or calls at issue, Plaintiffs demand virtually everything under the sun—every consumer complaint, and every call data record related to every call sent.

Plaintiffs' requests are overbroad, disregard confidentiality, seek an unreasonable invasion of privacy, along with numerous other defects. These defects would impose an undue burden on Mad City, requiring it to sift through millions of files and expend hundreds, to potentially thousands, of hours only to produce documents that are overwhelmingly irrelevant and wholly disproportionate to the needs of this case.

At bottom, the Court must deny Plaintiffs' Motion to Compel responses to

Plaintiffs' Request Nos. 5 and 17 on the basis of Defendant's meritorious objections.

If Mad City is required to produce call records, it should be limited to a representative sample of 500 records. This would allow Plaintiffs and the Court to evaluate the nature of the records, while conserving significant time and resources and protecting the privacy rights of hundreds of thousands of consumers.

Finally, given the extraordinary carelessness demonstrated by counsel in crafting the improper and abusive discovery that has been served—and in pursuing a meritless motion to compel responses to those demands—Mad City requests sanctions against Plaintiffs and their counsel of record, jointly and severally.

## II.    <u>BACKGROUND FACTS</u>

Mad City Windows & Baths is a trusted home improvement company dedicated to enhancing customers' homes with quality products and services. *See* Declaration of Abbas Mohammed, Exhibit 2 ("Ex. 2"), at ¶3.

### A.    **Plaintiffs Consented to Receiving Calls and/or Texts from Mad City.**

Mad City obtained Ms. Saladino's telephone number, (651) 279-1186, from Ms. Saladino herself on September 8, 2023, when Mad City visited her residence. *See* Declaration of Elias Ladas ("Ex. 3"), ¶10. During this visit, Ms. Saladino scheduled an appointment for window services, which she rescheduled twice. *Id.* at ¶11. Mad City directly contacted Ms. Saladino regarding these appointments and the window services requested. *Id*.

As to Mr. Donahue, on April 8, 2024, Mr. Donahue was transferred to Mad City by Keywords Connect, after Mr. Donahue had submitted his prior express consent to be

contacted on his phone number ending in 0798. Ex. 3, at ¶9.

### B. Plaintiffs Serve Overly Broad Demands on Mad City Seeking a Sweeping Production of Consumer Complaints, and All Outbound Call and Text Records.

Plaintiffs' discovery demands are sweeping in scope and wholly disproportionate to the claims at issue. Requests for Production Nos. 5 and 17 demand years of consumer complaints and call and text records—much of which are privileged, irrelevant, or outside Mad City's possession or control. As written, these demands would consume hundreds, if not thousands, of hours of review and invade the privacy of employees, vendors, and consumers who are not parties to this litigation. *See* Ex. 2, at ¶¶ 5-12.

The burden these requests impose far outweighs any conceivable benefit. Complying would require Mad City to search through over 3,000 employee email accounts, duplicate and review over 20 million records through a resource-intensive process Mad City does not have the resources to allocate to, and violate the privacy rights of hundreds of thousands, all to produce information untethered to Plaintiffs' individual allegations. *See* Declaration of Abbas Mohammed ("Ex. 2"), at ¶¶ 5-12; *see also* Declaration of Edward Blunt ("Ex. 4"), at ¶¶ 5-10. The discovery rules are designed to narrow issues and keep litigation proportional, not to open the floodgates to every scrap of data and correspondence a company has ever touched. *See Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) ("[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case."); Fed. R. Civ. P. 26(b). Plaintiffs' demands far exceed those limits. Mad City's objections were not boilerplate—they identified in detail how these requests are vague, overbroad, privileged, and unduly burdensome, providing the Court

with a clear record of why the discovery sought is improper. Mad City's Discovery Responses, ECF No. 95, Exhibit 1 ("Ex. 1"), passim.

## III.   <u>LEGAL STANDARD</u>

The scope of discovery available to parties in a civil action is outlined in Federal Rule of Civil Procedure 26. As a general matter, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Discovery is not permitted when it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i-ii).

Discovery is further prohibited when its burden or expense outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii).

When any of these circumstances arise, the court must limit discovery "[o]n motion or on its own." Fed. R. Civ. P. 26(b)(2)(C). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.,* 160 F.3d 428, 431 (8th Cir.1998) (citation omitted).  The Eighth Circuit has stated that federal courts should not "allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Accordingly, the trial court must exercise its discretion to balance the needs and rights of both Plaintiff and Defendants in resolving these discovery disputes.

*See Nanninga v. Best Buy Co.*, No. CV 04-882 (MJD/JSM), 2005 WL 8163317, at *6 (D. Minn. Aug. 10, 2005) ("The Court must balance the need of the information by the requesting party against the harm to be borne by the producing party.").

**IV.    THE MOTION TO COMPEL MUST BE DENIED AS PLAINTIFFS' DISCOVERY DEMANDS, AS SERVED, ARE OVERLY BROAD, SEEK IRRELEVANT INFORMATION, IMPOSE AN UNDUE BURDEN AND OTHERWISE NEEDLESSLY INVADE THE PRIVACY OF THIRD PARTIES WHO ARE NOT, AND NEVER WILL BE, CLASS MEMBERS**

   **A.    Plaintiffs' Demands for Consumer Complaint Information Exceeds the Scope of Permissible Discovery.**

      1.    Plaintiffs' Consumer Complaint Information Discovery Demands Seek Irrelevant Information

Plaintiffs argue that the complaints being requested are relevant to proving treble damages for willful violations under the TCPA. *See* Mot., ECF No. 94, at 6. However, such information is irrelevant, amongst other objections. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978). "Nonetheless, there must be at least a threshold showing of relevance before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Kampfe v. Petsmart, Inc.*, 304 F.R.D. 554, 557 (N.D. Iowa 2015) (internal citations omitted).

Courts have held that the discovery of other complaints against a party is typically

"not relevant and production of these materials would not be proportional to the needs of the case." *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20CV2441WFKTAM, 2022 WL 1216256, at *6 (E.D.N.Y. Feb. 28, 2022), *aff'd*, No. 20CV02441HGTAM, 2023 WL 1359761 (E.D.N.Y. Jan. 31, 2023); *See also Dyess v. Mullins*, No. 1:16-CV-910, 2017 WL 3838642, at *5 (S.D. Ohio Sept. 1, 2017) ("[i]t is unclear how unrelated complaints over the years from other[s]…would have any relevance to [the p]laintiff's specific claims in this case"); *Wallence v. Treadwell*, 165 F.R.D. 43, 47 (E.D. Pa. 1995) ("[p]laintiff has failed to show that she is entitled to…documents underlying other complaints [filed against the defendant]").

Plaintiffs' request was served as follows:

**Request for Production No. 5**: Please produce all complaints concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

*See* Ex. 1, at 44.

This Court has denied a similar discovery request. *See Diaz-Lebel v. TD Bank USA, N.A.*, No. CV 17-5110 (MJD/BRT), 2018 WL 4145912, at *4 (D. Minn. Aug. 30, 2018) (denying plaintiff's request that sought "ALL DOCUMENTS … (including but not limited to investigation files, logs, or databases) CONCERNING OR RELATING TO requests, inquiries, demands, claims, grievances, concerns, protests, or complaints made against YOU, CONCERNING OR RELATING TO a DIALED CALL. This document request includes all forms of communications—either in writing or orally, formal or informal, to YOU.").

Similarly here, Plaintiffs' demand for "all complaints" concerning outbound calls is irrelevant to the claims at issue. Ex. 1, at 45. The TCPA imposes strict liability, and the question in this case is whether Mad City contacted Plaintiffs in violation of the statute—not whether third parties, non-class members, or unrelated individuals made unverified complaints. Ex. 1, at 45-46. While Plaintiffs argue the information is important to prove Mad City's willful and knowing intent (*See* Mot., ECF No. 94, at 6) consumer complaints are anecdotal opinions, and do not support a showing of a deliberate state of mind.

The out of circuit discovery requests cited by Plaintiffs in support of their relevance argument were either more narrowly tailored than the overly broad scope of RFP No. 5 here or the non-moving party failed to sufficiently object to the request[1]. *See O'Shea v. Am. Solar Sol., Inc.*, No. 14CV894-L (RBB), 2016 WL 701215, at *9 (S.D. Cal. Feb. 18, 2016) (The defendant failed to object to the discovery request seeking all consumer complaints); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500 (N.D. Ill. 2009), *objections overruled,* No. 09 C 2264, 2010 WL 308975 (N.D. Ill. Jan. 13, 2010) (The court's findings on relevancy were limited to "information relating to other lawsuits or legal proceedings" related specifically to the "TCPA," not *all consumer complaints* regardless of scope).

Plaintiffs completely misstate *Mey* in their Motion. *See* Mot., ECF No. 94, at 7. Plaintiffs imply that the defendant there was required to identify "any consumer complaints." *Id*. Not so. There, the defendant stated it was "willing" to, it was not *required* to identify. *Mey v. Enter. Fin. Grp., Inc.*, No. 215CV463FTM99MRM, 2016 WL

---

[1] It is unclear which case Plaintiffs are referring to regarding "*Meredith*, 2016 U.S. Dist. LEXIS 156214, at *19."

9110357, at *7-8 (M.D. Fla. July 27, 2016). The motion to compel brought by the plaintiff was denied because the court there found the request to be "overbroad because [they are] not limited to violations of the TCPA" and "request information concerning telemarketers other than [the parties in question]". *Id*.

2.  Plaintiffs' Consumer Complaint Information Discovery Demands Are Overbroad and Overburdensome.

Request for Production No. 5 is overbroad on its face because it fails to identify a single, reasonably particularized category of documents as required under Rule 34. Ex. 1, at 44. Instead, it sweeps in nearly limitless materials by demanding "all complaints" concerning outbound calls made not only by Mad City but also by an undefined and ever-expanding universe of "vendors" and "you," terms that Plaintiffs have drafted so broadly as to include affiliates, subsidiaries, employees, agents, and even "co-defendants," despite the fact that Mad City is currently the only defendant in this case. Ex. 1, at 44-46. The request is further inflated by vague qualifiers such as "including, but not limited to," and by its attempt to encompass not only litigation but also undefined "pre-litigation" complaints, which could mean anything from informal grievances to online reviews. Ex. 1, at 45-46. To comply, Mad City would be forced to search through mountains of irrelevant material resulting in an undue burden wholly disproportionate to the needs of this case. *See* Ex. 2, at ¶¶ 5-7; *see also* Ex. 4, at ¶¶ 5-10.

Specifically, Mad City cannot comply with Plaintiffs' request, because no such centralized repository exists (*See* Ex. 2, at ¶ 5), and fulfilling the demand would require an unduly burdensome, impractical search across the email accounts of more than three

thousand employees company-wide. *See* Ex. 2, at ¶ 5. Virtually every department—and nearly every employee—has at some point interacted with a consumer issue in the ordinary course of business. *Id*. Identifying every instance in which the word "complaint" appears through their emails would necessitate a manual review of an immense volume of communications with no feasible way to isolate relevant materials. *Id*. Even if such a review were to be feasible, the results would be mostly irrelevant as the large majority of complaints Mad City receives are related to service issues as opposed to telemarketing. *Id*. Moreover, consumer complaints are publicly available through Google, Better Business Bureau, and Guild Quality. Requiring Mad City to conduct a company-wide, file-by-file reconstruction of every consumer interaction is neither proportionate nor reasonably calculated to lead to relevant information.

Finally, if the burden of extracting and reviewing all employee emails were not sufficient to demonstrate why Plaintiffs' request is overbroad and unduly burdensome, Mad City could also have consumer complaints listed in the notes of its CRM system, Lead Perfection. *See* Ex. 4, at ¶ 5. Lead Perfection does not support free-form text searching. *Id*., at ¶ 7. Instead, such information appears within hundreds of thousands, if not millions, of manually entered notes associated with individual records. *Id*.

As a result, identifying responsive consumer complaints would require Mad City to locate and extract hundreds of thousands, if not millions, of records from Lead Perfection. *See* Ex. 4, at ¶ 7. Mad City would first be tasked with determining the scope and volume of notes stored in Lead Perfection, and then develop a process to export and format those notes, a task for which no existing system currently exists and which would

require significant engineering effort. *See* Ex. 4, at ¶ 7. Once exported, the notes would then need to be manually reviewed to identify any consumer complaints and to redact sensitive information. *Id*. Given the scale of these records and the manual review required, completing this process may take several weeks and hundreds of hours of engineering labor. *Id*. Further, Mad City would need to extract and combine data from multiple sources within Lead Perfection. *Id*., at ¶ 9. This additional step would add dozens of hours to the already burdensome request at hand and can impact Mad City's servers and disrupt operations. *Id*., at ¶¶ 8-9.

An extraction, review, and production of "all consumer complaints" across Mad City's emails and Lead Perfection notes may take hundreds of combined hours for mostly irrelevant information.

3.    Plaintiffs' Consumer Complaint Information Discovery Demands Are Subject to Confidentiality.

"Discovery rules, and work-product immunity, have practical footing." *Mead Corp. v. Riverwood Nat. Res. Corp.*, 145 F.R.D. 512, 520 (D. Minn. 1992). "Ordinary work-product is discoverable upon a showing of substantial need and an inability to acquire the substantial equivalent of the information sought by other means without undue hardship. Opinion work-product is material which contains or reveals an attorney's mental impressions, legal strategy, intended lines of proof, evaluation of strengths and weaknesses of the case, inferences drawn from interviews of witnesses, or similar matters." *Id*.

*United States v. Dish Network, LLC*, is instructive. There, the plaintiff requested

"[a]ll documents relating to cooperation, collaboration, or any other interactions with any consumer protection or consumer complaint entity (such as, but not limited to, the Better Business Bureau…), to identify, investigate, pursue, respond to, or address violations or suspected or alleged violations of telemarketing laws by you, your authorized dealers (including Order/Entry entities), or any telemarketer or other entity..." *United States v. Dish Network, LLC*, No. 09-3073, 2011 WL 98951, at *8 (C.D. Ill. Jan. 10, 2011). The defendant objected to this request, arguing that the information contains "privilege[d] materials. *Id*. The court denied plaintiff's motion to compel in part, limiting the production to only non-privileged documents. *Id*.

Similarly here, Plaintiffs' request for production of consumer complaints is improper by its terms, as it sweeps in attorney–client communications and core work product. Ex. 1, at 46. Plaintiffs demand not only "complaints," but also "any response sent, and any internal correspondence about the same," which plainly reaches privileged communications between Mad City and its counsel and materials reflecting counsel's mental impressions, strategy, and legal evaluation. *Id*. at 46-47. This request, therefore, is objectionable on its face for demanding privileged matter well outside the proper scope of discovery.

Here, Plaintiffs' request would force Mad City to dredge up mountains of irrelevant material and complaints about wholly unrelated conduct. *See* Ex. 2, at ¶ 5.

### B.    Mad City Should Not Be Compelled to Produce All Call and Text Records Without Limitation.

Plaintiffs suggest that Mad City is "withholding [call and text records] to shield

itself from classwide liability" and has "granted itself a motion to bifurcate discovery." *See* Mtn. at 8-9. Not so. Plaintiffs ignore that it is a basic tenet of civil discovery that the need for discovery must outweigh the burden on a defendant. *See Vallejo,* 903 F.3d at 742 ("[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case."); *Jackson v. Minnesota Dep't of Hum. Servs.*, No. 20-CV-749 (KMM/TNL), 2022 WL 1261690, at *10 (D. Minn. Apr. 28, 2022) (The Court must limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit").

Plaintiffs' request was served as follows:

**Request for Production No. 17**: Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendor, including those made to the either of the Plaintiffs:
a) the date and time;
b) the caller ID;
c) any recorded message used;
d) the result;
e) identifying information for the recipient; and
f) any other information stored by the call detail records.

*See* Ex. 1, at 70.

Plaintiffs mischaracterize both the scope of their Request and Mad City's response. RFP 17 is not a narrowly tailored request for call and text records relevant to Plaintiffs' claims; it is an unbounded demand for "all documents" containing multiple categories of data for every outbound telemarketing call over a four-year period, regardless of whether the call involved Plaintiffs, potential class members, or even unrelated third parties. Ex. 1, at 70. Such a request is facially overbroad and would compel the production of mostly irrelevant records, while also implicating the privacy rights of potentially thousands of

third-parties who are not putative class members. It would further impose an undue burden by requiring Mad City to undertake an impossible search across millions of call and text records, much of which are outside Mad City's possession or control. Ex. 1, at 70-73.

1.  Plaintiffs' Request for All Call and Text Records Is Overbroad and Encapsulates Data Not Within Mad City's Possession.

The calls at issue in this action were not initiated by Mad City, but by a third-party vendor, Keywords Connect. *See* Ex. 3, at ¶ 9. Focusing on calls made by Mad City, or Renuity, as Plaintiffs' request does, fundamentally misses this point and renders Plaintiffs' demand for extensive data sets overbroad.

To the extent Plaintiffs seek production of calls placed by third parties, such records are not within Mad City's possession, custody, or control. These records would reside exclusively with the third-party vendors. Plaintiffs' request should therefore be directed to those entities, not towards Mad City. *See Payne v. Geer*, No. 8:23CV427, 2025 WL 2061651, at *6 (D. Neb. July 23, 2025) (reminding the plaintiff that "the Court cannot compel [] to produce what is not in [the defendant's] possession, custody, or control.").

2.  Plaintiffs' Request for All Call and Text Records Is Not Necessary and Implicates Severe Privacy Concerns.

If the Court decides that discovery should be allowed to extend beyond third-party calls (such as the ones at issue in this case)—it should not—Mad City does not have those records other than in limited time frames. *See* Ex. 2, at ¶ 7.

To elaborate, Mad City uses several dialing systems in its day-to-day operations; Five9, Ring Central, and Vonage. *See* Ex. 2, at ¶7. Call data records from Five9 are automatically stored in Mad City's data warehouse, known as the "Data Core." *Id.*

However, Five9 records in the Data Core only go as far back as November 2023, and onwards. *See* Ex. 2, at ¶7. Ring Central and Vonage are not stored in the Data Core. *See* Ex. 2, at ¶7.

If the Court demands Mad City to produce such records, Mad City would have to request those records from Five9, Ring Central and Vonage directly. *See* Ex. 2, at ¶ 7. However, these records may simply not exist, given that Five9, Ring Central and Vonage only store data for 12-13 months, depending on the system. *Id*.

To the extent these records do exist in Mad City's possession or control, they are unnecessary since (1) the request is outside of the scope of what is actually at issue since the calls were not initiated by Mad City, and (2) call and text records are not required at this stage to certify a class. Plaintiffs seek this information to establish "the number of individuals who received Mad City's solicitations" or the numerosity element of Fed. R. Civ. P. 23(a). *See* Mot., ECF No 94, at 8. However, "Plaintiffs need not prove the exact number of proposed class members to satisfy the numerosity requirement as long as they can reasonably estimate the size of the class." *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1030 (D. Minn. 2007).

Plaintiffs' Request is not limited to calls involving Plaintiffs or even putative class members. Instead, it seeks every outbound telemarketing call and text over a four-year period, regardless of whether the call is tied to the claims in this case. Ex. 1, at 70. Plaintiffs' Request would necessarily sweep in vast amounts of irrelevant information, including communications with non-class members. In the event the case is not certified, then Mad City would have turned over millions of data sets, including personal identifying

information of third-parties who never actually became members of the class, risking the privacy of thousands of uninvolved consumers. Ex. 1, at 71; Ex. 2, at ¶11. "Privacy concerns impacted by disclosure are relevant to the Court's determination in whether compliance is appropriate." *Kyle v. Fed. Trade Comm'n*, No. 21-MC-9004-SRB, 2021 WL 1407960, at *4 (W.D. Mo. Apr. 14, 2021).

*Kyle* is instructive. There, the petitioner subpoenaed the FTC to acquire personal identifiable information outside of phone numbers and registration statuses. *Kyle*, 2021 WL 1407960, at *6. However, the "Court [found] that the risk of privacy infringement in the production of the individuals' contact information associated with the phone numbers outweighs the likely benefit of its disclosure." *Id*., 2021 WL 1407960, at *4. "Nothing in the TCPA…sets an expectation that any other personal identifiable information will be shared." *Id*., 2021 WL 1407960, at *6.

Similarly here, Plaintiffs' request is overbroad, seeking vast swaths of call data untethered to the claims at issue. Ex. 1, at 70-73. Compliance would require the disclosure of sensitive personal information for countless non-parties, creating the same privacy dangers the court rejected in *Kyle*. The sheer scope of the demand—extending to "any other information" in call and text records—magnifies both the intrusion and the lack of proportionality. Ex. 1, at 70. This Court should not permit such an expansive fishing expedition at the expense of individual privacy.

3.    Plaintiffs' Request for All Call and Text Records Imposes an Undue and Unjustified Burden On Mad City.

The Request imposes an undue burden that far outweighs any marginal relevance.

To produce all call and text records from Five9, dating back to November 2023, that is saved within Data Core, would encapsulate over 20 million records. Ex. 2, at ¶ 9. Pulling such data from the Data Core would severely impact Mad City's servers, and lead to operational failures that may take the entire network offline. *Id*. To avoid this, the records would have to be replicated and taken off the system. *Id*. This would require setting up additional infrastructure, building scripts to move data from Data Core to another database, validate the scripts, pull the data, and then validate the data. *Id*. This process may take hundreds of hours and would last weeks. *Id*.

Further, determining the consent source for each call and text record housed in the Data Core would impose a substantial and unjustifiable burden. Mad City would first be required to extract more than 20 million call and text records through a multi-stage process that itself demands considerable technical effort, including duplicating the data, migrating it off the server to avoid degrading system performance, and validating the resulting dataset. Ex. 2, at ¶ 10. Only after that extensive undertaking could Mad City cross-reference each call event with the data available in Lead Perfection, (*Id*., at ¶¶ 10-11) which was never designed for bulk matching at this scale. *Id*. Completing these steps may require hundreds of hours in engineering time and extensive manual review, rendering the task extraordinarily burdensome. *Id*.

Further, all of these efforts would be expended for mostly irrelevant information. There are 20,997 unique subsources in Lead Perfection as of March 11, 2026. *Id*., at 11. The only vendor relevant in this case is Keywords Connect (Ex. 3, at ¶ 9), yet Plaintiffs would have Mad City provide call data records related to every call made regardless of the

source. Evidently, the burden here outweighs any potential need of the case. *See Jackson*, 2022 WL 1261690, at *10 (Stating that discovery must be limited if "the burden…outweighs its likely benefit").

    4.    <u>Plaintiffs' Motion to Compel a Response to RFP 17 Lacks Any Supporting Basis.</u>

        Plaintiffs' reliance on cases compelling production of call data ignores both the scope of their own request and the limits of Rule 26. *See* Mot. at 10-11, ECF No. 94. The authorities they cite involved targeted requests for discrete categories of call and text records tied directly to putative class members[2]. No such case exists for the simple reason that discovery is properly limited to the issues in the case. *See Nw. Airlines v. Loc. 2000, Int'l Bhd. of Teamsters*, No. CIV. 00-08(DWF/AJB), 2000 WL 33419439, at *1 (D. Minn. Jan. 11, 2000) (noting "the scope of the discovery shall be limited to the issue alleged in the complaint"); Fed. R. Civ. P. 26(b) ("the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Here, Plaintiffs demand "all documents containing" multiple categories of information for every outbound telemarketing call over a four-year span, regardless of whether those calls involved Plaintiffs, potential class members, or even individuals wholly unrelated to this case. Ex. 1 at 70. This is overreach. Since Plaintiffs cannot establish the

---

[2] *Hancock v. Credit Pros Int'l Corp.*, 2021 U.S. Dist. LEXIS 131055, at *26-27 (D.N.J. July 13, 2021); *Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531, at *23 (N.D. Ill. 2015); *Cahill v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 63918, at *13-14 (S.D. Cal. Apr. 16, 2018); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 U.S. Dist. LEXIS 66219, at *7 (E.D. Mich. May 11, 2012); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017).

relevance of the overly broad set of records they seek, Plaintiffs' Motion to Compel a response to RFP No. 17 must be denied.

Further, Plaintiffs allege that Mad City should have "consider[ed] that Plaintiffs limited their request to the four years preceding the filing" however, Mad City "should not have to second-guess" the information being sought. *Donaldson Co., Inc. v. Fleetguard, Inc.*, No. CV 04-2680 (DWF/JSM), 2005 WL 8163190, at *22 (D. Minn. Aug. 19, 2005). Further, when the request "improperly seeks to require the [recipient] to engage in speculation…the [recipient] need not respond." *Cold Spring Granite Co. v. Matthews Int'l Corp.*, No. CV 10-4272 (JRT/LIB), 2012 WL 13026738, at *13 (D. Minn. Aug. 20, 2012). In any case, Mad City is only able to extract call and text records from November 2023 and onwards. *See* Ex. 2, at ¶15. Even this period remains overbroad and imposes an undue burden on Mad City. *Id*. at ¶17.

Finally, the Court must not consider expert testimony where the opposing party had "no opportunity to depose [the expert]." *Fams. for Asbestos Compliance, Testing & Safety v. City of St. Louis, Mo.*, No. 4:05-CV-719 (CEJ), 2008 WL 4279569, at *18 (E.D. Mo. Sept. 15, 2008); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 958 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (The court will not consider expert testimony where the opposing party "had no notice that [the moving party] intended to rely on the [expert]" and had "no opportunity to depose him or otherwise test the veracity of his statements and opinions"); *Sherwood v. BNSF Ry. Co.*, No. 116CV00008EJLREB, 2018 WL 3340571, at *10 (D. Idaho July 6, 2018) (same); *Cmty.*

- 26 -

*Ass'n Underwriters of Am. v. Torrington Water Co.*, No. 3:20-CV-00327 (SVN), 2023 WL 2187166, at *3 (D. Conn. Feb. 23, 2023) (Expert testimony will not be considered where "Defendant has had no opportunity to depose [the expert], nor any opportunity to share [its] findings with an expert of its own or otherwise attempt to challenge them.").

When Plaintiffs filed their original Motion to Compel (ECF No. 84), Plaintiffs' Expert, Aaron Woolfson, was not mentioned. That makes sense, as Plaintiffs' Expert Identities and Disclosures were not due until December 19, 2025. *See* Scheduling Order, ECF No. 81, at 4. Rebuttal Identities and Disclosures are not due until April 16, 2026, and Expert Discovery, including depositions, is not due to be completed until June 1, 2026. *See* Order and Amended Pretrial Scheduling Order, ECF No. 105, at 1. Now Plaintiffs attempt to include Woolfson's opinions in support of their Motion to Compel, even though Mad City had no notice and no opportunity to test Woolfson's claims through deposition, or through a rebuttal witness of their own. *See* Mot., at 8. Plaintiffs' early use of expert testimony is a prejudicial, end-run around the Scheduling Order as it seeks to litigate expert issues months before the deadline for rebuttal disclosures and depositions—effectively accelerating expert discovery for Plaintiffs alone.

Further, courts have found "Mr. Woolfson is not qualified to testify as an expert" on several occasions. *See Rojas v. Marko Zaninovich, Inc.*, No. 1:09-CV-00705 AWI, 2011 WL 4375297, at *1 (E.D. Cal. Sept. 19, 2011) (The Court reasoned that "[C]onsidering Woolfson's admitted error…his failure to conduct any expert investigation or analysis …his apparent willingness to offer conclusions about ultimate issues…without adequate foundation and given that he failed to conduct a holistic verification of his results…the

Court lacks any confidence in the reliability of Mr. Woolfson's findings"); *Dueker v. CSRT Expedited Inc.*, No. 2:18-CV-08751-MCS-FFM, 2020 WL 7222095, at *4 (C.D. Cal. Dec. 7, 2020) (The court stated "Even if Woolfson is qualified to structure and analyze…data, his testimony is unreliable. Woolfson's reports and deposition transcript demonstrate that his methodology is not peer-reviewed and unnecessarily difficult, if not impossible, to test or replicate").

While Mad City would be able to take Woolfson's claims head on, a Motion to Compel is not the proper forum to do so. *U.S. ex rel. Dyer v. Raytheon Co.*, No. CIV.A. 08-10341-DPW, 2013 WL 5348571, at *7 (D. Mass. Sept. 23, 2013) ("[T]he sufficiency and accuracy of the [expert's opinions in] support" are "properly the subject of cross-examination at trial or perhaps a *Daubert* motion but not a motion to compel."). Therefore, Plaintiffs' use of Woolfson's opinion in support of their Motion should not be considered.

5.    <u>Mad City Proposes to Provide a Representative Call-Record Sample of its Data.</u>

Mad City is prepared to—and hereby offers to—produce a representative sample of 500 call records to enable Plaintiffs and the Court to meaningfully assess the data available. Given the scale of the call data stored within Mad City's data systems (over 20 million records) producing a sample of 500 call data records would save Mad City hundreds of hours and resources it does not have readily available to allocate. Ex. 2, at ¶ 13. Generating a statistically meaningful sample—such as 500 call records—can be performed safely and reliably without jeopardizing the integrity of Mad City's systems, and would significantly limit the exposure of personally identifiable information for thousands, if not hundreds of

thousands, of consumers. *Id.*, at ¶ 14.

Such an arrangement would be "reasonable[,] to require defendants to produce a sample of [the records] as plaintiffs request, and the burden this will impose on defendants [would not be] disproportionate to the needs of the case." *Markson v. CRST Int'l, Inc.*, No. EDCV171261SBSPX, 2020 WL 7089957, at *11 (C.D. Cal. Oct. 27, 2020). A representative sample would allow the parties and the Court to evaluate the relevant information contained in the call data while avoiding the substantial strain that a full extraction would impose on Mad City's servers and engineering resources. Ex. 2, at ¶ 14. "After the first sample is produced, the parties shall evaluate what information has been produced and then meet and confer regarding the size and nature of any further production." *Markson*, 2020 WL 7089957, at *11.

For these reasons, Mad City should be permitted to produce a representative sample of 500 call records rather than undertaking the burdensome and unnecessary task of extracting every call record housed within its Data Core.

## V.    PLAINTIFFS' REQUEST FOR AN AWARD OF FEES AND SANCTIONS AGAINST MAD CITY IS MERITLESS AND MUST BE DENIED

Rule 37 provides for sanctions where a party fails to provide information as required by Rule 26(a) or (e). Fed. R. Civ. P. 37(c)(1). However, as mentioned throughout the memorandum, a party does not have to respond to requests that are objectionable in nature, where they are overbroad, inflicting an undue burden on the non-moving party, incomprehensible, or privileged. Overbroad, vague or improper discovery requests "need not be answered." *Kirby v. United Am. Ins. Co.*, No. 4:08CV00338 JLH, 2009 WL

10675166, at *6 (E.D. Ark. Feb. 13, 2009); *See Itasca Images, LLC v. Shutterstock, Inc.*, No. 21-CV-287 (JRT/DTS), 2021 WL 6849104, at *2 (D. Minn. Nov. 22, 2021) (clarifying [the defendant] need not respond with information related to every visitor who" may fall within the scope of the request due to its broad language); *Cold Spring Granite Co.,* 2012 WL 13026738, at *13 (When the requests "improperly seeks to require the [recipient] to engage in speculation…the [recipient] need not respond."). Plaintiffs' requests, RFP 5 and 17, are riddled with deficiencies Mad City should not be forced to bear the burden of fixing.

Further, sanctions will not be awarded in discovery where the deadline to respond has not yet been met. *See Ward v. Copenhaver*, 2025 WL 2964335, at *9–14 (E.D. Ark. Oct. 20, 2025) (rejecting sanctions tied to alleged discovery violations as "premature" where discovery was in its early stages); *Harris v. Kroger Ltd. P'ship I*, No. 4:18-CV-00153-KGB, 2019 WL 13301637, at *6 (E.D. Ark. Mar. 25, 2019) (denying a motion to compel discovery and sanctions where deadlines had been extended); *Baker v. Immanuel Med. Ctr.*, No. 8:06CV655, 2007 WL 2914547, at *1 (D. Neb. Oct. 3, 2007) (denying plaintiff's motion to compel and sanctions where he alleges "the defendants have been evasive and uncooperative in responding to his discovery requests," since the discovery deadlines have not yet passed). Discovery in this case closes on June 1, 2026. We are far removed from that date.

Moreover, "[w]here the [C]ourt sanctions attorney conduct under its inherent power, the offensive conduct must 'constitute[ ] or [be] tantamount to bad faith[.]'" *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. CV 17-5009 (JRT/KMM), 2020 WL 4915832, at *4 (D. Minn. Aug. 21, 2020), *as amended* (Aug. 27, 2020) (quoting *Roadway Exp., Inc. v. Piper*,

447 U.S. 752, 767 (1980)). Even with the deficient requests, Mad City offered responses in good faith, where it didn't have to. *Kirby*, 2009 WL 10675166, at *6; *Itasca Images, LLC,* 2021 WL 6849104, at *2; *Cold Spring Granite Co.,* 2012 WL 13026738, at *13. For these reasons, Plaintiffs' requests for an award of sanctions and fees against Mad City should be denied.

## VI.   <u>MAD CITY REQUESTS THE COURT AWARD FEES AND SANCTIONS AGAINST PLAINTIFFS</u>

"Sanctions are imposed when a pleading is submitted for an improper purpose, 'such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Blaylock v. Wells Fargo Bank, N.A.*, No. CIV. 12-693 ADM/LIB, 2012 WL 2529197, at *7 (D. Minn. June 29, 2012) (citing Fed. R. Civ. P. 11(b)(1)). "[A] district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). "The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999). This Court has awarded sanctions in a case where a party has submitted a meritless motion to compel. *See Theisen v. Extendicare Health Servs., Inc.*, No. CV 04-3356 (JGL), 2005 WL 8164906, at *2 (D. Minn. Aug. 3, 2005) (awarding sanctions to Plaintiffs in part for serving "a wholly meritless motion to compel…filed before [d]efendant's answers to written discovery were even due under the Rules").

As shown above, Plaintiffs' motion to compel is patently meritless. Plaintiffs failed

to support their motion with a showing that many of the demands are within the scope of discovery. And even as to demands seeking information within the subject matter of the litigation, the discovery demands served were so thoughtlessly overly broad as to impose a massive and unjustifiable burden on Mad City. Plaintiffs mischaracterized their discovery requests to the Court. None of this was done with substantial justification. Indeed, Plaintiffs fail to support even a single one of their improper demands with tailored argument. In these circumstances an award of sanctions is certainly appropriate.

Here sanctions are permissible—and appropriate—against both the Plaintiff and his counsel of record, jointly and severally. *Desai v. US Bank*, No. 806CV779, 2007 WL 2410537, at *8 (D. Neb. Aug. 21, 2007) (the court imposed sanctions against the Plaintiffs and their counsel jointly and severally); *Niemeyer v. Store Kraft Mfg. Co.*, No. 4:12CV3014, 2012 WL 2576400, at *6 (D. Neb. July 3, 2012) (same).

"Although the ultimate determination made by the Court will be how much of a sanction is necessary to deter repetition of the conduct or comparable conduct by others similarly situated' and no more, Fed. R. Civ. P. 11(c)(4), the Court finds it appropriate to consider the attorney's fees and costs expended by Defendants in this case in tailoring an appropriate Rule 11 sanction." *Murphy v. Aurora Loan Servs., LLC*, 859 F. Supp. 2d 1016, 1023 (D. Minn. 2012), *aff'd and remanded,* 518 F. App'x 511 (8th Cir. 2013). "The lodestar method has been established as the most useful starting point for determining the amount of a reasonable fee, and it requires a court to calculate the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*, 859 F. Supp. 2d 1016, at 1023 (internal citations omitted).

Defendant has incurred fees and costs as a result of the abuse of discovery by Plaintiff and his counsel. Additional costs and expenses will be incurred to be proven at the time of hearing or on such later date as the Court permits.

VII. **<u>CONCLUSION</u>**

WHEREFORE, Defendant Mad City respectfully requests that this Court deny Plaintiffs' Motion to Compel and award sanctions against Plaintiffs Alisha Saladino and David Donahue for its meritless discovery demands.

Dated: March 12, 2026

TROUTMAN AMIN, LLP

<u>/s/ Eric J. Troutman</u>
Eric J. Troutman
Steven L. Rozenfeld
400 Spectrum Center, Ste. 1550
Irvine, CA 92618
(949) 761-5021
Counsel for Defendant Mad City
Home Improvement, LLC.

## <u>CERTIFICATION</u>

I hereby certify that on March 12, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

<u>/s/ Eric J. Troutman</u>
Eric J. Troutman

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this memorandum complies with the limits set forth in Local Rule 7.1(f) and with the type-size requirements of Local Rule 7.1(h). The memorandum contains 6990 words, as determined by the word-count function of Microsoft Word, which was applied to include all text, including headings, footnotes, and quotations. The memorandum was prepared using a 13-point font throughout, in compliance with the Rule.

<u>/s/ Eric J. Troutman</u>
Eric J. Troutman