## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA (DMN)

| | |
|---|---|
| **Alisha Saladino** and **David Donahue**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Mad City Home Improvement, LLC** *doing business as* Mad City Windows & Baths,<br><br>Defendant. | Case No. 0:24-cv-01419-NEB-EMB |

## DEFENDANT MAD CITY HOME IMPROVEMENT, LLC'S OPPOSITION TO PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY

Defendant Mad City Home Improvement, LLC *doing business as* Mad City Windows & Baths, ("Mad City"), by and through its undersigned counsel, respectfully moves this Court for an order denying Alisha Saladino's and David Donahue's ("Plaintiffs") Second Motion to Compel Discovery ("Motion" or "Mot.") for the reasons set forth in the memorandum below.

## I.      INTRODUCTION

Following close on the heels of their meritless first motion to compel, Plaintiffs launch an ambush with a second motion to compel seeking large swaths of information that was formally part of previous meet and confer efforts.

To be sure, the parties had met and agreed on *portions* of what Plaintiffs now

precipitously seek to compel—but much of Plaintiffs' demands are wholly new and were not discussed in the meet and confer process.

What Mad City agreed to provide—and the most Plaintiffs are entitled to—Mad City has already produced. No additional production, therefore, is necessary.

Moreover as Plaintiffs' second motion to compel is wholly unnecessary, unfounded, and lacked a proper meet and confer effort, Mad City should be awarded its attorneys fees as a sanction.

## II.   **BACKGROUND**

On November 11, 2025, the parties agreed Mad City would provide a supplement as to Interrogatories No. 5 and 11, and Requests for Production No. 8 and 18. *See* Email Correspondence Regarding Mad City's Second Supplemental Production, ("Exhibit 1").

The parties agreed this production would satisfy Plaintiffs' demands, other than Requests for Production No. 5 and 17, and Interrogatory No. 5 for "all of the lead sources" involved in making outbound calls. *See* Exhibit 1.

On January 20, 2026, Plaintiff served his motion to compel as to Requests for Production No. 5 and 17. *See* Plaintiffs' Motion to Compel, ("First MTC"), ECF No. 93, at 1.

Plaintiffs' counsel followed up regarding the supplement Mad City owed a handful of times in the intervening weeks. On each occasion Mad City's counsel dutifully—and transparently—informed counsel that it was having trouble reaching Renuity's in-house counsel, but that it would provide the promised supplement as soon as it had done so. Declaration of Eric J. Troutman ("Exhibit 2"), at ¶¶ 9, 11.

Mad City's counsel had no reason to believe Plaintiffs were planning a sneak attack. *See* Exhibit 2, at ¶13.

On March 9, 2026, Plaintiffs served their second motion to compel (the "Motion"), ECF No. 111—without warning to Mad City's counsel. *See* Exhibit 2, at ¶13. In addition to seeking to compel the agreed-upon production, the motion also improperly sought to compel documents and information, including the production of all vendor agreements that were not previously met and conferred on, and the identification of all the lead sources involved in making outbound calls, which had not been conferred on since November 11, 2025. *See* Exhibit 1 (dated November 11, 2025, and not mentioning a production of all vendor agreements associated with Mad City's vendors).

On March 12, 2026, Mad City served its Second Supplemental Discovery Responses, addressing most of the issues in this Motion, as well as producing what Mad City had agreed to. *See* Exhibit 2, at ¶14.

## III.    THE COURT SHOULD ENFORCE THE PARTIES' AGREEMENT AND DISPENSE WITH THE BULK OF PLAINTIFFS' SECOND MOTION TO COMPEL.

Courts should generally enforce stipulations entered into between the parties. *See Burstein v. United States*, 232 F.2d 19, 22 (8th Cir. 1956) ("[S]tipulations are controlling and conclusive, and courts are bound to enforce such stipulations. Ordinarily courts have no power to make findings contrary to the terms of a stipulation."); *In re Howe*, 78 B.R. 226, 228 (Bankr. D.S.D. 1987) ("It should be noted that this Court almost invariably enforces all stipulations voluntarily entered into between the parties.").

An agreement between the parties as to the scope of discovery is enforceable. *See*

*In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3447 (PJS/JSM), 2015 WL 12819152, at \*1 & n.2 (D. Minn. Apr. 13, 2015) (the Court acknowledged that "the parties reached an agreement on the scope of discovery" and gave effect to their stipulation.); *Mitchell v. United States*, No. 16-MC-0036-JLQ, 2016 WL 5843383, at \*2 (E.D. Wash. Oct. 4, 2016) ("The parties filed a Stipulation…which set for the scope of discovery" and was "adopted" by the court.); *Bos. Sci. Corp. v. Cook Grp. Inc.*, No. 117CV03448JRSMJD, 2021 WL 6125764, at \*2 (S.D. Ind. Dec. 28, 2021) ("Federal Rule of Civil Procedure 29 provides that parties are entitled to limit discovery via stipulation.").

As set forth above, Plaintiffs had reached a deal with Mad City on all discovery issues excepting only Requests for Production No. 5 and 17, and Interrogatory No. 5 which Plaintiffs claim seeks the identification of "all the sources of leads" involved in making outbound calls. *See* Exhibit 1. Plaintiffs are now seeking to compel "all lead sources used during the class period," as well as "any agreements between Mad City and any third-party vendor(s)" which was never discussed as part of the deal. *See* Exhibit 1. The written communications between the parties plainly bears this out. *Id.*

## IV.  THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR FAILURE TO MEET AND CONFER.

A party must meet and confer on specific issues prior to filing a motion to compel. *See* Local Rule 7.1(a) ("Before filing a motion…the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion.").

As laid out above, the parties had an extensive meet and confer on the issues raised

by Plaintiffs' improper discovery demands and Mad City's responses thereto. *See* Exhibit 2, at ¶¶ 3-4. The parties agreed they were at an impasse to Requests for Production No. 5 and 17, and part of Interrogatory No. 5, which Plaintiffs' claim seeks the "sources of leads during the class period" involved in making outbound calls. *See* Exhibit 1. Mad City agreed to produce further responses as to Interrogatories No. 5 and 11, and Requests for Production No. 8 and 18, with the only impasse being to Interrogatory No. 5, to identify all the lead sources involved in making outbound calls. *Id*.

Specifically, Plaintiffs failed to meet and confer on seeking to compel contractual agreements between Mad City and its vendors before filing its current Motion. *See* Exhibit 1. Further, Plaintiffs have not conferred on Plaintiffs' request for the identification of all lead vendors involved in outbound calling since November 11, 2025. *Id*. On this basis alone, the motion to compel should be denied.

## V.    THE ADDITIONAL INFORMATION PLAINTIFFS DEMAND IMPOSES AN UNDUE BURDEN ON MAD CITY AND IS OUTSIDE THE SCOPE OF DISCOVERY.

Plaintiffs ignore that it is a basic tenet of civil discovery that the need for discovery must outweigh the burden on a defendant. *See Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) ("[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case."); *Jackson v. Minnesota Dep't of Hum. Servs.*, No. 20-CV-749 (KMM/TNL), 2022 WL 1261690, at *10 (D. Minn. Apr. 28, 2022) (The Court must limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit"). Plaintiffs failed to cite a single case in support of such a broad request being enforced. *See* ECF No. 111. That makes sense, given that

"plaintiffs are not entitled to a list of all third-party vendors" as every vendor is not relevant to the matter. *Bores v. Domino's Pizza, LLC*, No. CV 05-2498 (RHK/JSM), 2007 WL 9735903, at *12 (D. Minn. Jan. 25, 2007).

Here Plaintiffs interpret this vague and improper Interrogatory Request No. 5 to require Mad City to identify all lead sources it has worked with during the long four years at issue in this case. *See* ECF No. 111, at 14. In the first instance, that is not at all what the demand actually seeks. *See id.*, (Requesting to be identified, "all employees or vendors involved in making outbound calls promoting your services."). However, interpreting the Interrogatory as Plaintiffs prefer, the demand is vastly overly broad given the limited needs of this case.

As Mad City has set forth in its previous opposition, this case arises out of a lead provided by only a single lead source. *See* Mad City's Opposition to Plaintiffs' Motion to Compel, ECF No. 115, at 9. This fact is undisputed. Yet plaintiffs demand a comprehensive list of over 20,000 lead sources used over the years with absolutely zero showing of need. *Id.*, at 24 ("There are 20,997 unique subsources in Lead Perfections as of March 11, 2026."). Mad City would have to review each single one of these subsources and determine which of the subsources are involved in making outbound calls. The burden of compiling such a list is massive—there is no single list of such lead vendors in existence and compiling a comprehensive list of so many individual lead providers may take dozens of hours, if not longer. *See* ECF No. 115-2, at ¶11; *See also* Declaration of Edward Blunt ("Exhibit 3"), at ¶¶ 6-7.

Plaintiffs then compound these errors by demanding "complete contractual

- 6 -

agreements with its vendors." ECF No. 111, at 13. Again, that is not what Plaintiffs'

demands actually seek to begin with.

> **Interrogatory No. 11**: Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

> **RPD No. 8**: All internal communications at your company regarding any vendor that provided you with the either of the Plaintiffs' telephone number or information.

> **RPD No. 18**: All communications with any third party concerning this litigation other than your attorney.

> ECF No. 111, at 15.

But even if it were, Plaintiffs have offered *zero* rationale for why contracts with

thousands of lead generation partners would be relevant to this case. This is true because

only *one* of those lead generators called either of the named Plaintiffs and because contract

terms have not been shown to be pertinent to any issue or defense in this suit. *See* ECF No.

115-3, at ¶¶ 9-11.

Of course, even if there was some marginal relevance to this information, the burden

attendant gathering agreements for thousands of lead generation partners is extraordinarily

high, and may require dozens of hours in manual review and verification. *See* Exhibit 3, at

¶ 8. Mad City does not maintain a centralized repository of its agreements with its vendors.

*Id*. Agreements are often sent and stored across numerous channels, including emails,

SharePoints, and local drives. *Id*. Identifying the relevant vendors, then locating the

respective agreements (of which there may be thousands), would be a highly-intensive and

laborious process. *Id*. On balance, therefore, there is simply no legitimate basis for

Plaintiffs' demands and, even if some marginal relevance existed (it does not), the burden

outweighs the need.

## VI.    THE COURT SHOULD DECLINE TO SANCTION MAD CITY, AND INSTEAD, SANCTION PLAINTIFFS.

Plaintiffs' Motion is entirely needless. Mad City had already produced a significant portion of the items at issue in the motion. *See* Exhibit 2, at ¶14. True, the production had not yet taken place, but the parties were working through several discovery issues and Plaintiffs' counsel was well aware of difficulties Mad City's counsel was having with client communication. *Id*. There was no need to resort to court intervention—and even if there was, a final warning to Mad City's counsel should have been made before the motion was precipitously filed.

Regardless, the promised production has now been made, so there is nothing left to compel. If Plaintiffs continue to seek to compel a list of all of Mad City's vendors and their agreements, Mad City would like to remind Plaintiffs that overbroad or improper discovery requests "need not be answered." *Kirby v. United Am. Ins. Co.*, No. 4:08CV00338 JLH, 2009 WL 10675166, at *6 (E.D. Ark. Feb. 13, 2009); *See Itasca Images, LLC v. Shutterstock, Inc.*, No. 21-CV-287 (JRT/DTS), 2021 WL 6849104, at *2 (D. Minn. Nov. 22, 2021) (clarifying the defendant "need not respond with information related to every visitor who" may fall within the scope of the request due to its broad language). Plaintiffs' requests for a list of all of Mad City's lead sources involved in outbound calling and their agreements, are overbroad and unduly burdensome, thus, Mad City should not be sanctioned for denying to provide such documents.

That being the case, sanctions against Mad City should be denied. *See Evans as Tr.*

*for Evans v. Krook*, No. 20-CV-2474 (MJD/ECW), 2022 WL 1537994, at *22 (D. Minn. May 16, 2022) (denying sanctions where the production sought "[was] in fact produced.").

Further, "[a]s to Plaintiff's request for attorneys' fees and costs, Rule 37 requires the parties to confer or attempt to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Krook*, 2022 WL 1537994, at *22 (internal citations omitted). Sanctions will not be granted where the moving party fails to "sufficiently confer with Defendants prior to filing the instant Sanctions Motion"). *Id*.

Here, Mad City has already produced the materials it agreed to, and Plaintiffs have proceeded without the required meet and confer effort. Exhibit 2, at ¶¶13-14. At worst, they have knowingly broken their deal with Mad City as to the scope of discovery at this stage. Exhibit 1. Either way the motion should be denied in its entirety and sanctions in favor of Mad City are mandatory. *See Eniola Famuyide, Plaintiff, v. Chipotle Mexican Grill, Inc., & Chipotle Servs., LLC, Defendants.*, No. 23-CV-01127 (DFW/ECW), 2026 WL 772120, at *29 (D. Minn. Mar. 18, 2026) (sanctioning the moving party for "their failure to meet and confer…before filing the Motion"); *Madgett L., LLC v. Pravati Cap., LLC*, No. 23-CV-1271 (NEB/JFD), 2024 WL 772625, at *3 (D. Minn. Feb. 26, 2024) (noting a party "has been severely sanctioned for its failure to meet and confer on the underlying motion to compel"); *IsoNova Techs. LLC v. Rettig*, No. 20-CV-71-CJW-KEM, 2022 WL 1303271, at *2 (N.D. Iowa May 2, 2022) ("failures to fully meet and confer could result in sanctions.").

## VII.   <u>CONCLUSION</u>

WHEREFORE, Defendant Mad City respectfully requests that this Court deny

Plaintiffs' Second Motion to Compel and award sanctions against Plaintiffs Alisha Saladino and David Donahue for its overbroad discovery demands and failure to meet and confer before filing the instant Motion.

Dated: March 30, 2026

TROUTMAN AMIN, LLP

/s/ Eric J. Troutman
Eric J. Troutman
Steven L. Rozenfeld
400 Spectrum Center, Ste. 1550
Irvine, CA 92618
(949) 761-5021
Counsel for Defendant Mad City
Home Improvement, LLC.

## CERTIFICATION

I hereby certify that on March 30, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Eric J. Troutman
Eric J. Troutman

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum complies with the limits set forth in Local Rule 7.1(f) and with the type-size requirements of Local Rule 7.1(h). The memorandum contains 2,380 words, as determined by the word-count function of Microsoft Word, which was applied to include all text, including headings, footnotes, and quotations. The memorandum was prepared using a 13-point font throughout, in compliance with the Rule.

/s/ Eric J. Troutman
Eric J. Troutman